IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION No.

MICHAEL RYAN TATUM, an individual; and CALYX CONTAINERS, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

KINZIE ADVANCED POLYMERS LLC d/b/a GROVE BAGS, an Ohio limited liability company.

    Defendant.

---

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND REQUEST FOR HEARING**

---

COME NOW, Plaintiffs Michael Ryan Tatum ("Tatum") and Calyx Containers, LLC ("Calyx") (collectively "Plaintiffs"), by and through their counsel, 3i Law, LLC, and for their Verified Complaint for Declaratory Judgment and Injunctive Relief states as follows:

## I.    PARTIES, JURISDICTION, AND VENUE

1. Tatum is an individual residing at 5147 Chicory Circle, Brighton, Colorado.

2. Calyx is a Colorado limited liability company with a principal office located at 392 Mill Creek Cir., Vail, Colorado.

3. Defendant, Kinzie Advanced Polymers LLC d/b/a Grove Bags ("Defendant"), is an Ohio limited liability company with a registered agent located at 5 Lake House Lane, City of Hunting Valley, State of Ohio.

1

4.      On or about February 1, 2023, the Parties entered into an agreement for the employment of Tatum ("Employment Agreement"), attached and referenced hereto as **Exhibit 1**.

5.      This is a civil action between two parties. Each party is a citizen of a different state. The amount in controversy of this Complaint exceeds $75,000.00.[1] As such, Plaintiffs invokes the jurisdiction of the court pursuant to Article III § 2 of the U.S. Constitution, 28 U.S.C. § 1332.

6.      Venue is fair and proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this state, and because Plaintiffs are citizens of the state of Colorado and Tatum entered into the Employment Agreement at issue in the state of Colorado. Additionally, C.R.S. § 8-2-113(6) prohibits covenants not to compete from requiring a worker who primarily resided or worked in Colorado to adjudicate the enforceability of the covenant outside of Colorado. Colorado Revised Statute § 8-2-113(7) further authorizes a worker or prospective employer to seek a declaratory judgment in a court of competent jurisdiction in Colorado as to the unenforceability of such a covenant.

7.      Defendant knew Tatum was a Colorado resident at the time of hire and expressly acknowledged Tatum's residence in the City of Brighton, Colorado in the Employment Agreement. *See* Exh. 1, Employment Agreement, ¶ 1.

8.      Although the Employment Agreement contains a forum-selection clause designating a different jurisdiction, venue in the State of Colorado is proper because enforcing that

---

[1] In actions seeking declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *See Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)). The Tenth Circuit applies the ""either viewpoint rule," which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum." *Id.*

clause would contravene Colorado's strong public policy. Colorado has a significant connection to the parties and the dispute, and courts may decline to enforce a forum-selection clause where doing so would violate the forum state's fundamental public policy. *See Morris v. Towers Fin. Corp.*, 916 P.2d 678, 682 (Colo. App. 1996) (refusing to enforce a forum-selection clause designating New York where it conflicted with Colorado's public policy under the Colorado Wage Claim Act).

## II.     GENERAL ALLEGATIONS

9. At all times relevant, Tatum was a resident of the State of Colorado.

10. At all times relevant, Calyx was a Colorado limited liability company.

11. Defendant is a packaging company specializing in cannabis packaging.

12. Tatum initially worked for Defendant as an independent contractor, beginning in 2020.

13. Upon the conclusion of his independent contractor relationship approximately three months later, Tatum was hired by Defendant as a full-time employee.

14. At the time he commenced his employment with Defendant, Tatum executed a written Employment Agreement.

15. On February 1, 2023, Defendant presented Tatum with the Employment Agreement, which replaced the prior employment agreement(s) previously executed between the parties.

16. When presenting the Employment Agreement, Defendant advised Tatum that execution of the Agreement that same day was a condition of continued employment, and that refusal to sign would result in immediate termination.

17. Defendant did not provide Tatum with a separate notice of the restrictive covenants contained in the Employment Agreement, nor was Tatum given the required 14 days' advance notice, or any notice at all.

18. On February 1, 2023, Tatum signed the Employment Agreement at Defendant's insistence, without knowledge of his rights under Colorado law and without any opportunity to consult legal counsel or conduct research regarding those rights.

19. At the time Tatum signed the Employment Agreement, he was earning less than $102,000 per year.

20. The Employment Agreement contains a covenant not to compete which states:

> While employed by the Company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

Exh. 1, Employment Agreement, § 6(a).

21. The Employment Agreement contains a non-solicitation provision, which states:

> While employed by the company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly solicit, contact, induce, or attempt to induce the Company's current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or any persons or entities with

>business relations with the Company to cease doing business with the Company, or in any way interfere with the relationship between any such current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or business relation with the Company.

Exh. 1, Employment Agreement, § 6(b).

22. The Employment Agreement also includes a choice-of-law and forum-selection clause that purports to require the application of Ohio law and mandates that any disputes arising from the agreement be resolved exclusively in an Ohio forum. Exh. 1, Employment Agreement, § 16.

23. Tatum was employed by Defendant as its Chief Commercial Officer from February 1, 2023, through August 24, 2023.

24. On or about August 24, 2023, Defendant terminated Tatum's employment.

25. Following his termination in August 2023, Tatum was compelled to accept lower-skilled employment unrelated to his area of expertise, as any position utilizing his professional skills would have risked violating the restrictive covenants contained in the Employment Agreement.

26. In October 2023, Tatum was approached by Calyx, a manufacturer specializing in cannabis packaging solutions, about coming to work with the company.

27. Believing he was bound by the terms of the restrictive covenants set forth in his Employment Agreement, Tatum informed Calyx he was unable to join the company.

28. Calyx again approached Tatum in January 2024 and presented him with an offer for a position as Director of Sales and Marketing with a projected on-target earnings ("OTE") salary of $240,000–$260,000 per year.

5

29. Again, Tatum declined the offer based on his belief in the enforcement of the restrictive covenants set forth in his Employment Agreement.

30. After Tatum declined the position for a second time, both Tatum and Calyx began evaluating the enforceability of the restrictive covenants contained in the Employment Agreement.

31. Following their investigation, Tatum and Calyx discovered that Colorado law disfavors restrictive covenants and that the provisions contained in the Employment Agreement may be unenforceable under applicable state law.

32. After making this determination, but erring on the side of caution, Tatum accepted a lesser role with Calyx as an independent contractor rather than an employee in September 2024, pending further clarity regarding the enforceability of the restrictive covenants.

33. As a consultant for Calyx, Tatum is compensated at a rate of $45 per hour, resulting in average annual earnings between approximately $93,000 and $105,000.

34. Approximately one month after beginning as a consultant with Calyx, on or about October 29, 2024, Defendant filed an action in the United States District Court, Northern District of Ohio, case number 1:24-cv-01887 ("Ohio Action"), against Calyx and Tatum attempting to enforce the restrictive covenants contained in the Employment Agreement.

### 2022 Revisions to Colorado's Restrictive Covenant Statute

35. In 2022, Colorado significantly reformed the state's non-competition statute, codified at C.R.S. § 8-2-113. These changes went into effect on August 10, 2022.

36. Under the revised statute, non-competition and non-solicitation agreements are generally void unless certain specific conditions are met. *See* C.R.S. § 8-2-113(2)(a) ("Except as

provided in subsection (2)(b) and (3) of this section, any covenant not to compete that restricts the right of any person to receive compensation for performance of labor for any employer is void.").

37. Under the revised statute, a non-compete or non-solicitation agreement is only enforceable if the worker qualifies as a "highly compensated worker," as such threshold is determined by the Colorado Department of Labor and Employment, both at the time the agreement is entered into and at the time it is enforced; the agreement is for the protection of trade secrets; and the restriction is no broader than reasonably necessary to protect the employer's legitimate interest in protecting trade secrets. C.R.S. § 8-2-113(2)(b); C.R.S. § 8-2-113(2)(d).

38. The statute further provides that any non-compete agreement that is otherwise permissible under C.R.S. § 8-2-113(2) or (3) is void unless notice of the restrictive covenant is provided to:

> (I) A prospective worker before the worker accepts the employer's offer of employment; or
>
> (II) A current work at least fourteen days before the earlier of:
>
>   (A) The effective date of the covenant; or
>
>   (B) The effective date of any additional compensation or change in the terms or conditions of employment that provides consideration for the covenant.

C.R.S. § 8-2-113(4)(a).

39. The notice must be contained "in a separate document from any other covenants between the worker and employer and in clear and conspicuous terms in the language in which the worker and employer communicate about the worker's performance." C.R.S. § 8-2-113(4)(b).

40. "The notice must be signed by the worker." *Id.*

7

41. A non-compete agreement "that applies to a worker who, at the time of termination of employment, primarily resided or worked in Colorado may not require the worker to adjudicate the enforceability of the covenant outside of Colorado." C.R.S. § 8-2-113(6).

42. "Notwithstanding any contractual provision to the contrary, Colorado law governs the enforceability of a covenant not to compete for a worker who, at the time of termination of employment, primarily resided and worked in Colorado." *Id.*

43. "A worker who is a party to a covenant not to compete, or a subsequent employer that has hired or is considering hiring the worker, may seek a declaratory judgment from a court of competent jurisdiction or an arbitrator that the covenant not to compete is unenforceable." C.R.S. § 8-2-113(7).

44. "An employer shall not enter into, present to a worker or prospective worker as a term of employment, or attempt to enforce any covenant that is void" under C.R.S. § 8-2-113. C.R.S. § 8-2-113(8)(a).

45. Colorado law provides limited exceptions to the general prohibition on restrictive covenants, including provisions related to the repayment of certain training or educational expenses, reasonable confidentiality agreements, covenants tied to the sale of a business, and scholarship repayment requirements in apprenticeship programs. *See* C.R.S. § 8-2-113(3).

### **Defendant's Violations of C.R.S. § 8-2-113**

46. At the time Defendant presented Tatum with the Employment Agreement, Tatum was not a highly compensated individual, as required under C.R.S. § 8-2-113(2)(b) and as further defined under C.R.S. § 8-2-113(2)(c); Tatum was earning, at most, $102,000 per year.

47. In 2023, the Colorado Department of Labor and Employment ("CDLE") specified annualized cash compensation required to be considered a highly compensated individual was $112,500. *See* **Colo. Dep't of Lab. & Emp.,** *INFO #1: Key Wage and Hour Rights and Responsibilities in Colorado: the COMPS and PAY CALC Orders* 5 n.9 (Dec. 8, 2023), https://cdle.colorado.gov/infos.[2]

48. At the time Defendant initiated the Ohio Action, Tatum was not a highly compensated individual, as required under C.R.S. § 8-2-113(2)(b) and as further defined under C.R.S. § 8-2-113(c); Tatum was earning between $93,000-$105,000.

49. In 2024, the CDLE specified annualized cash compensation required to be considered a highly compensated individual was $123,750. *See Colo. Dep't of Lab. & Emp., INFO #1*, at 4.[3]

50. At the time Defendant presented Tatum with the Employment Agreement, Tatum was a current employee. Accordingly, Defendant was required to provide Tatum with the terms of the covenant not to compete at least 14 days before the earlier of: (A) the effective date of the covenant; or (B) the effective date of any additional compensation or change in the terms or conditions of employment that provides consideration for the covenant. *See* C.R.S. § 8-2-113 (4)(a)(II).

51. Additionally, Defendant was required to provide the requisite notice in a separate document from any other covenants between Tatum and Defendant and in "clear and conspicuous

---

[2] Under C.R.E. 201(b)(2), the Court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," such as official government publications.

[3] *See supra* n. 1.

9

terms in the language in which the worker and employer communicate about the worker's performance." *Id.* at §§ 4(b).

52. The notice must be signed by the worker. *Id.*

53. Defendant failed to provide separate notice of the covenant not to compete 14 days prior to the effective date of the covenant, which was the same day it was presented to Tatum. Instead, Tatum was told if he did not execute the Employment Agreement that day, he would be immediately terminated.

54. Because Defendant provided Tatum with no notice of the non-compete agreement whatsoever, there is no notice signed by Tatum, as required under C.R.S. § 8-2-113(4)(b).

55. Defendant presented the non-compete provision contained in the Employment Agreement as a mandatory condition of employment, demanding Tatum's immediate acceptance under threat of termination. Defendant's use of a non-compete provision that is void under C.R.S. § 8-2-113 as a condition of continued employment constitutes a violation of C.R.S. § 8-2-113(8)(a).

56. Defendant's initiation of the Ohio Action to enforce the void non-compete agreement constitutes a further violation of C.R.S. § 8-2-113(8)(a), which expressly prohibits an employer from attempting to enforce any covenant that is void under C.R.S. § 8-2-113.

57. Defendant continues to pursue the Ohio Action, which if permitted to continue would violate the public policy interests of the State of Colorado because Defendant is attempting to enforce an unlawful contract provision.

58. At the time of the Employment Agreement, neither statutory exception to C.R.S. § 8-2-113(2)(a) applied to Tatum.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment that Restrictive Covenants are Void and Unenforceable – C.R.S. § 8-2-113 and § 13-51-105; 28 U.S.C. § 2201 / Colo. R. Civ. P. 57)**

59. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 58 above.

60. An actual and justiciable controversy exists between Plaintiffs and Defendant concerning the enforceability of the restrictive covenants contained in Tatum's Employment Agreement with Defendant, including but not limited to provisions purporting to restrict Tatum's right to engage in lawful employment following the termination.

61. Pursuant to C.R.S. § 8-2-113(2)(a), any covenant not to compete that restricts the right of a person to receive compensation for the performance of labor for any employer is void unless it satisfies the exceptions outlined in the statute.

62. Tatum was not a "highly compensated worker" at the time the Employment Agreement was executed or at the time Defendant attempted to enforce it. Tatum's compensation fell below the thresholds set forth by the Colorado Department of Labor and Employment for both 2023 and 2024, as required under C.R.S. § 8-2-113(2)(b) and (c). *See Colo. Dep't of Lab. & Emp., INFO #1*, *supra* ¶¶ 46, 48.

63. Additionally, Defendant failed to comply with C.R.S. § 8-2-113(4), which requires that employers provide notice of a restrictive covenant to a current employee at least 14 days in advance, in a separate document, using clear and conspicuous language, and signed by the worker. No such notice was provided to Tatum.

11

64. The restrictive covenants are not protected by any of the limited statutory exceptions outlined in C.R.S. § 8-2-113(3), including provisions concerning training reimbursement, confidentiality, business sales, or apprenticeship scholarships.

65. Defendant's presentation of the void non-compete as a condition of continued employment, and its subsequent attempt to enforce that agreement in an out-of-state forum, violates C.R.S. § 8-2-113(8)(a), which prohibits employers from entering into or attempting to enforce a covenant that is void under the statute

66. Colorado Revised Statute § 8-2-113(6) prohibits employers from requiring workers who primarily resided or worked in Colorado to adjudicate the enforceability of a non-compete agreement outside of Colorado. Defendant's initiation and continued prosecution of the Ohio Action is a direct violation of this statutory protection and contrary to Colorado's strong public policy interest in shielding its workers from unenforceable restrictive covenants.

67. Tatum and Calyx are entitled under C.R.S. § 8-2-113(7) to seek a declaratory judgment from this Court that the restrictive covenants are void and unenforceable.

68. This Court is further authorized to issue declaratory relief pursuant to C.R.S. § 13-51-105, which provides that courts of record within Colorado have the power to declare rights, status, and legal relations under written contracts.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in his favor and against Defendant, and issue a declaration that:

1. The restrictive covenants contained in the Employment Agreement, including the non-compete and non-solicitation provisions, are void and unenforceable under Colorado law;

2.  Colorado law governs the enforceability of the restrictive covenants pursuant to C.R.S. § 8-2-113(6), regardless of any choice-of-law or forum-selection clause in the Employment Agreement;

3.  Defendant is prohibited from enforcing or attempting to enforce the restrictive covenants against Tatum;

4.  Any litigation concerning the enforceability of the restrictive covenants must occur in a court of competent jurisdiction in the State of Colorado;

5.  Defendant must cease all efforts to prosecute or maintain the Ohio Action or any other action seeking to enforce the restrictive covenants outside of Colorado; and

6.  Such other and further relief as the Court deems just and proper, including an award of costs and attorneys' fees as permitted by law

Plaintiffs further requests the Court set this matter for an evidentiary hearing or oral argument on the requested declaratory relief at the Court's earliest convenience, pursuant to Fed. R. Civ. P. 57, so that the controversy regarding the enforceability of the restrictive covenants may be promptly resolved.

**SECOND CLAIM FOR RELIEF**
**(Violation of C.R.S. § 8-2-113(8) – Statutory Damages and Injunctive Relief)**

69.  Tatum incorporates by reference the allegations set forth in Paragraphs 1 through 68 as if fully set forth herein.

70.  An employer is prohibited from entering into, presenting to a worker as a term of employment, or attempting to enforce any covenant not to compete that is void under the statute. C.R.S. § 8-2-113(8)(a).

71. Defendant violated C.R.S. § 8-2-113(8)(a) by presenting Tatum with a void restrictive covenant as a mandatory condition of continued employment, without the required statutory notice or eligibility under the "highly compensated worker" threshold, and under threat of immediate termination.

72. Defendant further violated C.R.S. § 8-2-113(8)(a) by initiating the Ohio Action and continuing to pursue enforcement of the void non-compete provision, in direct contravention of the statute and Colorado public policy.

73. Any worker harmed by such conduct may bring an action for injunctive relief, actual damages, a statutory penalty of $5,000 per violation, and reasonable attorneys' fees and costs. C.R.S. § 8-2-113(8)(b).

74. Tatum has suffered financial harm as a result of Defendant's unlawful conduct, including lost earning potential, professional disruption, and the burden of defending against an out-of-state lawsuit enforcing void contractual provisions.

WHEREFORE, Plaintiff Tatum respectfully requests that the Court enter judgment in his favor and against Defendant, and award the following relief:

1. A permanent injunction enjoining Defendant from prosecuting or maintaining the Ohio Action or otherwise attempting to enforce the restrictive covenants contained in the Employment Agreement;

2. Actual damages suffered by Tatum as a result of Defendant's violations of C.R.S. § 8-2-113(8)(a);

3. A statutory penalty of $5,000 pursuant to C.R.S. § 8-2-113(8)(b);

4. An award of reasonable attorneys' fees and costs; and

5. Any such other and further relief as the Court deems just and proper.

Plaintiff Tatum also reserves the right to seek a temporary restraining order or preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure.

**VERIFICATION**

I, Michael Ryan Tatum, the undersigned, verify under the penalty of perjury, that the contents of this document are true and correct to the best of my knowledge. I am over the age of 18 and I am competent to testify.

Dated this 25th day of April, 2025.

_____
Michael Ryan Tatum


I, Simon Knobel, President of Calyx Containers, LLC, the undersigned, verify under the penalty of perjury, that the contents of this document are true and correct to the best of my knowledge. I am over the age of 18 and I am competent to testify.

Dated this 25th day of April, 2025.

_____
Simon Knobel, CEO of Calyx Containers

DATED this 25th day of April, 2025.

            Respectfully submitted,

            3i Law, LLC
            *[A duly signed original on file at office of undersigned.]*

            By: */s/ Jessamyn L. Jones*
            Jessamyn L. Jones
            Grant T. Shibao
            2000 S. Colorado Blvd. Tower 1
            Suite 10000
            Denver, CO 80222
            Telephone: (303) 245-2162
            Facsimile: (303) 245-2108
            jjones@3ilawfirm.com
            gshibao@3ilawfirm.com

            *Attorneys for Plaintiffs*