IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:25-cv-01321-CYC

MICHAEL RYAN TATUM, et al.

      Plaintiffs,

v.

KINZIE ADVANCED POLYMERS LLC d/b/a GROVE BAGS,

      Defendant.

---

## DECLARATION OF DANIEL JAFFE

---

I, Daniel Jaffe, being duly cautioned and sworn, hereby declare as follows:

1.      I am the Chief Financial Officer for Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags ("Plaintiff" or "Grove Bags").

2.      I have held the Chief Financial Officer position for Grove Bags at all times relevant to the captioned-lawsuit.

3.      This Declaration is being submitted in support of Grove Bags' Rule 12(b)(1) Motion.

4.      Plaintiffs Michael Ryan Tatum ("Tatum"), Chaz Hermanowski ("Hermanowski") and Jacob Torrison ("Torrison") are former employees of Grove Bags.

5.      Plaintiff Calyx Containers, LLC ("Calyx") (Calyx, Tatum, Hermanowski, and Torrison are collectively, "Plaintiffs") is Grove Bags' competitor.

1

6.      Grove Bags filed a lawsuit on October 29, 2024 in the United States District Court for the Northern District of Ohio, Case No. 1:24-cv-01887-SO (the "First Ohio Lawsuit") against Calyx and Tatum.  A copy of the complaint in the First Ohio Lawsuit is attached hereto as Exhibit 1.

7.      The docket for the First Ohio Lawsuit is attached hereto as Exhibit 2.

8.      On June 10, 2025, after learning that Hermanowski and Torrison were violating their contracts with Grove Bags, Grove Bags filed a Complaint in the United States District Court for the Northern District of Ohio, Case No. 1:25-cv-01217 (the "Second Ohio Lawsuit"), against Hermanowski and Torrison.  A copy of the complaint filed in the Second Ohio Lawsuit is attached as Exhibit 3.

9.      This Declaration refers to the Verified Complaint and Declaratory Judgment, Injunctive Relief, and Request for Hearing [Doc. 1] as the First Complaint.

10.     This Declaration refers to the Verified First Amended Complaint and Jury Demand [Doc. 21] as the Second Complaint.

11.     Grove Bags is an Ohio limited liability company with its principal place of business located in Cuyahoga County, Ohio at 26201 Richmond Road, Unit D, Bedford Heights, Ohio 44146.  Grove Bags' management team, warehouse and vast majority of its employees are in Ohio.  Grove Bags' sole member resides in Ohio.

12.     Grove Bags created TerpLoc®, a cannabis film that is the first of its kind. TerpLoc® helped Grove Bags become the leader in the cannabis packaging industry.  Grove Bags' products are utilized at all levels of the cannabis industry – from growers, to distributors to retailers.

13.    Grove Bags has become a market leader in the cannabis packaging industry through its development and protection of highly valuable trade secrets. Grove Bags takes significant precautions to protect its valuable trade secrets: (1) All employees sign employment agreements that require confidentiality and protect Grove Bags' contractual relationships; (2) all contractors are required to sign agreements that require confidentiality and protect Grove Bags' contractual relationships; (3) Grove Bags' employee handbook requires that employees protect Grove Bags' confidential business information; (4) Grove Bags' employees are trained on Grove Bags' policies; (5) Grove Bags' computers and software applications are password protected and limited to employees with a need to access the applications; (6) Grove Bags requires the return of company property when employment or contractor relationship ends; and (7) Grove Bags enforces its agreements when former employees violate their obligations to Grove Bags.

14.    Prior to being hired by Grove Bags, Tatum provided consulting services as an independent contractor to Grove Bags pursuant to a Consultancy Agreement. The Consultancy Agreement was effective September 1, 2020. The Consultancy Agreement provided that Tatum would have significant access to Grove Bags' products, sales procedures, and business strategy. The Consultancy Agreement required Tatum to maintain the confidentiality of Grove Bags' Confidential Information. Relevant to this Motion, the Consultancy Agreement provided that Ohio law applied to its interpretation and Cuyahoga County, Ohio was the exclusive jurisdiction for any claims arising under the Consultancy Agreement.

15.    A copy of the Consultancy Agreement is attached as Exhibit 4.

16.    Tatum adequately performed his duties under the Consultancy Agreement and Grove Bags offered Tatum employment with Grove Bags. Tatum was in charge of Grove

Bags' sales team throughout his employment with Grove Bags. Tatum managed and trained a sales force that was based primarily in Ohio. Tatum reported to Grove Bags' Chief Executive Officer and Chief Financial Officer who were based In Ohio. Tatum's work for Grove Bags was nationwide.

17.    Tatum's resume produced in this lawsuit is attached as Exhibit 5.

18.    Tatum signed the standard Grove Bags Employment Agreement on December 10, 2020. The Grove Bags Employment Agreement required Tatum to maintain the confidentiality of Grove Bags' Confidential Information. Relevant to this Motion, the Grove Bags Employment Agreement provided that Ohio law applied to its interpretation and Cuyahoga County, Ohio was the exclusive jurisdiction for any claims arising under the Grove Bags Employment Agreement.

19.    A copy of the December 10, 2020 Grove Bags Employment Agreement is attached as Exhibit 6.

20.    Tatum signed a second standard Grove Bags Employment Agreement on January 9, 2021. The Grove Bags Employment Agreement required Tatum to maintain the confidentiality of Grove Bags' Confidential Information. Relevant to this Motion, the Grove Bags Employment Agreement provided that Ohio law applied to its interpretation and Cuyahoga County, Ohio was the exclusive jurisdiction for any claims arising under the Grove Bags Employment Agreement.

21.    A copy of the 2021 Grove Bags Employment Agreement is attached as Exhibit 7.

22.    Tatum signed his third standard Grove Bags Employment Agreement on February 2, 2023. Grove Bags' records establish that Tatum took over three weeks to review

4

the Grove Bags Employment Agreement before signing it. Tatum's base salary was One Hundred and Forty-Five Thousand Dollars. The Grove Bags Employment Agreement required Tatum to maintain the confidentiality of Grove Bags' Confidential Information. Relevant to this Motion, the Grove Bags Employment Agreement provided that Ohio law applied to its interpretation and Cuyahoga County, Ohio was the exclusive jurisdiction for any claims arising under the Grove Bags Employment Agreement.

23.     A copy of the 2023 Grove Bags Employment Agreement is attached as Exhibit 8.

24.     Tatum's Grove Bags employment ended pursuant to a Severance Agreement. The Severance Agreement was signed on August 25, 2023. Tatum voluntarily resigned from his employment with Grove Bags in return for a severance payment. The Severance Agreement, consistent with the Grove Bags Employment Agreement, provided that Ohio law applied to its interpretation and Cuyahoga County, Ohio was the exclusive jurisdiction for any claims arising under the Grove Bags Employment Agreement. Finally, the Severance Agreement verified that Tatum's compliance with the obligations set forth in the Grove Bags Employment Agreement was a material term to the Severance Agreement.

25.     A copy of the Severance Agreement is attached as Exhibit 9.

26.     Grove Bags paid Tatum the promised severance payment and complied with its obligations under the Severance Agreement. The severance payment was paid over a three-month period pursuant to Grove Bags' normal payroll procedures. Tatum has never returned the severance payment to Grove Bags.

27.     Based on the Colorado lawsuit, within three months of Tatum's resignation from employment with Grove Bags, while Grove Bags was still paying the severance

payment, Calyx approached Tatum "about coming to work" with Calyx. The Colorado lawsuit further provides that Calyx made a second offer of employment to Tatum in January 2024. Finally, we now understand that Tatum ultimately accepted a position as a consultant with Calyx.

28.    A copy of Tatum's contract with Calyx is attached as Exhibit 10.

29.    Neither Tatum nor Calyx contacted Grove Bags regarding the consulting relationship.

30.    Rather, Grove Bags learned of the violation of the Severance Agreement and Grove Bags Employment Agreement through a vendor.

31.    Grove Bags filed the First Ohio Lawsuit on October 29, 2024 in the United States District Court for the Northern District of Ohio, Case No. 1:24-cv-01887-SO. The First Ohio Lawsuit seeks to enforce the terms of the Severance Agreement and Grove Bags Employment Agreement. The First Ohio Lawsuit remains pending. The Parties are in discovery, an injunction hearing has been held, and the Parties are waiting on the Ohio court to issue rulings on motions to dismiss filed by Calyx and Tatum and Grove Bags' motion for a preliminary injunction.

32.    The First Complaint in the Colorado lawsuit and the First Ohio Lawsuit have the identical parties and both lawsuits address the identical issues. In fact, the motions filed by Calyx and Tatum in the First Ohio Lawsuit seek the same remedy as in this lawsuit.

33.    The motion to dismiss filed by Tatum is attached as Exhibit 11. Tatum's motion requests the court in the First Ohio Lawsuit apply Colorado law to his contracts with Grove Bags.

34.     The preliminary injunction hearing in the First Ohio Lawsuit occurred on May 22, May 27, and May 28, 2025.  Tatum's testimony in the preliminary injunction hearing verified that numerous allegations in the First Complaint were not accurate.     More importantly, Tatum's testimony revealed that his written contract with Calyx required him to perform duties that would necessarily require the use and disclosure of Grove Bags' trade secrets.  Finally, Tatum and Calyx admitted that if Ohio law is applied to the Severance Agreement and Grove Bags Employment Agreement, then Tatum is in breach of both agreements.

35.     Tatum testified in the injunction hearing that due to the incorrect allegations in the First Complaint that the First Complaint would be amended.  Tatum further testified that he and Calyx had enlisted two former Grove Bags' employees, who he managed, Hermanowski and Torrison.  Tatum testified that although Hermanowski and Torrison had left their Grove Bags' employment years ago, that they believed Grove Bags somehow breached its contractual obligations to them.

36.     On June 10, 2025, Grove Bags filed the Second Ohio Lawsuit in the United States District Court for the Northern District of Ohio, Case No. 1:25-cv-01217.

37.     Like Tatum, Hermanowski and Torrison also signed the standard Grove Bags Employment Agreement.  On September 2, 20222, Hermanowski similarly signed a severance agreement that verified his compliance with the Grove Bags Employment Agreement.  Grove Bags paid the severance, which Hermanowski never returned.  Torrison's employment with Grove Bags ended on April 7, 2023, when Grove Bags terminated him for cause.

38.     The Second Complaint in the Colorado Lawsuit was filed after the preliminary injunction hearing in the First Ohio Lawsuit.  In addition, the Second Complaint was filed

7

after the Second Ohio Lawsuit. The Second Ohio Lawsuit seeks enforcement of the Grove

Bags Employment Agreement and the Severance Agreement – the identical issues raised by

Torrison and Hermanowski in the Second Complaint.


39.     The above is true and correct.

I have read the foregoing declaration and I affirm under penalty of perjury under the

laws of Ohio and the United States of America that the foregoing is true and accurate to the best

of my knowledge, information, and belief.

Printed Name

Signature

Date

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF OHIO
EASTERN DIVISION**

KINZIE ADVANCED POLYMERS, LLC    :
d/b/a Grove Bags                            :
26201 Richmond Rd. Unite D            :
Bedford Heights, OH 44146             :        CASE NO. _____
                                     :
        Plaintiff,            :        JUDGE _____
                                       :
v.                                     :
                                   :        (JURY DEMAND ENDORSED
                                   :        HEREON)
CALYX CONTAINERS, LLC         :
500 Lincoln St.                     :
Allston, Massachusetts 02134       :
c/o Registered Agent             :
Steven Silvers                     :
1991 Parkway Boulevard         :
West Valley City, Utah 84119       :
                                   :
and                                 :
                                 :
MICHAEL RYAN TATUM         :
5147 Chicory Circle              :
Brighton, Colorado 80601        :
                                 :
        Defendants.         :

**COMPLAINT FOR MONETARY AND
INJUNCTIVE RELIEF WITH JURY DEMAND**

       Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags ("Plaintiff" or "Grove Bags"),

for its Complaint for Monetary and Injunctive Relief With Jury Demand (the "Complaint") against

Defendants Calyx Containers, LLC ("Calyx") and Michael Ryan Tatum ("Tatum") and (Calyx and

Tatum are collectively, "Defendants"), states as follows:

**PARTIES**

       1.      Plaintiff is an Ohio limited liability company.

2.      Plaintiff's principal place of business is located in Cuyahoga County at 26201 Richmond Road, Unit D, Bedford Heights, Ohio 44146.

3.      Plaintiff's member resides in Ohio.

4.      Plaintiff created TerpLoc®, a cannabis film that is the first of its kind.

5.      Plaintiff is a leader in the cannabis industry with valuable contacts with all levels of the supply chain from growers to retailers.

6.      Tatum is a citizen of Colorado.

7.      Tatum is a former Grove Bags' employee who performed services for Grove Bags across North America and overseas.

8.      At Grove Bags, Tatum held the position of Chief Commercial Officer.

9.      Calyx is a limited liability company formed in Utah.

10.     Calyx does business in Ohio, but its principal place of business is outside of Ohio.

11.     Calyx's principal address is listed in Massachusetts.

12.     Upon information and belief, Calyx's principal place of business is in either Massachusetts or Utah.

13.     Upon information and belief, Calyx's members are not residents of Ohio.

14.     Calyx and Grove Bags are competitors.

15.     This lawsuit arises out of Tatum's intentional violation of his Grove Bags Employment Agreement (the "Employment Agreement") and Severance Agreement (the "Severance Agreement") (the Employment Agreement and the Severance Agreement are collectively, the "Agreements").

16.     The Employment Agreement is attached hereto as Exhibit 1.

17.     The Severance Agreement is attached hereto as Exhibit 2.

18.     This lawsuit further arises out of Calyx's tortious interference with Grove Bags' valuable contract rights.

19.     Finally, this lawsuit arises out of Defendants unlawful use of Grove Bags' trade secrets and confidential business information to improperly interfere with and damage Grove Bags' established business and products.

## JURISDICTION AND VENUE

20.     Complete diversity exists between the Parties.

21.     The amount in controversy in this matter is far in excess of one hundred thousand dollars.

22.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) there is complete diversity of citizenship between Plaintiff and the Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

23.     This Honorable Court also has jurisdiction over this matter because Grove Bags is asserting a federal claim under the Defendant Trade Secrets Act of 2016, 18 U.S.C. §1836 (the "DTSA").

24.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.

25.     Jurisdiction is also proper in this Court because the Employment Agreement provides that any claims arising out of the Employment Agreement shall be adjudicated in the courts of the State of Ohio, in Cuyahoga County.

26.     Specifically, as part of the Employment Agreement, Tatum "consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding."

27.     In addition, the Severance Agreement provides that any claims arising out of the Severance Agreement shall be adjudicated in the courts of the State of Ohio, in Cuyahoga County.

3

28.     Venue is proper in this Court because it is the forum required by the Employment Agreement.

29.     Venue is also proper in this Court because it is the forum required by the Severance Agreement.

30.     Tatum expressly consented, in writing, to the jurisdiction and venue of this Court in the Employment Agreement and the Severance Agreement entered into with Grove Bags.

31.     Finally, Grove Bags' trade secrets, confidential business information, and contracts have significant ties to Ohio and, therefore, this lawsuit arises out of events occurring in this District.

## GROVE BAGS IS THE MARKET LEADER

32.     Grove Bags sells high quality packaging products commercial and residential customers.

33.     Grove Bags develops and distributes packaging products that create the optimal cannabis climate inside every package.

34.     TerpLoc® provides Grove Bags with a competitive advantage in the marketplace.

35.     Grove Bags takes significant precautions to protect the TerpLoc® manufacturing information.

36.     Grove Bags' products support all phases of the cannabis industry from the grower, to the distributor, to the warehouse, the retailer and finally the end-using customer.

37.     Grove Bags has developed customers throughout the cannabis retail business.

38.     Grove Bags has developed significant customer information that is highly valuable.

39.     Grove Bags takes significant precautions to protect this customer information from use outside of Grove Bags.

40.    All Grove Bags' employees are required to sign confidentiality agreements.

41.    The confidentiality agreements comply with the DTSA and Ohio law.

42.    Grove Bags limits access of customer information to employees with a need to utilize such information for their Grove Bags' job duties and responsibilities.

43.    Grove Bags' computer systems are password protected.

44.    Grove Bags further limits access to certain customer, financial and product information.

45.    Grove Bags requires that employees leaving their employment with Grove Bags to return all Grove Bags' property and equipment.

46.    Grove Bags trains its employees to utilize Grove Bags' valuable customer information and trade secrets to perform their Grove Bags' duties.

47.    Grove Bags' customer information and training provide Grove Bags with a competitive advantage in the industry.

48.    Grove Bags' valuable business information and trade secrets include Grove Bags' costs, Grove Bags' pricing, Grove Bags' customer contracts, Grove Bags' proposed contracts, Grove Bags' distribution channels, Grove Bags' sales information, Grove Bags' customer list, Grove Bags' prospective customer lists, and information and documents relating to the manufacturing and selling of TerpLoc®.

49.    The confidential business information is highly valuable.

50.    Grove Bags takes significant precautions to protect the confidential business information.

51.    The confidential business information is considered a trade secret under state and federal law.

5

52.     While headquartered in Ohio, Grove Bags sells its products all over the world.

## TATUM HAD ACCESS TO GROVE BAGS'
## TRADE SECRETS AND CUSTOMERS

53.     Tatum was employed by Grove Bags as Chief Commercial Officer.

54.     A term and condition of Tatum's employment with Grove Bags was execution of the Employment Agreement.

55.     Grove Bags would not have hired Tatum and provided him with access to its valuable and confidential customer and training information had Tatum not executed the Employment Agreement.

56.     The Employment Agreement provided Tatum with a significant salary.

57.     The Employment Agreement provided Tatum the opportunity to earn wages far beyond his salary based on sales of Grove Bags' products.

58.     As Chief Commercial Officer, Tatum led Grove Bags' domestic sales efforts.

59.     As Chief Commercial Officer, Tatum was responsible for making sales on behalf of Grove Bags.

60.     As Chief Commercial Officer, Tatum was also responsible for growing and scaling the sales team.

61.     As Chief Commercial Officer, Tatum was responsible for training and mentoring Grove Bags' employees.

62.     As Chief Commercial Officer, Tatum had direct contact with and intimate knowledge of Grove Bags' customers and Grove Bags' potential customers.

63.     As Chief Commercial Officer, Tatum has significant knowledge of Grove Bags' business, customers' products, vendors, suppliers, employees, pricing, and trade secrets.

64.     Tatum worked directly with Grove Bags' current and prospective customers.

65.    Tatum worked directly with Grove Bags' management team to learn Grove Bags' products, Grove Bags' pricing information, Grove Bags' cost structure, Grove Bags' business advantages, Grove Bags' distribution channels, and other information that provided Tatum with the ability to maximize his income.

66.    The Employment Agreement protected Grove Bags' contractual relationships, customer relationships, and trade secrets.

67.    Paragraph 6(a) of the Employment Agreement prohibits Tatum, for a two year period immediately following the voluntary or involuntary termination of his employment with Grove Bags, from directly or indirectly engaging in any business in competition with Grove Bags in the United States or Canada, whether acting independently or as an employee of another company.

68.    Paragraph 6(b) of the Employment Agreement also prohibits Tatum, for a two year period immediately following the voluntary or involuntary termination of his employment with Grove Bags, from soliciting business from Grove Bags' current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or any persons or entities doing business with Grove Bags.

69.    Paragraph 6(c) prohibits Tatum from soliciting Grove Bags' employees who also are required to sign versions of the Employment Agreement.

70.    Paragraph 7 of the Employment Agreement prohibits Tatum from disclosing Grove Bags' proprietary, confidential, or business information, including its customer lists.

71.    The definition of confidential information in Paragraph 7 is reasonable and tied to Grove Bags' operations.

72.    The Employment Agreement verifies that the restrictive covenants are reasonable and that Grove Bags is entitled to attorney fees if it is required to file a lawsuit to enforce the Employment Agreement.

73.    Grove Bags strictly enforces the restrictive covenants in the Employment Agreement.

74.    Grove Bags fully complied with the Employment Agreement.

## **TATUM'S SEPARATION**

75.    Tatum voluntarily resigned from his Grove Bags' employment on August 24, 2023, based on the Severance Agreement.

76.    Grove Bags provided Tatum with a severance payment in return for Tatum's promises set forth in the Severance Agreement.

77.    Highly relevant to this lawsuit, Paragraph 10 of the Severance Agreement provides: "Compliance With Employment Agreement.  The Employee agrees that the Employment Agreement governed his employment with the Company and that the restrictions contained in Paragraphs 6, 7, and 8 in the Employment Agreement are reasonable.  The Employee further agrees that his continued compliance with the Employment Agreement is a condition to this Agreement. The Employee's obligations to the Company under the Employment Agreement are incorporated into this Agreement and shall remain in full force and effect."

78.    Also relevant to this lawsuit, Paragraph 11 of the Severance Agreement provides: "Third Party Contacts.  If the Employee is contacted by any Company customers, prospective customers, suppliers or vendors ("Third Parties"), the Employee shall direct the Third Parties to Dan Jaffe at dan@grovebags.com.  The Employee shall also email Jaffe to notify him of the potential contact."

8

79.     The Severance Agreement was negotiated.

80.     Tatum represented that he consulted with legal counsel to review and negotiate the Severance Agreement.

81.     Grove Bags has fully complied with the Severance Agreement.

82.     Tatum has never advised Jaffe of any contact by Third Parties.

83.     Tatum has never objected to the Severance Agreement following its execution.

## CALYX IS A COMPETITOR

84.     Calyx is Grove Bags' competitor.

85.     Calyx's packaging products are not comparable to Grove Bags' packaging products.

86.     Upon information and belief, Calyx's sales organization is not as developed and planned as Grove Bags' sales organization.

87.     The management teams of Calyx and Grove Bags have contact due to the cannabis industry.

88.     Prior to learning of the misconduct in this lawsuit, Grove Bags' founder and Chief Executive Officer confirmed Grove Bags' contractual relationships, trade secrets and inclination to protect these relationships and trade secrets with an owner of Calyx in an August 2024 email.

89.     The email confirmed prior discussions between the management teams that left no doubt that all Grove Bags' employees sign employment agreements and Grove Bags strictly enforces its employment agreements.

90.     Tatum is fully aware that Grove Bags' strictly enforces the restrictive covenants in the Employment Agreement.

## **DEFENDANTS' UNLAWFUL CONDUCT**

91.    Calyx did not object to the August 2024 email.

92.    Calyx did not advise Grove Bags that it intended to hire Tatum.

93.    Tatum did not advise Grove Bags that he was seeking employment with Calyx.

94.    Tatum has communicated with Third Parties on behalf of Calyx in violation of the Severance Agreement.

95.    Tatum is performing duties on behalf of Calyx.

96.    Tatum is attempting to create a sales organization at Calyx that mirrors Grove Bags' sales organization.

97.    Tatum has initiated these activities in violation of the Severance Agreement and the Employment Agreement.

98.    Tatum has advised Third Parties that he is a consultant for Calyx.

99.    Tatum has advised Third Parties that he has accepted an offer of employment with Calyx that will begin in early 2025.

100.    Tatum is utilizing confidential business information and trade secrets in the performance of his Calyx duties.

101.    Tatum's activities and relationship with Calyx violate the Severance Agreement.

102.    Tatum's activities and relationship with Calyx violate the Employment Agreement.

103.    Calyx was fully aware of Tatum's Severance Agreement.

104.    Calyx was fully aware of Tatum's Employment Agreement.

105.    Calyx and Tatum are attempting to hide Tatum's activities from Grove Bags.

106.    Grove Bags has filed this lawsuit upon notice of Defendants' wrongful conduct in order to prevent Tatum from further disclosing valuable trade secrets to Calyx.

107.    Contemporaneously with this filing, Grove Bags have notified Calyx of Tatum's wrongful conduct and statements to third parties.

108.    Tatum's conduct has damaged Grove Bags.

109.    Calyx's conduct has damaged Grove Bags.

110.    Unless Defendants are enjoined, Grove Bags will suffer irreparable harm.

### COUNT I – BREACH OF CONTRACT
### EMPLOYMENT AGREEMENT

111.    Grove Bags incorporates paragraphs 1 through 110 of the Complaint as if fully rewritten.

112.    The Employment Agreement is an enforceable contract.

113.    Grove Bags has fully complied with the Employment Agreement.

114.    The Employment Agreement prohibits Tatum from disclosing Grove Bags' proprietary or confidential information, competing with Grove Bags, or soliciting business from Grove Bags' customers.

115.    Tatum has breached the Employment Agreement.

116.    The Employment Agreement provides for injunctive relief because Tatum's breach will cause Grove Bags irreparable harm.

117.    Unless injunctive relief is granted, Tatum's actions will cause Grove Bags to suffer irreparable harm.

118.    As a direct and proximate result of Tatum's breach of the Employment Agreement, Grove Bags has suffered damages in excess of $25,000.

119.    Grove Bags is entitled to its attorneys' fees in bringing this action because of Tatum's violation of the Employment Agreement.

11

## COUNT II – BREACH OF CONTRACT
## SEVERANCE AGREEMENT

120.    Grove Bags incorporates paragraphs 1 through 119 of the Complaint as if fully rewritten.

121.    The Severance Agreement is an enforceable contract.

122.    Grove Bags has fully complied with the Severance Agreement.

123.    The Severance Agreement prohibits Tatum from disclosing Grove Bags' confidential information.

124.    The Severance Agreement incorporates Tatum's obligations under the Employment Agreement.

125.    Tatum has breached the Severance Agreement.

126.    Tatum has not returned the severance payment.

127.    As a direct and proximate result of Tatum's breach of the Severance Agreement, Grove Bags has suffered damages in excess of $25,000.

128.    Grove Bags is entitled to its attorneys' fees in bringing this action because of Tatum's violation of the Severance Agreement.

129.    Grove Bags is entitled to recover the severance payments issued under the Severance Agreement.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS

130.    Grove Bags incorporates paragraphs 1 through 129 of the Complaint as if fully rewritten.

131.    The DTSA protects Grove Bags' confidential business information.

132.    Ohio law protects Grove Bags' confidential business information.

133.     Grove Bags maintains trade secrets. Grove Bags expended considerable effort and money in obtaining and developing its trade secrets.

134.     Those trade secrets are valuable in that they are not generally known to the competitors of Grove Bags or the public.

135.     Grove Bags has taken reasonable efforts to maintain the secrecy of its trade secrets.

136.     Upon information and belief, Tatum has willfully and maliciously misappropriated Grove Bags' trade secrets and used them to his business advantage.

137.     Calyx has willfully and maliciously misappropriated Grove Bags' trade secrets and used them to its business advantage.

138.     Unless injunctive relief is granted, Defendants' misappropriation will cause Grove Bags to suffer irreparable harm.

139.     Defendants are therefore liable to Grove Bags under the Ohio Trade Secrets Act and injunctive relief should be granted.

140.     Defendants are therefore liable to Grove Bags under the Ohio Trade Secrets Act for its actual damages, exemplary damages, and attorneys' fees, and injunctive relief should be granted.

## COUNT IV – TORTIOUS INTERFERENCE WITH ECONOMIC AND/OR BUSINESS RELATIONS

141.     Grove Bags incorporates paragraphs 1 through 140 of the Complaint as if fully rewritten.

142.     Grove Bags has economic and business relationships with its customers and other third parties.

143.     Defendants know of Grove Bags' economic and business relationships.

144.    Tatum has contacted at least one Third Party who has a contractual relationship with Grove Bags.

145.    Tatum's contact with this Third Party was intended to utilize the Third Party's valuable services for Calyx.

146.    Calyx would not have known or used of this Third Party but for Tatum.

147.    The Third Party's business, know-how and expertise were known to Tatum due to his Grove Bags' employment.

148.    Defendants intentionally and maliciously interfered with Grove Bags' economic and business relationships.

149.    Unless injunctive relief is granted, Defendants' interference and misappropriation will cause Grove Bags to suffer irreparable harm.

150.    As a direct and proximate result of Defendants' intentional and malicious interference with Grove Bags' economic and business relationships, Grove Bags has suffered damages in excess of $25,000.

151.    Defendants are therefore liable to Grove Bags for its actual damages, exemplary damages, and reasonable attorneys' fees.

## COUNT V – TORTIOUS INTERFERENCE WITH ECONOMIC, CONTRACT, AND/OR BUSINESS RELATIONS

152.    Grove Bags incorporates paragraph 1 through 151 of the Complaint as if fully rewritten.

153.    Grove Bags had an economic, contract, and business relationship with Tatum.

154.    Grove Bags has economic, contract, and business relationships with its current employees.

155.    Grove Bags has economic, contract, and business relationships with customers, vendors, suppliers and other third parties.

156.    Calyx knew of Grove Bags' economic, contract and business relationships with Tatum.

157.    Calyx was aware of Grove Bags' contract with Tatum.

158.    Tatum knew that consulting and/or accepting employment with Calyx was in violation of his agreements with Grove Bags.

159.    Calyx intentionally and maliciously interfered with Grove Bags' economic, contract and business relationship with Tatum and has attempted to interfere with Grove Bags' economic, contract, and business relationship with its other employees.

160.    Unless injunctive relief is granted, Defendants' actions will cause Grove Bags to suffer irreparable harm.

161.    As a direct and proximate result of Defendants' intentional and malicious interference with Grove Bags' economic and business relationships, Grove Bags has suffered damages in excess of $25,000.

162.    As a consequence of Defendants' actions, which were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Grove Bags, Grove Bags is entitled to an award of punitive or exemplary damages and attorneys' fees.

163.    Defendants are therefore liable to Grove Bags for its actual damages, exemplary damages, and reasonable attorneys' fees.

## **COUNT VI – CIVIL CONSPIRACY**

164.    Grove Bags incorporates paragraph 1 through 163 of the Complaint as if fully rewritten.

165.    Defendants have conspired to unlawfully utilize Grove Bags' trade secrets.

166.    Defendants have conspired to unlawfully interfere with Grove Bags' customer relationships.

167.    Defendants have conspired to damage Grove Bags.

168.    Defendants have attempted to hide their employment relationship in order to avoid litigation and to damage Grove Bags behind the scenes.

169.    Defendants' conduct is knowing, intentional and malicious.

170.    As a direct and proximate result of Defendants' intentional and malicious interference with Grove Bags' economic and business relationships, Grove Bags has suffered damages in excess of $25,000.

171.    As a consequence of Defendants' actions, which were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Grove Bags, Grove Bags is entitled to an award of punitive or exemplary damages and attorneys' fees.

172.    Defendants are therefore liable to Grove Bags for its actual damages, exemplary damages, and reasonable attorneys' fees.

## **COUNT VII – INJUNCTIVE RELIEF**

173.    Grove Bags incorporates paragraphs 1 through 172 of the Complaint as if fully rewritten.

174.    Tatum's conduct in violating the Employment Agreement and Severance Agreement, interfering with Grove Bags' economic and business relationships, and misappropriating Grove Bags' trade secrets, including customer lists and information, unless enjoined, will cause irreparable harm to Grove Bags.

175.    Calyx's conduct in soliciting Tatum and offering employment to Tatum in a consulting role/sales position will cause irreparable harm to Grove Bags if Tatum begins active employment with Calyx.

176.    Tatum's conduct is a knowing violation of his obligations to Grove Bags.

177.    Tatum was previously notified and made aware of the Agreements and Grove Bags' intent to enforce the Agreements.

178.    Calyx was also notified of Grove Bags' Agreements and Grove Bags' position that Calyx's employment of Tatum violated the Agreements.

179.    Calyx was aware of Grove Bags' contracts with Tatum.

180.    Calyx was aware of Tatum's non-compete agreement.

181.    Unless enjoined from continuing such conduct, Defendants' actions will cause irreparable injury to Grove Bags for which Grove Bags would have no adequate remedy at law.

182.    An injunction is necessary to prevent any irreparable injury to Grove Bags and, further, would be in the public's interest.

183.    Tatum had notice of these issues, but elected to continue violating the Employment Agreement and the Severance Agreement.

184.    Defendants should therefore be enjoined: from competing against Grove Bags in violation of the Employment Agreement; from soliciting Grove Bags employees to terminate their employment  and compete with Grove Bags in violation of the Employment Agreement; from

interfering with the relationship between Grove Bags and its employees; from soliciting business from Grove Bags' customers in violation of the Employment Agreement; from using Grove Bags' confidential and proprietary information in violation of the Employment Agreement and Severance Agreement; and from misappropriating Grove Bags' trade secrets.

WHEREFORE, Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags demands judgment and relief against Defendants Michael Ryan Tatum and Calyx Containers as follows:

1.      Injunctive relief requiring Tatum's compliance with the Employment Agreement with Grove Bags;

2.      Injunctive relief requiring Tatum's compliance with the Severance Agreement with Grove Bags;

3.      Injunctive relief requiring Calyx to cease employing Tatum;

4.      Injunctive relief requiring Defendants to return Grove Bags' business information;

5.      Damages and all other relief, at law or equity, to which Grove Bags is entitled;

6.      Return of Tatum's severance payment;

7.      Exemplary damages against Defendants in an amount to be proven at trial;

8.      Reasonable attorneys' fees pursuant to the Employment Agreement, Severance Agreement, Ohio statutory and common law;

9.      Costs incurred in prosecuting this action; and

10.     Any other appropriate relief that this Court deems just and equitable.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Gordon Rees Scully Mansukhani
600 Superior Avenue East, Suite 1300
Cleveland, Ohio 44114
Phone: 216-302-2531
Fax: 216-539-0026
Dcampbell@grsm.com

*Attorney for Plaintiff*
*Kinzie Advanced Polymers, LLC*

## JURY DEMAND

Plaintiff demands a trial by jury in this matter with the maximum number of jurors permitted by law.

/s/ David A. Campbell
*Counsel for Plaintiff Kinzie Advanced Polymers,*
*LLC d/b/a Grove Bags*

DocuSign Envelope ID: 202A905E-4F5-4B98-9B89-4998C2E08833



## GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of February 1st,  2023, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 26201 Richmond Rd Bedford Heights, OH 44146 (the "Company"), and Michael Tatum having an address at

__5147 Chicory Circle Brighton, CO 80601_____("Employee").

WHEREAS, the Company has created TerpLoc®, a cannabis film that is the first of its kind;

WHEREAS, the Company is a leader in the cannabis industry with valuable contacts with all levels of the supply chain from growers to retailers;

WHEREAS, as an employee of the Company, Employee will have access to the Company's various trade secrets and confidential information belonging to the Company and others;

WHEREAS, this Agreement is a condition of Employee's employment with the Company because this Agreement protects the Company's valuable confidential business information, trade secrets, employment relationships, and customer relationships;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

DocuSign Envelope ID: 292A905E-E4F6-4B98-9809-4998C2E08833

1. Employment. Continuing as of February 1st, 2023 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the "Employment Period"). The first three (3) consecutive months of the Employee's employment under this Agreement are agreed to constitute a period of probation during which the Company shall have the opportunity to assess the suitability of the Employee's performance and conduct (the "Probation Period"). At any time during the Probation Period, Company may terminate the Employee's employment, on the grounds of unsuitability, without providing any working notice or payment in lieu thereof.

3. Compensation. The Company shall pay Employee a base annual salary of $145,000.00 ("Compensation") to be paid in bi-monthly installments. Employee may receive bonus payments of up to $6,500 based on performance of each defined territory, as listed in Exhibit A. Employee receives a $1,000.00 bonus for each of the 6 territories that achieve their goal. An additional $500.00 bonus is available for the team achieving its total goal, regardless of which territories the revenue is generated from. Employee must be an active employee in good standing at time of bonus or commission disbursement to be eligible. Termination of employment by either party results in the employee forfeiting any claim to any and all future bonuses and commissions.

All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

DocuSign Envelope ID: 292A905E-E4F6-4B98-9B09-4998C2E08833

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:24-cv-01887-SO    Doc #: 10-32 Filed: 10/29/24    3 of 13.    PageID #: 23

Page 3 of 13                    Michael Tatum Employment

(a) Position. Employee shall serve as the Chief Commercial Officer for Company.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion. Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

(e)Kickback. Employee shall not receive any compensation from any vendors or customers while employed at Company. Violation this provision will result in immediate termination, return of compensation to Company, and any damages.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties. Upon termination of this Agreement, Employee shall only be

DocuSign Envelope ID: 292A905E-4E5E-4B98-9809-4998C2E08833

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:24-cv-01887-SO    Doc #: 1-3 Filed: 10/29/24    4 of 13.    PageID #: 24

Page 4 of 13                        Michael Tatum Employment

entitled to salary through the date of termination of this Agreement. No commission or other payments shall survive the termination of the Agreement.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

(a) **<u>Agreement Not To Directly Compete With The Company.</u>** While employed by the Company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) **<u>Non-Solicitation of Customers And Other Third Parties.</u>** While employed by the Company and for a period of two (2) years immediately

DocuSign Envelope ID: 292A905E-E4F5-4B98-9B89-4998C2E08833

following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly solicit, contact, induce, or attempt to induce the Company's current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or any persons or entities with business relations with the Company to cease doing business with the Company, or in any way interfere with the relationship between any such current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or business relation with the Company

(c) **Non-Solicitation of Employees.** While employed by the Company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly, induce or attempt to induce any employee of the Company to leave the employ of the Company, or in any way interfere with the relationship between the Company and any employee.

(d) **Non-Disparagement.**  Employee agrees and covenants that Employee will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Company or its business, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

(e) **Remedies for Breach of Restrictive Covenants.** Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

 (f) **Recovery of Attorneys' Fees.**  In the event of litigation claiming breach of this Agreement by the Employee, the Company shall have the right to

DocuSign Envelope ID: 292A905E-E4F5-4B98-9B89-4998C2E08833

recover from the Employee its attorneys' fees and costs incurred as a result of such litigation if the Employee is found to have violated this Agreement.

(g) **Continuation of Restrictive Covenants.** Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees

DocuSign Envelope ID: 292A905E-E4F5-4B98-9B89-4998C2E08833

who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period).

(c) Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.  Employee also agrees to provide the Company with all usernames and passwords for any and all computers, tablets, files, documents, websites, applications, software, or any other electronic or technical device, program, or file in which Employee used and/or created in connection with any duty Employee performed on behalf of the Company. This Section does not apply to any username or password which pertains solely to Employee's personal information or matters that do not involve the Company or its businesses or in any way violate any local, state, or federal law.

(d) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation

DocuSign Envelope ID: 292A905E-E4E5-4B98-9B99-4998C2E08833

to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

(e) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(f) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 292A905E-E4F6-4B98-9800-4998C2E08833
Case: 1:24-cv-01887-SO    Doc #: 10-38 Filed: 10/29/24   9 of 13.  PageID #: 29

hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

DocuSign Envelope ID: 202A9055-E4E5-4B98-9808-4008C2E93833

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 10-39 Filed: 10/29/24  10 of 13.  PageID #: 30

Page 10 of 13                    Michael Tatum Employment

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

DocuSign Envelope ID: 202A9055-5455-4B98-9808-4098C2ED3833

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 26201 Richmond Rd, Bedford Heights, OH 44146; if to the Employee, to Michael Tatum at

The parties hereto have executed this Agreement as of the day and year first above written.

DocuSign Envelope ID: 202A9055-E455-4B98-9808-4009C2EP3833

Michael Tatum Employment

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Daniel Jaffe
Its: CFO

DocuSigned by:

*Dan Jaffe*

8F06C007B06B407...

Date: 2/3/2023


Employee:

Michael Tatum

DocuSigned by:

*Michael Ryan Tatum*

CF403C5D30EA482...

Date: 2/2/2023

Exhibit A

| | Q1 2023 | Q2 2023 | Q3 2023 | Q4 2023 | Total Sales |
|---|---|---|---|---|---|
| North East | $132,000.00 | $156,000.00 | $186,000.00 | $126,000.00 | **$600,000.00** |
| Mid West | $484,000.00 | $572,000.00 | $682,000.00 | $462,000.00 | **$2,200,000.00** |
| Central | $286,000.00 | $338,000.00 | $403,000.00 | $273,000.00 | **$1,300,000.00** |
| West Coast | $396,000.00 | $468,000.00 | $558,000.00 | $378,000.00 | **$1,800,000.00** |
| House | $396,000.00 | $468,000.00 | $558,000.00 | $378,000.00 | **$1,800,000.00** |
| Brick & Mortar | $150,000.00 | $240,000.00 | $310,000.00 | $300,000.00 | **$1,000,000.00** |
| | | | | | **$8,700,000.00** |

DocuSign Envelope ID: 259AE99E-BB93-4685-BC49-C00ED9194F66

# SEVERANCE AGREEMENT

This Severance Agreement (the "Agreement") is entered into this 25 day of August, 2023 by and between Michael Ryan Tatum (the "Employee") and Kinzie Advanced Polymers LLC (the "Company") (the Employee and Company are collectively, the "Parties").

**WHEREAS**, the Employee is currently employed by the Company pursuant to the Grove Bags Employment Agreement (the "Employment Agreement");

**WHEREAS**, the Employment Agreement is the only written agreement executed by the Employee during his employment with the Company;

**WHEREAS**, the Employee is voluntarily resigning from his employment with the Company effective August 24, 2023, in return for the severance payment set forth in this Agreement;

**WHEREAS**, the Parties have entered into this Agreement to provide the Employee with a severance payment in return for the promises set forth herein;

**NOW, THEREFORE**, in consideration of these promises and of the covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, with the intent to be legally bound hereby, agree as follows:

1. <u>Resignation From Employment</u>.  By signing below, in return for the severance payment set forth in Paragraph 2, the Employee voluntarily resigns from his employment with the Company effective August 24, 2023.  This Agreement shall serve as the written notice of the Employee's resignation and the termination of the Employment Agreement pursuant to Paragraph 5(a) of the Employment Agreement.

2. <u>Severance Payment</u>.  If the Employee executes this Agreement, the Company shall pay the Employee a severance payment totaling three months of the Employee's base annual salary (the "Severance Payment").  The Severance Payment represents any claims the Employee has regarding wages, benefits, vacation, commissions, bonuses, phantom stock options, stock options, expenses or any other compensation relating to the Employee's employment with the Company and the Employment Agreement.  The Severance Payment shall be paid according to the Company's normal payroll procedures over the three month pay period.  State, local, and federal withholding taxes will be withheld from the Severance Payment.  The Severance Payment is good and valuable consideration for this Agreement.

3. <u>Cooperation</u>.  During the period that the Severance Payment is being paid, the Employee agrees to cooperate on all employee or customer issues that may arise.

4. <u>Release in Full of All Claims</u>.  The Employee, on behalf of himself, his family, his heirs, and his assigns, hereby forever releases and discharges the Company and the Company's affiliates, parent companies, subsidiaries, officers, directors, shareholders, members, attorneys, owners, directors, contractors, employees, agents, and assigns (the "Released Parties") from any

DocuSign Envelope ID: 259AE99E-BB93-4685-BC48-C00ED9191E66

and all charges, contract claims, claims, demands, judgments, causes of action (under state and federal law), damages, expenses, costs, attorneys' fees, and liabilities of any kind whatsoever arising out of or relating to the Employee's employment with the Company, the Employee's relationship with the Released Parties, the Employment Agreement, phantom stock options, and/or the Employee's separation from employment.

5.    <u>No Derogation of the Company</u>.  The Employee agrees that he shall not, directly or indirectly, make any disparaging or defamatory remarks about the Company or the Company's affiliates, officers, directors, employees, agents, customers, or clients.

6.    <u>Communication of the Employee's Resignation</u>.  The Company will notify the organization and third parties of the Employee's departure as follows:

> Ryan Tatum is no longer a part of the Grove Bags team. We were very fortunate to have had Ryan help our organization grow and scale over the past 3 years as Grove Bags would not be the company it is today without him. However, he felt it was time to explore other projects and passions. We wish him luck on his new ventures and are excited to continue seeing him as a fixture in the industry.

7.    <u>Confidentiality</u>.  The Employee agrees and acknowledges that the Employee had access to and acquired knowledge of confidential, sensitive and proprietary information relating to the Company and the Company's business, the Company's profits, the Company's losses, financial statements, the Company's owner, the Company's employees, the Company's former employees, policies, safety practices, business strategies, business plans, and other information that is not known outside of the Company and which is valuable to the Company (the "Confidential Information").  The Employee shall not, at any time, divulge or use the Confidential Information.

8.    <u>Confidentiality</u>.  The Employee agrees to keep this Agreement confidential.

9.    <u>Return of Company Documents</u>.  The Employee agrees to return all Company property and documents within two (2) days of his resignation date.  The Employee also agrees to provide the Company with all usernames and passwords for any and all computers, tablets, files, documents, websites, applications, software, or any other electronic or technical device, program, or file in which the Employee used and/or created in connection with any duty he performed on behalf of the Company.

10.    <u>Compliance With Employment Agreement</u>.  The Employee agrees that the Employment Agreement governed his employment with the Company and that the restrictions contained in Paragraphs 6, 7, and 8 in the Employment Agreement are reasonable.  The Employee further agrees that his continued compliance with the Employment Agreement is a condition to this Agreement.  The Employee's obligations to the Company under the Employment Agreement are incorporated into this Agreement and shall remain in full force and effect.

11.    <u>Third Party Contacts</u>.  If the Employee is contacted by any Company customers, prospective customers, suppliers or vendors ("Third Parties"), the Employee shall direct the Third

Parties to Dan Jaffe at dan@grovebags.com.  The Employee shall also email Jaffe to notify him of the potential contact.

      12. <u>Counterparts</u>.  This Agreement may be executed by the Parties in separate counterparts, each of which when executed and so delivered, via email or facsimile, is an original, and all such counterparts together constitute but one and the same contract.

      13. <u>Governing Law</u>.  This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

AGREED:

KINZIE ADVANCED POLYMERS LLC        EMPLOYEE

By: *Dan Jaffe*
                                       *Michael Ryan Tatum*

Its: Dan Jaffe     CFO                            Michael Ryan Tatum

JS 44  (Rev. 09/23)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kinzie Advanced Polymers d/b/a Grove Bags

### DEFENDANTS

Calyx Containers, LLC

**(b)** County of Residence of First Listed Plaintiff    Cuyahoga, OH
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Suffolk, MA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine   Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract | Product Liability / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -   Product Liability | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Leave Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | ☐ 791 Employee Retirement | | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | | or Defendant) | Act/Review or Appeal of |
| | Employment   **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | 26 USC 7609 | ☐ 950 Constitutionality of |
| | Other / ☐ 550 Civil Rights | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 448 Education / ☐ 555 Prison Condition | Actions | | |
| | ☐ 560 Civil Detainee -   Conditions of   Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Defend Trade Secrets Act of 2016

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $    25,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    10/29/2024

SIGNATURE OF ATTORNEY OF RECORD    /s./ David A. Campbell, esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**     Civil Categories: (Please check one category only  ).

1.  [✔]   General Civil
2.  [ ]   Administrative Review/Social Security
3.  [ ]   Habeas Corpus Death Penalty

   *If under Title 28, §2255, name the SENTENCING JUDGE: _____

                                                  CASE NUMBER: _____

**II.**   **RELATED OR REFILED CASES** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regard for the place of holding court in which the case was refiled.  Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action:   [ ] is **RELATED** to another **PENDING** civil case   [ ] is a **REFILED** case   [ ] was **PREVIOUSLY REMANDED**

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.**   In accordance with Local Civil Rule   **3.8**, actions involving counties in the Eastern Division shall be filed at any of  the divisional offices therein.  Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

   ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER.  UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

   (1)   **Resident defendant**. If the defendant resides in a county within this district, please set forth the name of such county
   **COUNTY**:
   Corporation  **For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.**

   (2)   **Non-Resident defendant**. If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.
   **COUNTY**:  Suffolk, MA

   (3)   **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.
   **COUNTY**:

**IV.**   The Counties in the Northern District of Ohio are divided into divisions as shown below.  After the county is determined in Section   **III**, please check the appropriate division.

**EASTERN DIVISION**

[ ]   **AKRON**        **(Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)**
[✔]   **CLEVELAND**    **(Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)**
[ ]   **YOUNGSTOWN**   **(Counties: Columbiana, Mahoning and Trumbull)**

**WESTERN DIVISION**

[ ]   **TOLEDO**       **(Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

|  |  |  |
|---|---|---|
| Kinzie Advanced Polymers d/b/a Grove Bags | ) ) ) ) | |
| *Plaintiff(s)* | ) | |
| v. | ) ) | Civil Action No.  1:24-cv-1887 |
| Calyx Containers, LLC, et al. | ) ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Calyx Containers, LLC
c/o Registered Agent Steven Silvers
1991 Parkway Boulevard
West Valley City, Utah 84119

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
David A. Campbell
Gordon Rees Scully Mansukhani, LLP
600 Superior Avenue East, Suite 1300
Cleveland, OH 44114
dcampbell@grsm.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*SANDY OPACICH, CLERK OF COURT*

Date:  _____10/29/2024_____            _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   1:24-cv-1887

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*




My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*

                                                   _____
                                                        *Printed name and title*

                                                   _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

|  |  |
|---|---|
| Kinzie Advanced Polymers d/b/a Grove Bags | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) )   Civil Action No.  1:24-cv-1887 |
| Calyx Containers, LLC, et al. | ) ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Michael Ryan Tatum
5147 Chicory Circle
Brighton, Coloradom 80601

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

David A. Campbell
Gordon Rees Scully Mansukhani, LLP
600 Superior Avenue East, Suite 1300
Cleveland, OH 44114
dcampbell@grsm.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*SANDY OPACICH, CLERK OF COURT*

Date:    10/29/2024

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:24-cv-1887

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT 2

# U.S. District Court
## NORTHERN DISTRICT OF OHIO (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:24-cv-01887-SO

Kinzie Advanced Polymers, LLC v. Calyx Containers, LLC et al.

Assigned to: Judge Solomon Oliver, Jr

Referred to: Magistrate Judge James E. Grimes Jr. (Settlement)

Cause: 28:1332 Diversity-Other Contract

Date Filed: 10/29/2024

Jury Demand: Plaintiff

Nature of Suit: 190 Contract: Other

Jurisdiction: Diversity

**Plaintiff**

**Kinzie Advanced Polymers, LLC**
*doing business as*
Grove Bags

represented by **Y. Timothy Chai**
Gordon Rees Scully Mansukhani -
Cleveland
Ste. 1300
600 Superior Avenue East
Cleveland, OH 44114
216-789-4376
Email: tchai@grsm.com
*ATTORNEY TO BE NOTICED*

**David A. Campbell , III**
Gordon Rees Scully Mansukhani -
Columbus
Ste. 1300
Fifth Third Building
600 Superior Avenue East
Cleveland, OH 44114
216-385-5347
Fax: 216-539-0026
Email: dcampbell@grsm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Calyx Containers, LLC**

represented by **Matthew F. Schmitz**
Vorys Sater Seymour & Pease - Columbus
52 East Gay Street
Columbus, OH 43216
614-464-5474
Fax: 614-464-5474
Email: mfschmitz@vorys.com
*ATTORNEY TO BE NOTICED*

**Oliver D. Frey**
Vorys, Sater, Seymour & Pease - Columbus
52 East Gay Street
Columbus, OH 43216
614-464-6323

Fax: 614-719-4973
Email: odfrey@vorys.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael Ryan Tatum**                    represented by **Lester W. Armstrong**

Meyers, Roman, Friedberg & Lewis
Ste. 600
28601 Chagrin Blvd.
Cleveland, OH 44122
216-831-0042
Fax: 216-831-0542
Email: larmstrong@meyersroman.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/29/2024 | 1 | **Complaint** for Monetary and Injunctive Relief with jury demand against Calyx Containers, LLC, Michael Ryan Tatum. Filing fee paid $405.00, receipt number AOHNDC-12806580. Filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit 1 - Employment Agreement, # 2 Exhibit 2 - Severance Agreement, # 3 Civil Cover Sheet, # 4 Summons - Calyx, # 5 Summons - Tatum) (Campbell, David) (Entered: 10/29/2024) |
| 10/29/2024 | | Judge Solomon Oliver, Jr. assigned to case. (F,AW) (Entered: 10/29/2024) |
| 10/29/2024 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge James E. Grimes, Jr. (F,AW) (Entered: 10/29/2024) |
| 10/29/2024 | 2 | Original Summons and Magistrate Consent Form issued to counsel for service upon Calyx Containers, LLC, Michael Ryan Tatum. (Attachments: # 1 Magistrate Consent Form) (F,AW) (Entered: 10/29/2024) |
| 12/10/2024 | 3 | Notice of Filing Proof of Service *upon Defendant Calyx Containers* filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit 1 - Proof of Delivery)(Campbell, David) (Entered: 12/10/2024) |
| 12/12/2024 | 4 | Notice of Filing Proof of Service *upon Defendant Michael Ryan Tatum* filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit 1 - Proof of Delivery)(Campbell, David) (Entered: 12/12/2024) |
| 12/24/2024 | 5 | **Motion** for preliminary injunction *and Preliminary Injunction Hearing* filed by Plaintiff Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit A - Declaration of Daniel Jaffe)(Campbell, David) (Entered: 12/24/2024) |
| 12/30/2024 | 6 | **Motion** to dismiss filed by Defendant Calyx Containers, LLC. Related document(s) 1 . (Attachments: # 1 Exhibit Knobel Declaration)(Frey, Oliver) (Entered: 12/30/2024) |
| 01/02/2025 | 7 | Stipulated *Motion for Extension of Time for Defendant Michael Ryan Tatum to Respond to Plaintiff's Complaint and Motion for Preliminary Injunction* filed by Kinzie Advanced Polymers, LLC. (Campbell, David) (Entered: 01/02/2025) |

| 01/03/2025 | | **Order** (non-document) granting the Parties 7 Stipulated Motion for Extension of Time for Defendant Michael Ryan Tatum to Respond to Plaintiff's Complaint and Motion for Preliminary Injunction until 1/16/2025. Judge Solomon Oliver, Jr. on 1/3/2024. (R,Sh) Modified on 1/10/2025 (R,Sh). (Entered: 01/03/2025) |
|---|---|---|
| 01/07/2025 | 8 | **Opposition** to 5 **Motion** for preliminary injunction *and Preliminary Injunction Hearing* filed by Calyx Containers, LLC. (Attachments: # 1 Exhibit Knobel Declaration, # 2 Exhibit Knobel Dec. Ex. 2, # 3 Exhibit Knobel Dec. Ex. 3, # 4 Exhibit Knobel Dec. Ex. 4, # 5 Exhibit Knobel Dec. Ex. 5, # 6 Exhibit Knobel Dec. Ex. 6, # 7 Exhibit Knobel Dec. Ex. 7, # 8 Exhibit Knobel Dec. Ex. 8, # 9 Exhibit Knobel Dec. Ex. 9, # 10 Exhibit Knobel Dec. Ex. 10)(Frey, Oliver) (Entered: 01/07/2025) |
| 01/10/2025 | 9 | First **Amended complaint** *for Monetary and Injunctive Relief* against Calyx Containers, LLC, Michael Ryan Tatum. Filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit 1 - 2023 Employment Agreement, # 2 Exhibit 2 - Severance Agreement, # 3 Exhibit 3 - Consultancy Agreement, # 4 Exhibit 4 - 2020 Employment Agreement, # 5 Exhibit 5 - 2021 Employment Agreement) (Campbell, David) (Entered: 01/10/2025) |
| 01/13/2025 | 10 | Unopposed **Motion** for extension of time to file response/reply to 6 **Motion** to dismiss filed by Plaintiff Kinzie Advanced Polymers, LLC. Related document(s) 6 . (Campbell, David) (Entered: 01/13/2025) |
| 01/13/2025 | 11 | Unopposed **Motion** for extension of time until 1/20/25 to file response/reply to 6 **Motion** to dismiss filed by Plaintiff Kinzie Advanced Polymers, LLC. Related document(s) 6 . (Campbell, David) (Entered: 01/13/2025) |
| 01/14/2025 | 12 | Attorney Appearance by Lester W. Armstrong filed by on behalf of Michael Ryan Tatum. (Armstrong, Lester) (Entered: 01/14/2025) |
| 01/14/2025 | 13 | **Reply** in support of 5 **Motion** for preliminary injunction *and Preliminary Injunction Hearing* filed by Kinzie Advanced Polymers, LLC. (Campbell, David) (Entered: 01/14/2025) |
| 01/15/2025 | | **Order** [non-document] granting Plaintiff's Motion for Extension of Time to File Response/Reply to Defendant's 6 Motion to Dismiss until 1/20/2025. Related documents 10 , 11 . Judge Solomon Oliver, Jr. on 1/15/2025.(R,Sh) (Entered: 01/15/2025) |
| 01/15/2025 | 14 | Unopposed **Motion** for leave to exceed page limitations filed by Defendant Calyx Containers, LLC. (Frey, Oliver) (Entered: 01/15/2025) |
| 01/16/2025 | 15 | Attorney Appearance by Y. Timothy Chai filed by on behalf of Kinzie Advanced Polymers, LLC. (Chai, Y.) (Entered: 01/16/2025) |
| 01/16/2025 | | **Order** [non-document] granting Defendant's Unopposed Motion to exceed page limitations as set forth in their Motion (Related Doc # 14 ). Judge Solomon Oliver, Jr. on 1/16/2025.(R,Sh) (Entered: 01/16/2025) |
| 01/16/2025 | 16 | **Opposition** to 5 **Motion** for preliminary injunction *and Preliminary Injunction Hearing* filed by Michael Ryan Tatum. (Attachments: # 1 Exhibit Declaration of Michael Ryan Tatum)(Armstrong, Lester) (Entered: 01/16/2025) |
| 01/20/2025 | 17 | **Response** to 6 **Motion** to dismiss filed by Kinzie Advanced Polymers, LLC. (Campbell, David) (Entered: 01/20/2025) |
| 01/23/2025 | 18 | **Reply** in support of 5 **Motion** for preliminary injunction *and Preliminary Injunction Hearing* filed by Kinzie Advanced Polymers, LLC. (Campbell, David) (Entered: 01/23/2025) |

| 01/24/2025 | 19 | **Motion** to dismiss *Amended Complaint* filed by Defendant Calyx Containers, LLC. Related document(s) 9 . (Attachments: # 1 Exhibit Knobel Declaration)(Frey, Oliver) (Entered: 01/24/2025) |
|---|---|---|
| 01/24/2025 | 20 | **Motion** to dismiss *Amended Complaint* filed by Defendant Michael Ryan Tatum. Related document(s) 9 . (Armstrong, Lester) (Entered: 01/24/2025) |
| 01/31/2025 | 21 | Attorney Appearance by Matthew F. Schmitz filed by on behalf of Calyx Containers, LLC. (Schmitz, Matthew) (Entered: 01/31/2025) |
| 02/07/2025 | 22 | Unopposed **Motion** for leave to exceed page limitations filed by Plaintiff Kinzie Advanced Polymers, LLC. (Campbell, David) (Entered: 02/07/2025) |
| 02/07/2025 | 23 | **Opposition** to 19 **Motion** to dismiss *Amended Complaint* filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit A - Declaration of Jaffe) (Campbell, David) (Entered: 02/07/2025) |
| 02/07/2025 | 24 | **Opposition** to Defendant Michael Ryan Tatum's 20 **Motion** to Dismiss Plaintiff's Amended Complaint filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit A - Declaration of Jaffe)(Campbell, David) (Entered: 02/07/2025) |
| 02/13/2025 | | **Order** [non-document] granting Plaintiff's Unopposed Motion to exceed page limitations. (Related Doc # 22 ). Judge Solomon Oliver, Jr. on 2/13/2025.(R,Sh) (Entered: 02/13/2025) |
| 02/21/2025 | 25 | **Reply** in support of 19 **Motion** to dismiss *Amended Complaint* filed by Calyx Containers, LLC. (Frey, Oliver) (Entered: 02/21/2025) |
| 02/21/2025 | 26 | **Reply**/Memorandum *in Support of* 20 Motion to Dismiss Amended Complaint filed by Michael Ryan Tatum. (Armstrong, Lester) (Entered: 02/21/2025) |
| 04/01/2025 | 27 | **Case Management Conference Scheduling Order** with case management conference to be held on 4/30/2025 at 11:30 AM telephonically before Judge Solomon Oliver Jr. Dial-in information will be issued separately. Judge Solomon Oliver, Jr. on 4/30/2025. (Attachments: # 1 Report of Parties Planning Meeting)(R,Sh) (Entered: 04/01/2025) |
| 04/01/2025 | 28 | Magistrate Consent Package issued. (R,Sh) (Entered: 04/01/2025) |
| 04/15/2025 | 29 | Report of Parties' Planning Meeting *Under Fed. R. Civ. P.26(f) and LR 16.3(b)(3)* - parties do not consent to this case being assigned to the magistrate judge, filed by Kinzie Advanced Polymers, LLC. (Campbell, David) Modified text on 4/15/2025 (S,DA). (Entered: 04/15/2025) |
| 04/29/2025 | 30 | **Motion** to stay *Discovery* filed by Defendant Calyx Containers, LLC. (Attachments: # 1 Exhibit 1 - Discovery Requests) (Frey, Oliver) (Entered: 04/29/2025) |
| 04/29/2025 | 31 | **Motion** to Stay Discovery Pending Resolution of Motions to Dismiss filed by Defendant Michael Ryan Tatum. (Armstrong, Lester) (Entered: 04/29/2025) |
| 04/30/2025 | 32 | **Minute Order** of Case Management Conference held on 4/30/2025. Case is assigned to the standard track. Parties to be Joined and Pleading Amendments due by 6/9/2025. Fact Discovery due by 12/5/2025. Expert reports from the party with the burden of proof are due 8/18/2025, with rebuttal reports due 10/1/2025. The cut-off date for expert discovery is 11/15/2025. Dispositive Motions due by 1/15/2026. The court hereby refers the case to Magistrate Judge James E. Grimes, Jr. to conduct a mediation session as soon as possible after 9/15/2025. The court grants Defendant Calyx and Defendant Tatum's respective Motions to Stay Discovery (ECF Nos. 30 , 31 ), and hereby enters a stay of discovery for 30 days. The court will also hold a hearing on Plaintiff's Motion for Preliminary Injunction (ECF No. 5 ). Details for the hearing, including its date and time, will issue by separate |

| | | |
|---|---|---|
| | | order. Judge Solomon Oliver, Jr. on 4/30/2025. Time: 45 minutes (R,Sh) (Entered: 04/30/2025) |
| 04/30/2025 | 33 | **Order** regarding 5 Plaintiff's **Motion** for preliminary injunction *and Preliminary Injunction Hearing*. A Preliminary Injunction Hearing is set for 5/22/2025 at 03:00 PM in Courtroom 19A before Judge Solomon Oliver Jr. If a party wish to call witnesses, they must file the names of such witnesses on the docket by 5/15/2025. Also, any exhibits the parties wish to utilize must be provided to the court and opposing parties by that same date. Judge Solomon Oliver, Jr. on 4/30/2025. (R,Sh) (Entered: 04/30/2025) |
| 05/05/2025 | 34 | **Mediation Scheduling Order** setting mediation conference to be held on 09/16/2025 at 10:00 AM in Courtroom 11A before Magistrate Judge James E. Grimes Jr. <span style="color:red">Attorneys are cautioned not to rely on the docket entry only. Read the attached Order for additional information and requirements prior to the mediation conference.</span> Signed by Magistrate Judge James E. Grimes Jr. on 05/05/2025. (M,MT) (Entered: 05/05/2025) |
| 05/08/2025 | 35 | **Order** regarding the Parties' notice regarding a discovery request by Defendant Ryan Tatum, and a scheduling conflict for the May 22, 2025 Preliminary Injunction Hearing. The court modifies the schedule for the Preliminary Injunction Hearing as follows: The hearing will still commence on 5/22/2025 at 3:00 p.m. Because the parties anticipate the hearing taking multiple days, the court will reconvene for the hearing on 5/27/2025 from 12:30 p.m. to 4:30 p.m., and on 5/28/2025 from 09:00 a.m. to 11:00 a.m. and 12:00 p.m. to 3:00 p.m. in Courtroom 19A before Judge Solomon Oliver Jr. The court has a trial starting 6/2/2025 that it anticipates lasting two to three weeks. As such, the parties should be prepared to complete the hearing on 5/28/2025. The court acknowledges that Defendant Calyx's primary witness and declarant, CEO Simon Knobel, will be out of the country on 5/22/2025. Accordingly, the parties should work to schedule Mr. Knobel's video deposition before the hearing rather than have him testify virtually from another country. Judge Solomon Oliver, Jr. on 5/8/2025. (R,Sh) (Entered: 05/08/2025) |
| 05/15/2025 | 36 | Witness List *for Preliminary Injunction Hearing* filed by Calyx Containers, LLC. (Frey, Oliver) (Entered: 05/15/2025) |
| 05/15/2025 | 37 | Unopposed **Motion** for extension of time until May 16,2025 to File Witness and Exhibit List filed by Defendant Michael Ryan Tatum. (Armstrong, Lester) (Entered: 05/15/2025) |
| 05/15/2025 | 38 | Witness List *for Preliminary Injunction Hearing* filed by Kinzie Advanced Polymers, LLC. (Campbell, David) (Entered: 05/15/2025) |
| 05/16/2025 | | **Order** [non-document] granting Defendant's 37 Unopposed **Motion** for extension of time until May 16,2025 to File Witness and Exhibit List. Judge Solomon Oliver, Jr. on 5/16/2025.(R,Sh) (Entered: 05/16/2025) |
| 05/16/2025 | 39 | Witness List *and Exhibit List* filed by Michael Ryan Tatum. (Armstrong, Lester) (Entered: 05/16/2025) |
| 05/22/2025 | | **Minutes of proceedings** [non-document] before Judge Solomon Oliver, Jr. Preliminary Injunction Hearing held on 5/22/2025. Counsel for all parties were present. Kinzie representative, Daniel Jaffe was also present, as was Defendant Tatum. Witness testimony of Jack Grover taken. Exhibits 1-6, 9, 10, and 13-17 entered. Preliminary Injunction Hearing continued to 5/27/2025 at 12:30 PM in Courtroom 19A before Judge Solomon Oliver Jr. (Court Reporter: Donnalee Cotone.)Time: 2 hours. (R,Sh) Modified on 5/23/2025 (R,Sh). (Entered: 05/23/2025) |
| 05/27/2025 | | **Minutes of proceedings** [non-document] before Judge Solomon Oliver, Jr. Preliminary Injunction Hearing held on 5/27/2025. Counsel for all parties were present. Kinzie representative, Jack Grover; Calyx representative, Simon Knoebel and Defendant Michael Ryan Tatum were also present. Continued testimony of Jack Grover taken and concluded. |

| | | |
|---|---|---|
| | | Testimony of Michael Ryan Tatum began. Preliminary Injunction Hearing continued to 5/28/2025 at 9:30 AM in Courtroom 19A before Judge Solomon Oliver Jr. (Court Reporter: Donnalee Cotone.) Time: 3 hours and 15 minutes. (H,Ch) (Entered: 05/27/2025) |
| 05/28/2025 | | **Minutes of proceedings** [non-document] before Judge Solomon Oliver, Jr. Preliminary Injunction Hearing continued and concluded on 5/28/2025. Counsel for all parties were present. Kinzie representative, Daniel Jaffe, Calyx representative, Simon Knobel, and Defendant Michael Ryan Tatum were also present. Continued testimony of Michael Ryan Tatum taken and concluded. Testimony of Simon Knobel and Daniel Jaffe also taken and concluded. Parties will submit closing briefs of no more than 10 pages by June 6, 2025. The court will rule on Calyx's oral motion by separate order. (Court Reporter: George Staiduhar.) Time: 5 hours. (H,Ch) (Entered: 05/29/2025) |
| 05/29/2025 | 40 | **Order:** The court held a Preliminary Injunction hearing over the course of three days, beginning on May 22, 2025, and concluding on May 28, 2025, in the above-captioned case. The court heard testimony from Plaintiff's representatives, Jack Grover and Daniel Jaffe, as well as from Defendants Michael Ryan Tatum and Calyx Containers representative, Simon Knobel. Exhibits from all parties were also presented. In lieu of closing statements, the parties will simultaneously submit closing briefs of no more than ten (10) pages each by June 6, 2025. The parties will also order a transcript of the hearing, which the court will use in addition to the parties briefings in making its decision on the Preliminary Injunction. At the close of the hearing, Defendant Calyx Containers made an oral motion to stay discovery against it beyond the 30 days previously granted by the court. (See ECF Nos. 30 , 32 .) The current stay expires May 30, 2025. Plaintiff made an oral objection to continuing the stay. The court will issue its ruling on Calyx's oral motion by separate order. IT IS SO ORDERED. Judge Solomon Oliver, Jr. on 5/29/2025. (H,Ch) (Entered: 05/29/2025) |
| 06/06/2025 | 41 | Post-hearing Brief in **Opposition** to 5 **Motion** for preliminary injunction filed by Calyx Containers, LLC. (Frey, Oliver) (Entered: 06/06/2025) |
| 06/06/2025 | 42 | Closing Brief in Support of 5 Motion for Preliminary Injunction and Preliminary Injunction Hearing filed by Kinzie Advanced Polymers, LLC. Related document(s) 40 . (Attachments: # 1 Exhibit A - Plaintiff's Closing Brief) (Campbell, David) Modified text on 6/12/2025 (S,DA). (Entered: 06/06/2025) |
| 06/06/2025 | 43 | Brief *in opposition to* 5 *Motion for Preliminary Injunction and Post-Hearing Brief* filed by Michael Ryan Tatum. (Armstrong, Lester) (Entered: 06/06/2025) |
| 06/10/2025 | 44 | Notice of Injunction Hearing Transcript Order filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit A - Non-Appeal Transcript Order Form)(Campbell, David) (Entered: 06/10/2025) |
| 06/16/2025 | 45 | Renewed **Motion** to stay *discovery pending resolution of motions to dismiss* filed by Defendant Michael Ryan Tatum. (Armstrong, Lester) Modified text on 7/8/2025 (S,DA). (Entered: 06/16/2025) |
| 06/17/2025 | 46 | **Order** denying Defendant Tatum's Renewed Motion to Stay Discovery (Related Doc # 45 ), and hereby orders Tatum to provide responses to Plaintiff's discovery requests by June 27, 2025. Judge Solomon Oliver, Jr. on 6/17/2025.(R,Sh) (Entered: 06/17/2025) |
| 06/24/2025 | 47 | Expedited Non-Appeal Transcript Order Form for proceedings held on 5/28/25 before Judge Solomon Oliver, Jr., Court Reporter: George Staiduhar. Requested completion date: 6/27/25 filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit A - Non-Appeal Transcript Order Form)(Campbell, David) (Entered: 06/24/2025) |
| 06/24/2025 | 48 | Expedited Non-Appeal Transcript Order Form for proceedings held on 5/22/25, 5/27/25 before Judge Solomon Oliver, Jr., Court Reporter: Donnalee Cotone. Requested |

| | | completion date: 6/27/25 filed by Kinzie Advanced Polymers, LLC. (Attachments: # 1 Exhibit A - Non-Appeal Transcript Order Form)(Campbell, David) (Entered: 06/24/2025) |
|---|---|---|
| 07/02/2025 | 49 | Transcript of Preliminary Injunction Proceedings [Volume 1, Pages 1-97], held on May 22, 2025 before Senior District Judge Solomon Oliver, Jr. To obtain a copy of this transcript, please contact court reporter Donnalee Cotone at donnalee_cotone@ohnd.uscourts.gov [97 pages] Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties requesting that privacy information be redacted must file a notice of intent to redact with the court by 7/9/2025. Redaction Request due 7/23/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 9/30/2025. Related document(s) 48 . (C,Do) (Entered: 07/02/2025) |
| 07/02/2025 | 50 | Transcript of Preliminary Injunction Proceedings [Volume 2, Pages 98-247] held on May 27, 2025, before Senior District Judge Solomon Oliver, Jr. To obtain a copy of this transcript, please contact court reporter Donnalee Cotone at donnalee_cotone@ohnd.uscourts.gov [150 pages] Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties requesting that privacy information be redacted must file a notice of intent to redact with the court by 7/9/2025. Redaction Request due 7/23/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 9/30/2025. Related document(s) 48 . (C,Do) (Entered: 07/02/2025) |
| 07/03/2025 | 51 | Transcript of Preliminary Injunction held on May 28th, 2025 before Judge Solomon Oliver, Jr.. To obtain a bound copy of this transcript please contact court reporter George J. Staiduhar at (216) 357-7128. [Volume 3, Pages 248 through 412 pages] Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties requesting that privacy information be redacted must file a notice of intent to redact with the court by 7/10/2025. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. Related document(s) 47 . (S,G) (Entered: 07/03/2025) |
| 07/11/2025 | 52 | Non-Appeal Transcript Order Form for proceedings held on May 22 and May 27, 2025 before Judge Judge Solomon Oliver, Jr., Court Reporter: Donnalee Cotone. Requested completion date: July 18, 2025 filed by Calyx Containers, LLC. (Attachments: # 1 Non Appeal Transcript Order Form)(Schmitz, Matthew) (Entered: 07/11/2025) |
| 07/11/2025 | 53 | Non-Appeal Transcript Order Form for proceedings held on May 28, 2025 before Judge Judge Solomon Oliver, Jr., Court Reporter: George Staiduhar. Requested completion date: July 18, 2025 filed by Calyx Containers, LLC. (Attachments: # 1 Non Appeal Transcript Order Form)(Schmitz, Matthew) (Entered: 07/11/2025) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/14/2025 12:27:23 | | |
| **PACER Login:** | Campbell0066494 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-01887-SO |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRCT OF OHIO
## EASTERN DIVISION

KINZIE ADVANCED POLYMERS, LLC     :
d/b/a Grove Bags     :
26201 Richmond Rd. Unite D     :
Bedford Heights, OH 44146     :     CASE NO. _____
    :
    Plaintiff,     :     JUDGE _____
    :
v.     :     (JURY DEMAND ENDORSED
    :     HEREON)
CHAZ M. HERMANOWSKI     :
5920 Garrison Street     :
Arvada, CO 80004     :
    :
And     :
    :
JACOB MARK TORRISON     :
4460 East 121st Court     :
Thornton, Colorado 80241     :
    :
    Defendants.     :

## COMPLAINT FOR MONETARY AND DECLARATORY
## JUDGMENT RELIEF WITH JURY DEMAND

Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags ("Plaintiff" or "Grove Bags"),
for its Complaint for Monetary and Declaratory Judgment Relief With Jury Demand (the
"Complaint") against Defendants Chaz M. Hermanowski ("Hermanowski") and Jacob Mark
Torrison ("Torrison") (Hermanowski and Torrison are collectively, "Defendants"), states as
follows:

## PARTIES

1.  Plaintiff is an Ohio limited liability company.

2.  Plaintiff's principal place of business is located in Cuyahoga County at 26201
Richmond Road, Unit D, Bedford Heights, Ohio 44146.

3.      Plaintiff created TerpLoc®, a cannabis film that is the first of its kind.

4.      Grove Bags is an Ohio based company that is the market leader in the cannabis industry for packaging materials.

5.      Grove Bags' principal place of business is located in Cuyahoga County.

6.      Grove Bags' management team, warehouse and vast majority of its employees are in Ohio.

7.      Plaintiff's sole member resides in Ohio.

8.      Hermanowski is a former Grove Bags' employee.

9.      Torrison is a former Grove Bags' employee.

10.     Defendants were employed by Grove Bags pursuant to Grove Bags' Employment Agreements.

11.     Copies of Hermanowski's last Grove Bags' Employment Agreement is attached hereto as Exhibit 1.

12.     Copies of Torrison's Grove Bags' Employment Agreements are attached hereto as Exhibit 2.

13.     Defendants' employment with Grove Bags has ended.

14.     Defendants were offered severance agreements by Grove Bags.

15.     Hermanowski signed his severance agreement.

16.     A copy of Hermanowski's severance agreement is attached as Exhibit 3.

17.     Torrison did not sign his severance agreement.

## JURISDICTION AND VENUE

18.     Complete diversity exists between the Parties.

19.     Hermanowski is a citizen of Colorado.

20.     Torrison is a citizen of Colorado.

21.     Grove Bags is a resident of Ohio.

22.     The amount in controversy in this matter is in excess of seventy-five thousand dollars.

23.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because (a) there is complete diversity of citizenship between Plaintiff and the Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

24.     Jurisdiction is also proper in this Court because the Grove Bags Employment Agreement provides that any claims arising out of the Grove Bags Employment Agreement shall be adjudicated in the courts of the State of Ohio, in Cuyahoga County.

25.     Specifically, as part of the Grove Bags Employment Agreement, Defendants "consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding."

26.     In addition, the Severance Agreement signed by Hermanowski provides that any claims arising out of the Severance Agreement shall be adjudicated in the courts of the State of Ohio, in Cuyahoga County.

27.     The Grove Bags Employment Agreements are valid and enforceable contracts.

28.     The Severance Agreement is a valid agreement.

29.     This Honorable Court also has jurisdiction over this matter because Grove Bags is asserting a federal claim under the Defendant Trade Secrets Act of 2016, 18 U.S.C. §1836 (the "DTSA").

30.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.

31.     Venue is proper in this Court because it is the forum required by the Grove Bags'
Employment Agreement.

32.     Venue is also proper in this Court because it is the forum required by the Severance
Agreement.

33.     Defendants expressly consented, in writing, to the jurisdiction and venue of this
Court in the Grove Bags Employment Agreement and the Severance Agreement entered into with
Grove Bags.

34.     Venue is also proper in this Court pursuant to 28 U.S.C. §1391 because this district
is a judicial district in which a substantial part of the events or omissions giving rise to the claim
occurred, or a substantial part of property that is the subject of the action is situated.

35.     These claims are properly joined pursuant to Rules 18 and 20 of the Federal Rules
of Civil Procedure.

## GROVE BAGS IS THE MARKET LEADER

36.     Grove Bags sells high quality packaging products commercial and residential
customers.

37.     Grove Bags develops and distributes packaging products that create the optimal
cannabis climate inside every package.

38.     TerpLoc® provides Grove Bags with a competitive advantage in the marketplace.

39.     Grove Bags takes significant precautions to protect the TerpLoc® manufacturing
information.

40.     Grove Bags' products support all phases of the cannabis industry from the grower
to the distributor, to the warehouse, the retailer and finally the end-using customer.

41.     Grove Bags has developed customers throughout the cannabis retail business.

42.     Grove Bags has developed significant customer information that is highly valuable.

43.     Grove Bags takes significant precautions to protect this customer information from use outside of Grove Bags.

44.     All Grove Bags' employees are required to sign confidentiality agreements.

45.     The confidentiality agreements comply with federal and Ohio law.

46.     Grove Bags limits access of customer information to employees with a need to utilize such information for their Grove Bags' job duties and responsibilities.

47.     Grove Bags' computer systems are password protected.

48.     Grove Bags further limits access to certain customer, financial and product information.

49.     Grove Bags requires that employees leaving their employment with Grove Bags to return all Grove Bags' property and equipment.

50.     Grove Bags trains its employees to utilize Grove Bags' valuable customer information and trade secrets to perform their Grove Bags' duties.

51.     Grove Bags' customer information and training provide Grove Bags with a competitive advantage in the industry.

52.     Grove Bags' valuable business information and trade secrets include Grove Bags' costs, Grove Bags' pricing, Grove Bags' customer contracts, Grove Bags' proposed contracts, Grove Bags' distribution channels, Grove Bags' sales information, Grove Bags' customer list, Grove Bags' prospective customer lists, and information and documents relating to the manufacturing and selling of TerpLoc®.

53.     The confidential business information is highly valuable.

54.    Grove Bags takes significant precautions to protect the confidential business information.

55.    The confidential business information is considered a trade secret under state and federal law.

56.    While headquartered in Ohio, Grove Bags sells its products all over the world.

**DEFENDANTS HAD ACCESS TO GROVE BAGS'
TRADE SECRETS AND CUSTOMERS**

57.    Torrison was employed by Grove Bags as Central Territory Sales Manager.

58.    Torrison's position involved sales.

59.    Torrison had a sales goal for the Central Territory.

60.    A term and condition of Torrison's employment with Grove Bags was execution of the Grove Bags Employment Agreement.

61.    Grove Bags would not have hired Torrison and provided him with access to its valuable and confidential customer and training information had Torrison not executed the Grove Bags Employment Agreement.

62.    Due to his role in Grove Bags' sales, the Grove Bags Employment Agreement broadly protected Grove Bags' confidential information in Paragraphs 7 and 8.

63.    In addition, the Grove Bags Employment Agreement protected Grove Bags' customer, employee, and vendor relationships in Paragraph 6.

64.    Paragraph 16 of Torrison's Grove Bags Employment Agreement provides that Ohio is the law that governs the contract and courts in Cuyahoga County, Ohio have jurisdiction over all disputes between the Parties.

65.    Hermanowski was last employed by Grove Bags as Director of Marketing.

66.    Prior to holding the Director of Marketing position, Hermanowski held a sales position.

67.    A term and condition of Hermanowski's employment with Grove Bags was execution of the Grove Bags Employment Agreement.

68.    Grove Bags would not have hired Hermanowski and provided him with access to its valuable and confidential customer and training information had Hermanowski not executed the Grove Bags Employment Agreement.

69.    Due to his role in Grove Bags' marketing efforts, the Grove Bags Employment Agreement broadly protected Grove Bags' confidential information in Paragraphs 7 and 8.

70.    In addition, the Grove Bags Employment Agreement protected Grove Bags' customer, employee, and vendor relationships in Paragraph 6.

71.    Paragraph 16 of Hermanowski's Grove Bags Employment Agreement provides that Ohio is the law that governs the contract and courts in Cuyahoga County, Ohio have jurisdiction over all disputes between the Parties.

72.    As a sales employee, Torrison was required to record his customer and prospective customer contacts in Grove Bags' CRM system.

73.    As a sales employee, Torrison had access to highly valuable confidential information that Grove Bags considers trade secrets.

74.    Torrison's access to Grove Bags' confidential information included access and assistance in development of:   (1) Customer information in Grove Bags' CRM system; (2) information on the likes and dislikes of customers; (3) Grove Bags' pricing policies; (4) Grove Bags' costs; (5) product information; (6) customer lists; (7) prospective customer lists; (8) pricing

information; (9) Grove Bags' business strategy; (10) Grove Bags' competitors; (11) competing products; and (12) Grove Bags' growth areas.

75.     As Director of Marketing, Hermanowski worked closely with Grove Bags' executive team and sales team.

76.     As Director of Marketing, Hermanowski developed Grove Bags' marketing plans and strategy.

77.     As Director of Marketing, Hermanowski was highly knowledgeable of Grove Bags' products.

78.     As Director of Marketing, Hermanowski was highly knowledgeable of Grove Bags' pricing and sales strategies.

79.     Hermanowski attended weekly leadership meetings.

80.     Hermanowski's access to Grove Bags' confidential information included access and assistance in development of:  (1) Customer information in Grove Bags' CRM system; (2) information on the likes and dislikes of customers; (3) Grove Bags' pricing policies; (4) Grove Bags' costs; (5) product information; (6) customer lists; (7) prospective customer lists; (8) pricing information; (9) Grove Bags' business strategy; (10) Grove Bags' competitors; (11) competing products; and (12) Grove Bags' growth areas.

81.     Defendants helped to protect the confidentiality of this information as management employees of Grove Bags.

## DEFENDANTS' SEPARATIONS FROM EMPLOYMENT

82.     Hermanowski was offered a severance package as part of his separation from employment with Grove Bags.

83.     Hermanowski had his own counsel review the severance agreement.

84.    Hermanowski accepted the severance package.

85.    Paragraph 9 of the Severance Agreement verified Hermanowski's compliance with the Grove Bags Employment Agreement.

86.    The Severance Agreement also prohibited derogatory comments, and it further required confidentiality.

87.    Grove Bags has fully complied with the Severance Agreement.

88.    A true and correct copy of the Severance Agreement is attached as Exhibit 3.

89.    Torrison was offered a severance package, but he elected not to sign the agreement.

90.    Due to his decision not to sign the severance agreement, Torrison was terminated for cause under the Grove Bags Employment Agreement.

91.    The termination letter is attached as Exhibit 4.

92.    Defendants did not raise any concerns with the Grove Bags Employment Agreement during their employment with Grove Bags.

93.    Defendants did not raise any concerns with the Grove Bags Employment Agreement until a former management employee of Grove Bags, Michael Ryan Tatum ("Tatum"), had a dispute with Grove Bags regarding Tatum's Grove Bags Employment Agreement and Severance Agreement.

94.    Tatum is providing services to Grove Bags' competitor, Calyx Containers, LLC ("Calyx"), in violation of his Grove Bags Employment Agreement and Severance Agreement.

95.    Grove Bags has initiated litigation against Tatum and Calyx.

96.    Tatum and Calyx are conspiring with Defendants to damage Grove Bags in order to gain leverage to permit Tatum to work for Calyx despite his Grove Bags Employment Agreement and Severance Agreement.

97.    Defendants have recently raised questions as to the Grove Bags Employment Agreement and Severance Agreement.

98.    Defendants have shared confidential information with Calyx and Tatum.

99.    Defendants have disparaged Grove Bags in violation of the Grove Bags Employment Agreement and Severance Agreement.

100.    Calyx's owner has testified, under oath, to disparagements.

101.    Tatum has testified, under oath, to his direct work with two individuals he used to manage to damage Grove Bags.

102.    Defendants' conduct is willful, intentional and done with malice.

103.    Defendants' wrongful conduct has damaged Grove Bags.

104.    An actual case or controversy exists between Defendants and Grove Bags.

## COUNT I – BREACH OF CONTRACT
## EMPLOYMENT AGREEMENT

105.    Grove Bags incorporates paragraphs 1 through 104 of the Complaint as if fully rewritten.

106.    The Grove Bags Employment Agreement is an enforceable contract.

107.    Grove Bags has fully complied with the Grove Bags Employment Agreements.

108.    The Employment Agreement prohibit Defendants from disclosing Grove Bags' proprietary or confidential information, competing with Grove Bags, or soliciting business from Grove Bags' customers.

109.    Defendants have breached the Grove Bags Employment Agreement.

110.    The Grove Bags Employment Agreement provides for injunctive relief because Defendants' breach will cause Grove Bags irreparable harm.

111.    As a direct and proximate result of Defendants' breaches of the Grove Bags Employment Agreement, Grove Bags has suffered damages in excess of $25,000.

112.    Grove Bags is entitled to its attorneys' fees in bringing this action because of Defendants' violation of the Grove Bags Employment Agreement.

<u>**COUNT II – BREACH OF CONTRACT**</u>
<u>**SEVERANCE AGREEMENT**</u>

113.    Grove Bags incorporates paragraphs 1 through 112 of the Complaint as if fully rewritten.

114.    The Severance Agreement is an enforceable contract.

115.    Grove Bags has fully complied with the Severance Agreement.

116.    The Severance Agreement prohibits Hermanowski from disclosing Grove Bags' confidential information.

117.    The Severance Agreement incorporates Hermanowski's obligations under the Grove Bags Employment Agreement.

118.    Hermanowski has breached the Severance Agreement.

119.    Hermanowski has not returned the severance payment.

120.    As a direct and proximate result of Hermanowski's breach of the Severance Agreement, Grove Bags has suffered damages in excess of $25,000.

121.    Grove Bags is entitled to its attorneys' fees in bringing this action because of Hermanowski's violation of the Severance Agreement.

122.    Grove Bags is entitled to recover the severance payments issued under the Severance Agreement.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS

123.    Grove Bags incorporates paragraphs 1 through 122 of the Complaint as if fully rewritten.

124.    The DTSA protects Grove Bags' confidential business information.

125.    Ohio law protects Grove Bags' confidential business information.

126.    Grove Bags maintains trade secrets. Grove Bags expended considerable effort and money in obtaining and developing its trade secrets.

127.    Those trade secrets are valuable in that they are not generally known to the competitors of Grove Bags or the public.

128.    Grove Bags has taken reasonable efforts to maintain the secrecy of its trade secrets.

129.    Upon information and belief, Defendants have willfully and maliciously misappropriated Grove Bags' trade secrets and used them to their business advantage.

130.    Unless injunctive relief is granted, Defendants' misappropriation will cause Grove Bags to suffer irreparable harm.

131.    Defendants are therefore liable to Grove Bags under the DTSA and the Ohio Trade Secrets Act and injunctive relief should be granted.

132.    Defendants are therefore liable to Grove Bags under the DTSA and the Ohio Trade Secrets Act for its actual damages, exemplary damages, and attorneys' fees, and injunctive relief should be granted.

## COUNT IV – TORTIOUS INTERFERENCE WITH ECONOMIC, CONTRACT, AND/OR BUSINESS RELATIONS

133.    Grove Bags incorporates paragraph 1 through 132 of the Complaint as if fully rewritten.

134.    Grove Bags had an economic, contract, and business relationship with Tatum.

135.    Grove Bags has economic, contract, and business relationships with customers, vendors, suppliers and other third parties.

136.    Defendants knew of Grove Bags' economic, contract and business relationships with Tatum.

137.    Defendants were aware of Grove Bags' contract with Tatum.

138.    Defendants intentionally and maliciously interfered with Grove Bags' economic, contract and business relationship with Tatum.

139.    Unless injunctive relief is granted, Defendants' actions will cause Grove Bags to suffer irreparable harm.

140.    As a direct and proximate result of Defendants' intentional and malicious interference with Grove Bags' economic and business relationships, Grove Bags has suffered damages in excess of $25,000.

141.    As a consequence of Defendants' actions, which were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Grove Bags, Grove Bags is entitled to an award of punitive or exemplary damages and attorneys' fees.

142.    Defendants are therefore liable to Grove Bags for its actual damages, exemplary damages, and reasonable attorneys' fees.

## COUNT V – CIVIL CONSPIRACY

143.    Grove Bags incorporates paragraph 1 through 142 of the Complaint as if fully rewritten.

144.    Defendants have conspired to unlawfully utilize Grove Bags' trade secrets.

145.    Defendants have conspired to unlawfully interfere with Grove Bags' contract with Tatum.

146.    Defendants have conspired to damage Grove Bags.

147.    Defendants' conduct is knowing, intentional and malicious.

148.    As a direct and proximate result of Defendants' intentional and malicious interference with Grove Bags' economic and business relationships, Grove Bags has suffered damages in excess of $25,000.

149.    As a consequence of Defendants' actions, which were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Grove Bags, Grove Bags is entitled to an award of punitive or exemplary damages and attorneys' fees.

150.    Defendants are therefore liable to Grove Bags for its actual damages, exemplary damages, and reasonable attorneys' fees.

## <u>COUNT VI – DECLARATORY JUDGMENT</u>

151.    Grove Bags incorporates paragraph 1 through 150 of the Complaint as if fully rewritten.

152.    28 U.S. Code § 2201 grants a court jurisdiction to issue a declaratory judgment when an actual controversy exists.

153.    Defendants have alleged that Grove Bags has not complied with the Grove Bags Employment Agreement.

154.    Defendants have alleged that the Grove Bags Employment Agreement is void.

155.    Grove Bags has fully complied with the Grove Bags Employment Agreement.

156.    Hermanowski has alleged that the Severance Agreement is void.

157.    Grove Bags has fully complied with the Severance Agreement.

158.    An actual controversy exists between Defendants and Grove Bags.

159.    Defendants have taken incorrect positions to damage Grove Bags.

160.    Defendants have taken incorrect positions to assist Calyx and Tatum.

161.    Grove Bags seeks a declaratory judgment declaring the following:  (1) The Grove Bags Employment Agreement is a valid and enforceable contract; (2) Grove Bags has fully complied with Defendants' Grove Bags Employment Agreements; (3) the Severance Agreement is a valid and enforceable contract; and (4) Grove Bags has fully complied with the Severance Agreement.

162.    Unless declaratory relief is issued, Grove Bags will be significantly damaged.

WHEREFORE, Plaintiff Kinzie Advanced Polymers, LLC d/b/a Grove Bags demands judgment and relief against Defendants Chaz Hermanowski and Jacob Torrison as follows:

1.    Declaratory relief finding that the Grove Bags Employment Agreement is a valid and enforceable contract;

2.    Declaratory relief finding that Grove Bags has fully complied with Defendants' Grove Bags Employment Agreements;

3.    Declaratory relief finding that the Severance Agreement is a valid and enforceable contract;

4.    Declaratory relief finding that Grove Bags has fully complied with the Severance Agreement.

5.    Damages and all other relief, at law or equity, to which Grove Bags is entitled;

6.    Return of Hermanowski's severance payment;

7.    Exemplary damages against Defendants in an amount to be proven at trial;

8.      Reasonable attorneys' fees pursuant to the Employment Agreement, Severance

Agreement, Ohio statutory and common law;

9.      Costs incurred in prosecuting this action; and

10.     Any other appropriate relief that this Court deems just and equitable.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Y. Timothy Chai (0092202)
**GORDON REES SCULLY MANSUKHANI, LLP**
127 Public Square, Suite 5130
Cleveland, Ohio 44114
T: (216) 302-2531
dcampbell@grsm.com
tchai@grsm.com

*Attorneys for Plaintiff*
*Kinzie Advanced Polymers, LLC*

## JURY DEMAND

Plaintiff demands a trial by jury in this matter with the maximum number of jurors permitted by law.

s/ *David A. Campbell*
*Counsel for Plaintiff Kinzie Advanced Polymers,*
*LLC d/b/a Grove Bags*

# EXHIBIT 1

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-934C97EE2D48



# GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of January 1st, 2022 by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 1648 Clair St Ave NE Cleveland OH, 44114 (the "Company"), and Chaz Hermanowski having an address at ___8298 Bridle Path Boca Raton FL 33496_____("Employee").

WHEREAS, the financial and business acumen of Employee are valuable to the Company; and

WHEREAS, the Company desires to employ Employee under the terms and conditions set forth below, and Employee desires to accept such employment;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

1. Employment. Beginning as of January 1st, 2022 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the

DocuSign Envelope ID: 4A388463-27EC-4332-B3F8-934C87EE2D48

"Employment Period"). The first three (3) consecutive months of the Employee's employment under this Agreement are agreed to constitute a period of probation during which the Company shall have the opportunity to assess the suitability of the Employee's performance and conduct (the "Probation Period"). At any time during the Probation Period, Company may terminate the Employee's employment, on the grounds of unsuitability, without providing any working notice or payment in lieu thereof.

3. Compensation. The Company shall pay Employee a base annual salary of $90,000.00 ("Compensation") to be paid in bi-monthly installments. Employee may receive discretionary bonus payments based on performance, to be determined in Company's sole discretion. All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

(a) Position. Employee shall serve as the Director of Marketing for Company.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion.

DocuSign Envelope ID: 4A388463-27EC-432A-B3E8-934C97EE2D48

Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

(e)Kickback. Employee shall not receive any compensation from any vendors or customers while employed at Company. Violation this provision will result in immediate termination, return of compensation to Company, and any damages.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 13    Filed: 06/10/22    5 of 60.    PageID #: 22

DocuSign Envelope ID: 1A388463-27EC-433A-B3E8-934C97EE2D48

(a) Non-Competition. Employee agrees that during Employee's employment with the Company and for two (2) years following the termination of Employee's employment  with the Company, for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) Non-Solicitation of Customers. Employee agrees that during Employee's term of employment with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit, divert, take away, or attempt to divert or take away any: (a) customer or business of the Company or its affiliates; or (b) any potential customer or business of the Company or its affiliates that had been actively solicited by the Company or its affiliates at any time during Employee's employment with the Company.

(c) Non-Solicitation of Employees. Employee agrees that during Employee's term with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit any employee, partner, member, shareholder, agent, representative, or other person associated with the Company or its affiliates for the purpose of causing

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-934C97EE2D48

such person(s) to terminate such person(s) employment and/or association with the Company or its affiliates.

(d) Remedies for Breach of Restrictive Covenants. Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(e) Continuation of Restrictive Covenants. Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 18   Filed: 06/10/25   7 of 60.   PageID #: 24
DocuSign Envelope ID: 4A388463-27EC-433A-B3E8-934C97EE2D48

Page 6 of 12                                    Hermanoski Employment

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period). Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.

(c) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-934C97EE2D48

make such disclosure of such information (and only such information) without liability to the Company.

(d) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(e) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively hereinafter referred to as "Intellectual Property"), together with the right to

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-934C2FEE2D48

sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-031E97EE3D48

sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 1-1   Filed: 06/10/25   11 of 60.   PageID #: 28

Page 10 of 12                    Hermanoski Employment

involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 1648 St Clair Ave. NE, Cleveland, OH 44114; if to the Employee, to Chaz Hermanowski at 8298 Bridle Path Boca Raton FL 33496 _____

**[SIGNATURE PAGE FOLLOWS]**

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-031E97EE3D48

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-90 Filed: 06/10/25    12 of 60.    PageID #: 29

Page 11 of 12                                    Hermanoski Employment

The parties hereto have executed this Agreement as of the day and year first above written.


Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Daniel Jaffe
Its: Director of Finance and Human Resources

DocuSigned by:

*Dan Jaffe*

8F06C007B06B407...

Date: 1/10/2022 _____


Employee:

Chaz Hermanowski

DocuSigned by:

*Chaz Hermanowski*

8CB40A4ADDAF4DB...

Date: 1/10/2022 _____

DocuSign Envelope ID: 4A388463-27EC-4332-B3E8-031C97EE3D48

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-1 Filed: 06/10/25    13 of 60.  PageID #: 30

Page 12 of 12                     Hermanoski Employment

# EXHIBIT 2

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 1152BC65-94A0-4838-95EF-ED0E87B8FD55
Case: 1:25-cv-01217-CEF    Doc #: 9-3 Filed: 06/10/25   15 of 60.  PageID #: 32



# GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of January 1st, 2022 by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 1648 Clair St Ave NE Cleveland OH, 44114 (the "Company"), and Jacob Torrison having an address at 4460 E 121st CT Thornton, CO 80241 _____("Employee").

WHEREAS, the skill and business acumen of Employee are valuable to the Company; and

WHEREAS, the Company desires to employ Employee under the terms and conditions set forth below, and Employee desires to accept such employment;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

1. Employment. Beginning as of January 1st, 2022 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the

DocuSign Envelope ID: 1452BC65-94A0-4838-955F-EP0E87B95D55

"Employment Period"). The first three (3) consecutive months of the Employee's employment under this Agreement are agreed to constitute a period of probation during which the Company shall have the opportunity to assess the suitability of the Employee's performance and conduct (the "Probation Period"). At any time during the Probation Period, Company may terminate the Employee's employment, on the grounds of unsuitability, without providing any working notice or payment in lieu thereof.

3. Compensation. The Company shall pay Employee a base annual salary of $60,000.00 ("Compensation") to be paid in bi-monthly installments. All compensation will be payable in installments in accordance with the Company's standard payroll practice. Employee shall also receive a commission, calculated as percentage of revenue, for profitable sales from accounts made solely by Employee. The breakdown of commission is outlined in Exhibit A to this Agreement. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

(a) Position. Employee shall serve as a Central Territory Sales Manager for Company with a goal of generating at least ██████ in revenue.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion.

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
DocuSign Envelope ID: 152BC65-94A0-4838-955F-ED9E87B9FD55 pg 35 of 28 06/10/25   17 of 60.   PageID #: 34
Case: 1:25-cv-01217-CEF   Doc #: 1-3   Filed: 06/10/25   17 of 60.   PageID #: 34

Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

(e)Kickback. Employee shall not receive any compensation from any vendors or customers while employed at Company. Violation this provision will result in immediate termination, return of compensation to Company, and any damages.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

DocuSign Envelope ID: 1452BC65-94A0-4836-955F-FF89E87B9FD55

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 1-3 Filed: 06/10/25   18 of 60.  PageID #: 35

Page 4 of 12                    Torrison Employment

(a) Non-Competition. Employee agrees that during Employee's employment with the Company and for one (1) year following the termination of Employee's employment  with the Company, for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) Non-Solicitation of Customers. Employee agrees that during Employee's term of employment with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit, divert, take away, or attempt to divert or take away any: (a) customer or business of the Company or its affiliates; or (b) any potential customer or business of the Company or its affiliates that had been actively solicited by the Company or its affiliates at any time during Employee's employment with the Company.

(c) Non-Solicitation of Employees. Employee agrees that during Employee's term with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit any employee, partner, member, shareholder, agent, representative, or other person associated with the Company or its affiliates for the purpose of causing

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-17 Filed: 06/10/25    19 of 60.    PageID #: 36
DocuSign Envelope ID: 1452BC65-94A0-4838-95EF-EP0E87B85D55

such person(s) to terminate such person(s) employment and/or association with the Company or its affiliates.

(d) Remedies for Breach of Restrictive Covenants. Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(e) Continuation of Restrictive Covenants. Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

DocuSign Envelope ID: 1452BC65-94A0-4836-955F-EP0E87B95D55

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period). Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.

(c) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may

DocuSign Envelope ID: 1452BC65-94A0-4836-955F-ED9E87B85D55

make such disclosure of such information (and only such information) without liability to the Company.

(d) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(e) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively hereinafter referred to as "Intellectual Property"), together with the right to

DocuSign Envelope ID: 1452BC65-94A0-4838-95EF-EP0E87B95D55

sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and

DocuSign Envelope ID: 1452BC65-94A0-4836-95EF-FED9E87B95D5

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 1-1   Filed: 06/10/25   23 of 60.   PageID #: 40

Page 9 of 12                              Torrison Employment

sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit

DocuSign Envelope ID: 152BC65-94A0-4838-95EF-ED9E87B95D55

involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 1648 St Clair Ave. NE, Cleveland, OH 44114; if to the Employee, to Jacob Torrison at 4460 E 121st CT Thornton, CO 80241

_____

**[SIGNATURE PAGE FOLLOWS]**

DocuSign Envelope ID: 1452BC65-94A0-4836-95EF-ED0E87B9FD55

The parties hereto have executed this Agreement as of the day and year first above written.

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Daniel Jaffe
Its: Director of Finance & HR

DocuSigned by:

*Dan Jaffe*

—8F06C007B06B407...

Date: 1/10/2022


Employee:

Jacob Torrison

DocuSigned by:

*Jacob Torrison*

—83B903C9530B497...

Date: 1/10/2022

DocuSign Envelope ID: 1152BC65-94A0-4838-95EF-ED9E87B9FD55

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-4  Filed: 06/10/25    26 of 60.  PageID #: 43

Page 12 of 12                    Torrison Employment

## **EXHIBIT A**



| Commission Granted as a % of Revenue | Realized GP% for Project |
|---|---|

DocuSign Envelope ID: 46AEBFEC-132B-4199-BF9C-A523932985DB



**GROVE BAGS COLORADO SOLUTIONS SPECIALIST**
**EMPLOYMENT AGREEMENT**

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of January $^{5}$____,2021, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 1648 Clair St Ave NE Cleveland OH, 44114 (the "Company"), and **JACOB TORRISON** having an address at ___4460 E 121st CT Thornton, CO 80241_____("Employee").

WHEREAS, the services, expertise, knowledge and contacts of Employee are valuable to the Company; and

WHEREAS, the Company desires to employ Employee under the terms and conditions set forth below, and Employee desires to accept such employment;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

1. Employment. Beginning as of January 4, 2021, (the "Commencement Date"), the Company agrees to, and does hereby, engage Employer and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the

1

DocuSign Envelope ID: 46AEBFEC-132B-4189-BF9C-A523032B85DB

termination and notice requirements set forth in Paragraph 5 below (the "Employment Period").

3. Compensation. The Company shall pay Employee base compensation of $40,000.00 USD ("Compensation") to be paid in bi-monthly installments. Employee will receive commission as outlined in the attached Compensation Plan and included in Exhibit A to this Agreement. Employee will receive an annual bonus of ███████ contingent upon meeting quota goal. Employee may receive discretionary bonus payments based on performance. All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

(a) Position. Employee shall serve as a Colorado Solutions Specialist for Company.

(b) Duties. Employee shall have the duties, responsibilities, and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities, and obligations as the Company shall specify, including but not limited to, generating revenue through sales, servicing customer accounts, sales support, training and monitoring new salesmen, attending trade shows, participating in Company meetings, communicating with prospects, vendors, and customers both written and orally with prompt response times. In this role, you will have a self-prospecting quota of ███████ ███████████████████ in sales annually with exceptional focus on growing existing accounts, as well as adding new accounts in the following states: Colorado.

(b)(2) Job Description and Role Expectation. Your principal goal is growing the Company's presence, reputation, and book of business in the state of

DocuSign Envelope ID: 46AEBFEC-132B-4180-BF9C-A523032B85DB

Colorado. It is expected in this role that Jacob Torrison represent themselves and the Company in the highest possible manner. This includes, but is not limited to: professional, timely, and routine communication; fostering and nurturing of key relationships the Company possesses; cultivating relationships with grandfather and house accounts; and being mutually helpful to the sales and revenue team. You are expected to exemplify the Company's core values and philosophy at all times and with all interactions with customers, suppliers, and other stakeholders.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion. Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to

DocuSign Envelope ID: 46AEBFEC-132B-4180-B59C-A523032D85DB

survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c)Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

(a) Non-Competition. Employee agrees that during Employee's employment with the Company and for two (2) years following the termination of Employee's employment  with the Company, for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) Non-Solicitation of Customers. Employee agrees that during Employee's term of employment with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit, divert, take away, or attempt to divert or take away any: (a) customer or business of the Company or its affiliates; or (b) any potential customer or business of the Company or its affiliates that had been actively solicited by the

DocuSign Envelope ID: 46AEBFEC-132B-4180-BF9C-A523032885DB

Company or its affiliates at any time during Employee's employment with the Company.

(c)Non-Solicitation of Employees. Employee agrees that during Employee's term with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit any employee, partner, member, shareholder, agent, representative, or other person associated with the Company or its affiliates for the purpose of causing such person(s) to terminate such person(s) employment and/or association with the Company or its affiliates.

(d) Remedies for Breach of Restrictive Covenants. Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(e)Continuation of Restrictive Covenants. Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information

DocuSign Envelope ID: 46AEBFEC-132B-4189-B59C-A523032985DB

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 1-1   Filed: 06/10/25   32 of 60. PageID #: 49

Page 6 of 13                    Torrison Employment

regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period). Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.

DocuSign Envelope ID: 46AEBFEC-132B-4180-BF9C-A523032985DB

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 11-1   Filed: 06/10/25   33 of 60. PageID #: 50

Page 7 of 13                    Torrison Employment

(c) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

(d) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(e) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 46AEBFEC-132B-4180-BF96-A523032985DB pg 112 of 232
Case: 1:25-cv-01217-CEF    Doc #: 11-2    Filed: 06/10/25    34 of 60.    PageID #: 51

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the

8

DocuSign Envelope ID: 46AEBFEC-132B-4180-BF9C-A523032B85DB

assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be

DocuSign Envelope ID: 46AEBFEC-132B-4189-BF96-A523032B85DB

affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 1648 St Clair Ave. NE, Cleveland, OH 44114; if to the Employee, to Jacob Torrison, 4460 E 121st CT Thornton, CO 80241

_____

DocuSign Envelope ID: 46AEBFEC-132B-4180-BF96-A523032B85DB

The parties hereto have executed this Agreement as of the day and year first above written.

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Jacob C. Grover
Its: CEO

*Jacob Grover*
D411B48AD956403...

Date: 1/7/2021 _____

_____

Employee:

Jacob Torrison

*Jake Torrison*
83B903C9530B497...

Date: 1/5/2021 _____

DocuSign Envelope ID: 46AEBFEC-132B-4130-BF9G-A523032B65DB

# Exhibit A

### Effective Date: January 4, 2021

**Purpose**

The purpose of this Plan Document is to outline the guidelines of the Colorado Solutions Specialist Compensation Plan.  This document is a guideline of the pay and requirements of the Plan and is subject to change at the discretion of Kinzie Advanced Polymers LLC.

**Base Salary**

Jacob will be eligible for a $40,000.00 base salary.  The base salary is reviewed annually by the CEO of Kinzie Advanced Polymers LLC.

**Quota**

The annual quota is contained in the agreement above is 


The quota may be adjusted during the year as needed by the organization and as approved by the CEO of Kinzie Advanced Polymers LLC.

**Commission**

Jacob Torrison will be eligible to receive commission of ██████████████████ on all sales.

**Commission Adjustments**

Contracts can be reviewed by the CEO of Kinzie Advanced Polymers LLC to ensure the intent is to secure and grow Kinzie Advanced Polymers LLC business.  Commission payments may be adjusted as a result if the sale is deemed counter to this intent.

All sales must be quoted to customers at prices that ensure the profitability of the sale. If an unprofitable sale is made it will be not be commissioned.


**Additional Bonus Incentives ("Spiff")**

The Kinzie Advanced Polymers LLC may provide opportunities for additional bonus incentives during the plan year.  Incentive parameters and metrics communication to occur prior to the start of the qualifying period.

**Payment**

Quota attainment and commissions are earned when the company receives payment from the customer.  Payment of commission will occur after the completion of the quarter in which payment was received.

Payable commissions will be paid quarterly, after the completion of each quarter.

DocuSign Envelope ID: 46AEBFEC-132B-4100-BF9C-A523032B85DB

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF  Doc #: 1-17 Filed: 06/10/25  39 of 60.  PageID #: 56

Page 13 of 13                        Torrison Employment

The annual bonus will be paid on the first pay period in the second month following the end of the year.  The Colorado Solutions Specialist must be actively employed on the date of payment to be eligible for the quarterly bonus.

For the purposes of payment, performance to plan will not be rounded to the nearest percentage or half point.

### Windfalls
A windfall is defined as a large sales event that occurs outside of the Consultants' influence or a sale that exceeds predictable performance levels and has the potential to substantially increase commissionable dollars that create concerns with aligning pay with business objectives. If a windfall occurs, it will be up to CEO of Kinzie Advanced Polymers LLC to determine how the participant will be paid at that time.

### Plan Administration
The Sales Director (Ryan Tatum) of Kinzie Advanced Polymers LLC will serve as the Plan Administrator and administer the Colorado Solutions Specialist Compensation Plan under the guidelines of this document.  This will include all matters pertaining to the Colorado Solutions Specialist Compensation Plan and its interpretation, including the resolution of matters where the Colorado Solutions Specialist Compensation Plan is silent.

Exceptions to this plan document will require written approval from the CEO of Kinzie Advanced Polymers LLC.

### Customer Accounts
All customer account lists are the property of Kinzie Advanced Polymers LLC.  On a regular basis, management will review the account list of the Manager to determine whether it can be managed effectively and ensure that customers are successfully served.

Kinzie Advanced Polymers LLC reserves the right to reassign accounts or make modifications at any time.

### Transferability
The Colorado Solutions Specialist may not sell, pledge, donate or otherwise assign commission under the Colorado Solutions Specialist Compensation Plan to another entity or person.

### Plan Provisions
*Effective Date:*
*January 4, 2021*
Prior pay arrangements for participants under this compensation plan will terminate and this plan will go into effect as January 4, 2021.

DocuSign Envelope ID: C8E6CD99-0810-457E-8EF9-845442FD9B1A



# GROVE BAGS SALESMAN
# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of December 4 2020, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 1648 Clair St Ave NE Cleveland OH, 44114 (the "Company"), and **Jacob Mark Torrison** having an address at _____4460 E 121st Ct Thornton, CO 80241_____("Employee").

WHEREAS, the services, expertise, knowledge and contacts of Employee are valuable to the Company; and

WHEREAS, the Company desires to employ Employee under the terms and conditions set forth below, and Employee desires to accept such employment;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

1. Employment. Beginning as of December 7th 2020, (the "Commencement Date"), the Company agrees to, and does hereby, engage Employer and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the

1

DocuSign Envelope ID: C8E6CDD9-981D-457E-9EF9-845442FD9B1A

termination and notice requirements set forth in Paragraph 5 below (the "Employment Period").

3. Compensation. The Company shall pay Employee base compensation of $38,000.00 USD ("Compensation") to be paid in bi-monthly installments. Employee will receive commission as outlined in the attached Compensation Plan and included in Exhibit A to this Agreement. Employee may receive discretionary bonus payments based on performance. All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

(a) Position. Employee shall serve as a Salesman for Company.

(b) Duties. Employee shall have the duties, responsibilities, and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities, and obligations as the Company shall specify, including but not limited to, generating revenue through sales, servicing customer accounts, sales support, training and monitoring new salesmen, attending trade shows, participating in Company meetings, communicating with prospects, vendors, and customers both written and orally with prompt response times.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion.

DocuSign Envelope ID: C8E6CDD9-9810-457E-9EF9-845442FD9B1A

Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c)Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

(a) Non-Competition. Employee agrees that during Employee's employment with the Company and for two (2) years following the termination of Employee's employment  with the Company, for any reason, Employee will not, in the United States or Canada, either directly or

DocuSign Envelope ID: C8E6CD99-9810-457E-8EF9-845442FD9B1A

indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) Non-Solicitation of Customers. Employee agrees that during Employee's term of employment with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit, divert, take away, or attempt to divert or take away any: (a) customer or business of the Company or its affiliates; or (b) any potential customer or business of the Company or its affiliates that had been actively solicited by the Company or its affiliates at any time during Employee's employment with the Company.

(c)Non-Solicitation of Employees. Employee agrees that during Employee's term with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit any employee, partner, member, shareholder, agent, representative, or other person associated with the Company or its affiliates for the purpose of causing such person(s) to terminate such person(s) employment and/or association with the Company or its affiliates.

(d) Remedies for Breach of Restrictive Covenants. Employee acknowledges that a breach of this Agreement may cause the Company

continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(c)Continuation of Restrictive Covenants. Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and

DocuSign Envelope ID: C8E6CDD9-9810-457F-9EF9-845442FD9B1A

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 12-3   Filed: 06/10/25   45 of 60.   PageID #: 62

Page 6 of 15                          Salesman Employment

deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period). Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.

(c)Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

DocuSign Envelope ID: C8E6CD99-9810-457E-9EF9-845442FD9B1A

(d) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(e) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-25 Filed: 06/10/25    47 of 60. PageID #: 64

DocuSign Envelope ID: C8E6CDD9-9810-457E-9EF9-846442FD9B1A

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-26    Filed: 06/10/25    48 of 60.   PageID #: 65

DocuSign Envelope ID: C8E6CD99-9810-457E-9EF9-845442FD9B1A

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

DocuSign Envelope ID: C8E6CD99-9810-457E-9EF9-845442FD9B1A

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 1648 St Clair Ave. NE, Cleveland, OH 44114; if to the Employee, to Jacob Torrison, 4460 E 121st Ct Thornton, CO 80241
_____

**[SIGNATURE PAGE FOLLOWS]**

DocuSign Envelope ID: C8E6CDD9-9810-457E-9FF9-845442FD9B1A

The parties hereto have executed this Agreement as of the day and year first above written.

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Jacob C. Grover
Its: CEO

DocuSigned by:

*Jacob Grover*

5E62315036984F8...

Date: 12/10/2020 _____


_____


Employee:

Jacob Mark Torrison

DocuSigned by:

*Jake Torrison*

83B903C9530B497

Date: 12/10/2020 _____

DocuSign Envelope ID: C8E6CD99-0810-457E-9EF9-845442FD9B1A

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-29 filed: 06/10/25    51 of 60.  PageID #: 68

pg 129 of 232

# Exhibit A

### Effective Date: December 7, 2020

**Purpose**

The purpose of this Plan Document is to outline the guidelines of the Sales Representative (Territory Rep) Compensation Plan.  This document is a guideline of the pay and requirements of the Plan and is subject to change at the discretion of Kinzie Advanced Polymers LLC.

**Base Salary**

The XX Rep will be eligible for a $38,000.00 base salary.  The base salary is reviewed annually by the CEO of Kinzie Advanced Polymers LLC.

**Quota**

The quarterly and annual quota is contained on the schedule below:



The quota may be adjusted during the year as needed by the organization and as approved by the CEO of Kinzie Advanced Polymers LLC.

**Commission**

The  Rep will receive the following commission rate on all completed sales:



**Commission Adjustments**

Contracts can be reviewed by the CEO of Kinzie Advanced Polymers LLC to ensure the intent is to secure and grow Kinzie Advanced Polymers LLC business.  Commission payments may be adjusted as a result if the sale is deemed counter to this intent.

All sales must be quoted to customers at prices that ensure the profitability of the sale. If an unprofitable sale is made it will be not be commissioned. Any sale with a profit margin lower than ▮▮▮ will be paid at ▮▮▮ instead of the current commission rate.



**Commission Rate Schedule- Low Margin Orders**

## Bonus Opportunity
### Quarterly Quota Attainment
The Rep is eligible for a ▮▮▮ quarterly bonus based on quarterly sales quota attainment of greater than or equal to ▮▮▮ of the quarterly sales quota.

### Annual Quota Attainment
The Rep is eligible for a ▮▮▮ annual bonus based on annual sales quota attainment of greater than or equal to ▮▮▮ of the annual sales quota.

The Rep is eligible for a ▮▮▮ annual bonus based on annual sales quota attainment of greater than or equal to ▮▮▮ of the annual sales quota.



**Full Year Bonus Opportunity**

## Additional Bonus Incentives ("Spiff")
The Kinzie Advanced Polymers LLC may provide opportunities for additional bonus incentives during the plan year. Incentive parameters and metrics communication to occur prior to the start of the qualifying period.

## Payment
Quota attainment and commissions are earned when the company receives payment from the customer. Payment of commission will occur in the month following the date the order is paid by the customer.

Commissions will be divided over the number of pay periods during the month of payment.

The quarterly bonus will be paid on the first pay period in the second month following the end of the quarter. The Rep must be actively employed on the date of payment to be eligible for the quarterly bonus.

For the purposes of payment, performance to plan will not be rounded to the nearest percentage or half point.

## Windfalls
A windfall is defined as a large sales event that occurs outside of the Reps' influence or a sale that exceeds predictable performance levels and has the potential to substantially increase commissionable dollars that create concerns with aligning pay with business objectives. If a

DocuSign Envelope ID: C8E6CD99-0810-457E-9EF9-845442FD9B1A

windfall occurs, it will be up to CEO of Kinzie Advanced Polymers LLC to determine how the participant will be paid at that time.

**Plan Administration**
The Chief Operating Officer of Kinzie Advanced Polymers LLC will serve as the Plan Administrator and administer the Rep Compensation Plan under the guidelines of this document. This will include all matters pertaining to the Rep Compensation Plan and its interpretation, including the resolution of matters where the Rep Compensation Plan is silent.

Exceptions to this plan document will require approval from CEO of Kinzie Advanced Polymers LLC.

**Customer Accounts**
All customer account lists are the property of Kinzie Advanced Polymers LLC.  On a regular basis, management will review the account list of the Territory Rep to determine whether it can be managed effectively and ensure that customers are successfully served.

Kinzie Advanced Polymers LLC reserves the right to reassign accounts or make modifications at any time.

**Transferability**
The Territory Rep may not sell, pledge, donate or otherwise assign commission under the Rep Compensation Plan to another entity or person.

**Plan Provisions**
*Effective Date:*
Prior pay arrangements for participants under this compensation plan will terminate and this plan will go into effect as of the date first written below.


**APPENDIX**

**Customer and Rep Payment Example 1**

The Rep completes a sale of ███████ with Company A on January 15th, 2020. Company A pays ███████ to Kinzie Advanced Polymers LLC on February 4th.  Company A pays the final ███████ to Kinzie Advanced Polymers LLC on March 1st, 2020.

For this sale, the Rep will earn ███████ of quota retirement in February and ███████ of quota retirement in March. Commissions at a rate of ██ will be paid out to Territory Rep as follow:
- **Payment 1 of 2:** ████ commission payment in March for the ████ Kinzie Advanced Polymers LLC received in February.
- **Payment 2 of 2:** ████ commission payment in April for the ████ Kinzie Advanced Polymers LLC received in March.

**Customer and CO Rep Payment Example 2**

DocuSign Envelope ID: C8E6CD99-9810-457E-9EF9-845442FD9B1A

Page 15 of 15                          Salesman Employment

The Rep completes a sale of  with Company A on April 15th, 2020. Company A pays
█████████ to Kinzie Advanced Polymers LLC on May 4th.  Company A pays the final █████ to
Kinzie Advanced Polymers LLC on June 1st, 2020.

For this sale, the Rep will earn █████ of quota retirement in May and █████ of quota
retirement in June. When the second payment of █████ is made to Kinzie Advanced Polymers
LLC the Rep is already above █████ for the year. Commissions at a rate of ██ will be paid out
for both payments.
- **Payment 1 of 2:** █████ commission payment in March for the █████ Kinzie Advanced
  Polymers LLC received in February.
- **Payment 2 of 2:** █████ commission payment in April for the █████ Kinzie Advanced
  Polymers LLC received in March.

# EXHIBIT 3

DocuSign Envelope ID: 4C45CB65-8BE4-4935-9600-5E0574D1D9D6

## <u>SEVERANCE AGREEMENT</u>

This Severance Agreement (the "Agreement") is entered onto the date of 9/2/2022 by and between Chaz Hermanowski (the "Employee") and Kinzie Advanced Polymers LLC (the "Company") (the Employee and Company are collectively, the "Parties").

**WHEREAS**, the Employee is currently employed by the Company pursuant to the Grove Bags Employment Agreement (the "Employment Agreement");

**WHEREAS**, the Employee was also a party to the Phantom Unit Agreement with the Company;

**WHEREAS,** the Employee's employment with the Company has terminated pursuant to Paragraph 5 of the Employment Agreement effective August 31, 2022;

**WHEREAS**, the Parties have entered into this Agreement to provide the Employee with a severance payment in return for the promises set forth herein;

**NOW, THEREFORE**, in consideration of these promises and of the covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, with the intent to be legally bound hereby, agree as follows:

1.    <u>Termination of Employment</u>.  This Agreement shall serve as the written notice of termination required by Paragraph 5(a) of the Employment Agreement.  If the Employee executes this Agreement, the Company will consider the Employee's termination of employment as a voluntary resignation.

2.    <u>Forfeiture of Account Under Phantom Unit Agreement</u>.  This Agreement shall serve as formal notice that the Phantom Unit Agreement is terminated and the Employee's Account under the Phantom Unit Agreement is forfeited pursuant to Section 2.2 of the Phantom Unit Agreement.

3.    <u>Severance Payment</u>.  If the Employee executes this Agreement, the Company shall pay the Employee a severance payment equal to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Severance Payment").  The Severance Payment represents any claims the Employee has regarding wages, benefits, vacation, commissions, bonuses, expenses or any other compensation relating to the Employee's employment with the Company and the Employment Agreement. The Severance Payment shall be paid within fifteen (15) days after the Separation Date.  State and federal withholding taxes will be withheld from the Severance Payment.

4.    <u>Release in Full of All Claims</u>.  The Employee, on behalf of himself, his family, his heirs, and his assigns, hereby forever releases and discharges, the Company and the Company's affiliates, parent companies, subsidiaries, officers, directors, shareholders, members, attorneys, owners, directors, contractors, employees, agents, and assigns (the "Released Parties") from any and all charges, contract claims, claims, demands, judgments, causes of action (under

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF    Doc #: 1-35    filed 06/10/25    57 of 60.    PageID #: 74
DocuSign Envelope ID: 4C45CB85-8BE4-4935-9600-5D0574D1D9D6

state and federal law), damages, expenses, costs, attorneys' fees, and liabilities of any kind whatsoever arising out of or relating to the Employee's employment with the Company, the Employee's relationship with the Released Parties, the Employment Agreement, the Phantom Unit Agreement, and/or the Employee's separation from employment.

5.    <u>No Derogation of the Company</u>.  The Employee agrees that he shall not, directly or indirectly, make any disparaging or defamatory remarks about the Company or the Company's affiliates, officers, directors, employees, agents, customers, or clients.

6.    <u>Confidentiality</u>.  The Employee agrees and acknowledges that the Employee had access to and acquired knowledge of confidential, sensitive and proprietary information relating to the Company and the Company's business, the Company's profits, the Company's losses, financial statements, the Company's owner, the Company's employees, the Company's former employees, policies, safety practices, business strategies, business plans, and other information that is not known outside of the Company and which is valuable to the Company (the "Confidential Information").  The Employee shall not, at any time, divulge or use the Confidential Information.

7.    <u>Confidentiality</u>.  The Employee agrees to keep this Agreement confidential.

8.    <u>Return of Company Documents</u>.  The Employee agrees to return all Company property and documents within two (2) days of his resignation date.  The Employee also agrees to provide the Company with all usernames and passwords for any and all computers, tablets, files, documents, websites, applications, software, or any other electronic or technical device, program, or file in which the Employee used and/or created in connection with any duty he performed on behalf of the Company.

9.    <u>Compliance With Employment Agreement</u>.   The Employee agrees that the Employment Agreement governed his employment with the Company and that the restrictions contained in Paragraphs 6, 7, and 8 in the Employment Agreement are reasonable.   The Employee further agrees that his continued compliance with the Employment Agreement is a condition to this Agreement.   The Employee's obligations to the Company under the Employment Agreement are incorporated into this Agreement and shall remain in full force and effect.

10.    <u>Counterparts</u>.  This Agreement may be executed by the Parties in separate counterparts, each of which when executed and so delivered, via email or facsimile, is an original, and all such counterparts together constitute but one and the same contract.

AGREED:
KINZIE ADVANCED POLYMERS LLC          EMPLOYEE

By [signature: Jacob Grover]                    [signature: Chaz Hermanowski]
0B17829FEFD048B...                              8A738D641F894A4...

Its: <u>Ceo</u>

# EXHIBIT 4

**GROVE BAGS**
Powered by TerpLoc®

26201 Richmond Road Unit D,
Bedford Heights, OH 44146

April 10, 2023

**VIA OVERNIGHT DELIVERY AND**
**ELECTRONIC MAIL**

Jacob Torrison
4460 East 121 St. Court
Thornton, Colorado 80241
Jtorrison13@gmail.com

Re:     Grove Bags Employment Agreement
         Termination Letter

Dear Jacob:

This letter confirms the termination of your employment with Kinzie Advanced Polymers LLC
("Grove Bags" or the "Company").  If you have any questions regarding this letter, please let me
know.  If your counsel has questions, please let me know and I will direct you to the Company's
counsel.

As we discussed last week, your employment with Grove Bags has been terminated for cause
effective April 7, 2023.  This letter is being sent in order to confirm that you received the written
notice required by Paragraph 5(a) of the Employment Agreement.  In addition, as we discussed,
you have been paid all amounts owed under the Employment Agreement.

However, if you have any questions regarding your continuing obligations to Grove Bags or your
compensation, please let me know.

Sincerely,



Dan Jaffe
Chief Financial Officer
Grove Bags

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kinzie Advanced Polymers, LLC

d/b/a Grove Bags

**DEFENDANTS**

Chaz M. Hermanowski

**(b)** County of Residence of First Listed Plaintiff  Cuyahoga, OH
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Jefferson, CO
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

David A. Campbell
Gordon Rees Scully Mansukhani, LLP, 127 Public Square, Suite 5130,
Cleveland, OH 44114, (216) 302-2531

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **SOCIAL SECURITY** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 862 Black Lung (923) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 863 DIWC/DIWW (405(g)) | |
| | | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI | |
| | | ☐ 555 Prison Condition | ☐ 865 RSI (405(g)) | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS** | |
| | | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Defense of Trade Secrets Act of 2016

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $  75000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Solomon Oliver, Jr.

DOCKET NUMBER  1:24-cv-01887

DATE
06/10/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ David A. Campbell

**FOR OFFICE USE ONLY**

RECEIPT #　　　　　AMOUNT　　　　　APPLYING IFP　　　　　JUDGE　　　　　MAG. JUDGE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**    Civil Categories: (Please check one category only ).

    1.  [✔]    General Civil
    2.  [ ]    Administrative Review/Social Security
    3.  [ ]    Habeas Corpus Death Penalty

    *If under Title 28, §2255, name the SENTENCING JUDGE: _____

                            CASE NUMBER: _____

**II.**    **R**ELATED OR REFILED CASE**S** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court
    and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and
    subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regardfor
    the place of holding court in which the case was refiled.  Counsel or a party without counsel shall be responsible for
    bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

    This action:  [✔] is **RELATED** to another **PENDING** civil case    [ ] is a **REFILED** case    [ ] was **PREVIOUSLY REMANDED**

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.**    In accordance with Local Civil Rule    **3.8**, actions involving counties in the Eastern Division shall be filed at any of  the
    divisional offices therein.  Actions involving counties in the Western Division shall be filed at the Toledo office. For the
    purpose of determining the proper division, and for statistical reasons, the following information is requested.

    ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER.  UPON FINDING WHICH
    PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

    (1)    **Resident defendant**. If the defendant resides in a county within this district, please set forth the name of such
    county
    **COUNTY**:
    Corporation   **For the purpose of answering the above, a corporation is deemed to be a resident of that county in
                which it has its principal place of business in that district.**

    (2)    **Non-Resident defendant**. If no defendant is a resident of a county in this district, please set forth the county
            wherein the cause of action arose or the event complained of occurred.
    **COUNTY**:    Jefferson, CO

    (3)    **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle
            place of business within the district, and the cause of action arose or the event complained of occurred outside
            this district, please set forth the county of the plaintiff's residence.
    **COUNTY**:

**IV.**    The Counties in the Northern District of Ohio are divided into divisions as shown below.  After the county is
    determined in Section  **III**, please check the appropriate division.

    **EASTERN DIVISION**

    [ ]    **AKRON**            (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
    [✔]    **CLEVELAND**        (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga,
                            Lake, Lorain, Medina and Richland)
    [ ]    **YOUNGSTOWN**       (Counties: Columbiana, Mahoning and Trumbull)

    **WESTERN DIVISION**

    [ ]    **TOLEDO**           (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry,
                             Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca
                            VanWert, Williams, Wood and Wyandot)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | |
|---|---|
| Kinzie Advanced Polymers, LLC<br>d/b/a Grove Bags<br><br>*Plaintiff(s)*<br>v.<br>Chaz M. Hermanowski and Jacob Mark Torrison<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Chaz M. Hermanowski
                                        5920 Garrison St.
                                        Arvada, CO 80004

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

David A. Campbell
Gordon Rees Scully Mansukhani, LLP
127 Public Square, Suite 5130
Cleveland, OH 44114

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*SANDY OPACICH, CLERK OF COURT*

Date: _____06/10/2025_____          _____
                                                *Signature of Clerk or Deputy Clerk*

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
Case: 1:25-cv-01217-CEF   Doc #: 14-3 Filed: 06/10/25   2 of 2.  PageID #: 82
pg 143 of 232

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | |
|---|---|
| Kinzie Advanced Polymers, LLC<br>d/b/a Grove Bags<br><br>_____<br>*Plaintiff(s)*<br>v.<br>Chaz M. Hermanowski and Jacob Mark Torrison<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Jacob Mark Torrison
446 East 121st Court
Thornton, CO 80241

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   David A. Campbell
Gordon Rees Scully Mansukhani, LLP
127 Public Square, Suite 5130
Cleveland, OH 44114

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*SANDY OPACICH, CLERK OF COURT*

Date:  _____06/10/2025_____          _____
                                                                                    *Signature of Clerk or Deputy Clerk*

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
Case: 1:25-cv-01217-CEF  Doc #: 1-45 Filed: 06/10/25  2 of 2.  PageID #: 84
pg 145 of 232

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)*
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT 4

# CONSULTANCY AGREEMENT

This Consultancy Agreement (the "Agreement") is made and entered on September 1, 2020 (the "Effective Date") by and between Kinzie Advanced Polymers LLC with its principal place of business located at 1648 St. Claire Ave. NE, Cleveland, OH 44114 (the "Company") and Michael Ryan Tatum (the "Consultant") (hereinafter referred to individually as a "Party" and collectively as the "Parties").

WHEREAS, the Company is in the business of manufacturing, marketing, distributing and selling packaging including packaging targeted towards hemp or cannabis-related products (the "Business").

WHEREAS, the Consultant has expertise in the areas of business strategy and sales;

WHEREAS, the Company desires to engage the Consultant to provide certain services in the area of Consultant's expertise and the Consultant is willing to provide such services to the Company;

NOW, THEREFORE, the Parties hereby agree as follows:

## 1.    Engagement and Services

(a)    Engagement. The Company hereby engages the Consultant to provide and perform the services set forth in Exhibit A attached hereto (the "Services"), and the Consultant hereby accepts the engagement.

(b)    Standard of Services. All Services to be provided by Consultant shall be performed with promptness and diligence in a workmanlike manner and at a commercially reasonable level not less than the  level of service to be expected of a consultant with the background and experience that Consultant has represented it has.

(c)    Tools, Instruments and Equipment. Consultant shall provide Consultant's own tools, instruments and equipment and place of performing the Services, unless otherwise agreed between the Parties.

(d)    Representation and Warranty. Consultant represents and warrants to the Company that it is under no contractual or other restrictions or obligations which are inconsistent with the execution of this Agreement or which will interfere with the performance of the Services.

## 2.    Consultancy Period

(a)    Duration. This Agreement shall commence on September 1st and shall remain in effect until the third month anniversary thereof or the earlier termination of this Agreement as provided

4025204.23

in Article 2 (b) (the "Consultancy Period"), unless  otherwise mutually agreed upon between the Parties.

(b)    Termination. This Agreement may be terminated by either Party, without cause and without liability, by giving fourteen (14) calendar days written notice of such termination to the Consultant. This Agreement may be terminated by either Party immediately upon delivery of written notice of such termination to the other Party in the event of a material breach by the other Party. "Material breach" includes, but is not limited to: (i) any violation of the terms of Articles 1 (d), 4, 5, 6, 8, 10 and 11, (ii) the death or physical or mental incapacity of Consultant or any key person performing the Services on its behalf as a result of which the Consultant or such key person becomes unable to continue the proper performance of the Services, (iii) an act of gross negligence or wilful misconduct of a Party, and (iv) the insolvency, liquidation or bankruptcy of a Party. Notwithstanding any provision of this Agreement to the contrary, the failure of the Company to pay Consultant pursuant to Section 3 below shall not constitute a material breach of this Agreement if (1) there is a good faith dispute between the parties as to any applicable fees or expenses, and/or (2) the Company remedies such failure to pay within seven (7) calendar days of Company's receipt of written notice from Consultant of such failure to pay.

(c)    Effect of Termination. Upon the effective date of termination of this Agreement, all legal obligations, rights and duties arising out of this Agreement shall terminate except for such legal obligations, rights and duties as shall have accrued prior to the effective date of termination and except as otherwise expressly provided in this Agreement.

## 3.    **Consultancy Fee and Expenses**

(a)    Consultancy Fee. In consideration of the Services to be rendered hereunder, the Company shall pay Consultant a fee at the rates and payable at the time and pursuant to the procedures set forth in Exhibit B (the "Consultancy Fee").

(b)    Expenses. Consultant shall be entitled to reimbursement for all pre-approved expenses reasonably incurred in the performance of the Services, upon submission and approval of written statements and receipts in accordance with the then regular procedures of the Company.

(c)    Payment. Pursuant to the Fee Schedule set forth in Exhibit B, the Consultancy Fee shall be due and payable by the Company to the Consultant pursuant to the Fee Schedule set forth in Exhibit B. Payment can be made either through check or direct deposit.

## 4.    **Work Product and License**

(a)    Defined. In this Agreement the term "Work Product" shall mean all work product (and all intellectual property rights in connection therewith) generated by Consultant solely or jointly with others in the performance of the Services, including, but not limited to, any and all information, notes, material, drawings, records, diagrams, formulae, processes, technology, firmware, software, know-how, designs, ideas, discoveries, inventions, improvements, copyrights, trademarks and trade secrets.

(b)    Ownership. Consultant agrees to assign and does hereby assign to Company all right, title and interest in and to the Work Product. All Work Product shall be the sole and exclusive property of the Company and Consultant will not have any rights of any kind whatsoever in such Work Product.  Consultant agrees, at the request and cost of Company, to promptly sign, execute, make and do all such deeds, documents, acts and things as Company may reasonably require or desire to perfect Company's entire right, title, and interest in and to any Work Product. Consultant will not make any use of any of the Work Product in any manner whatsoever without the Company's prior written consent. All Work Product shall be promptly communicated to Company.

(c)    License. In the event that Consultant integrates any work that was previously created by the Consultant into any Work Product, the Consultant shall grant to, and Company is hereby granted, a worldwide, transferrable, royalty-free, perpetual, irrevocable license to use and exploit the incorporated items, including, but not limited to, any and all copyrights, patents, designs, trade secrets, trademarks or other intellectual property rights, in connection with the Work Product in any manner that Company deems appropriate.  Consultant shall request the Company's prior approval before integrating any previously created work into the Work Product, which approval may be withheld in Company's sole discretion.  Consultant warrants that it shall not incorporate into any Work Product any material that would infringe any intellectual property rights of any third party.

## 5.    **Confidential Information**

(a)    Defined. In this Agreement the term "Confidential Information" shall mean the Work Product and any and all information relating to the Company's business, including, but not limited to, the Business and any research, developments, product plans, products, services, diagrams, formulae, processes, techniques, technology, firmware, software, know-how, designs, ideas, discoveries, inventions, improvements, copyrights, trademarks, trade secrets, customers, suppliers, markets, marketing, finances disclosed by Company either directly or indirectly in writing, orally or visually, to Consultant. Confidential Information does not include information which:

(i) is in or comes into the public domain without breach of this Agreement by the Consultant,
(ii) was in the possession of the Consultant prior to receipt from the Company and was not acquired by the Consultant from the Company under an obligation of confidentiality or non-use,
(iii) is acquired by the Consultant from a third party not under an obligation of confidentiality or non-use to the Company, or
(iv) is independently developed by the Consultant without use of, or reference to, any Confidential Information of the Company.

(b) Obligations of Non-Disclosure and Non-Use. Unless otherwise agreed to in advance and in writing by the Company, Consultant will not, except as required by law or court order, use the Confidential Information for any purpose whatsoever other than the performance of the Services or disclose the Confidential Information to any third party.  Consultant's  obligations under this Section 5 shall survive the termination of this Agreement, for any reason, in perpetuity.

Consultant may disclose the Confidential Information only to those of its employees who need to know such information. In addition, prior to any disclosure of such Confidential Information to any such employee, such employee shall be made aware of the confidential nature of the Confidential Information and shall execute, or shall already be bound by, a non-disclosure agreement containing terms and conditions consistent with the terms and conditions of this Agreement. In any event, Consultant shall be responsible for any breach of the terms and conditions of this Agreement by any of its employees. Consultant shall use the same degree of care to avoid disclosure of the Confidential Information as it employs with respect to its own Confidential Information of like importance, but not less than a reasonable degree of care.

(c) Return of Confidential Information. Upon the termination or expiration of this Agreement for any reason, or upon Company's earlier request, Consultant will deliver to Company all of Company's property or Confidential Information in tangible form that Consultant may have in its possession or control. The Consultant may retain one copy of the Confidential Information in its legal files.

## 6.     **Interference with Business**

(a)     Non-Competition. During the term of this Agreement and for a period of two (2) years thereafter, Consultant  (collectively, the "Restricted Party") will not engage in, provide services to, advise, own, invest or otherwise participate in any business or other activities, directly or indirectly, which are directly or indirectly competitive with the Business without obtaining the prior written consent of the Company.

(b)     Non-Solicitation. The Restricted Party agree that during the term of this Agreement and for a period of two (2) years thereafter, the Restricted Parties shall not:
(i) divert, limit, interfere or obstruct or attempt to divert, limit, interfere or obstruct from the Company any business of any kind in which it is engaged, including, without limitation, the solicitation of or interference with any of its suppliers or current or prospective customers, or
(ii) employ, solicit for employment, or recommend for employment any person employed by the Company during the Consultancy Period and for a period of one (1) year thereafter.

## 7.     **Independent Contractor**
The Consultant agrees that all Services will be rendered by it as an independent contractor and that this Agreement does not create an employer-employee relationship between the Consultant and the Company. The Consultant shall have no right to receive any employee benefits provided by the Company to its employees. Consultant agrees to pay all taxes due in respect of the Consultancy Fee and to indemnify the Company in respect of any obligation that may be imposed on the Company to pay any such taxes or resulting from Consultant's being determined not to be an independent contractor. This Agreement does not authorize the Consultant to act for the Company as its agent or to make commitments on behalf of the Company.

## 8.     **Force Majeure**
Either Party shall be excused from any delay or failure in performance required hereunder if caused by reason of any occurrence or contingency beyond its reasonable control, including, but

not limited to, acts of God, acts of war, fire, insurrection, strikes, lock-outs or other serious labor disputes, riots, earthquakes, floods, explosions or other acts of nature.

The obligations and rights of the Party so excused shall be extended on a day-to-day basis for the time period equal to the period of such excusable interruption. When such events have abated, the Parties' respective obligations hereunder shall resume.

In the event the interruption of the excused Party's obligations continues for a period in excess of seven (7) calendar days, either Party shall have the right to terminate this Agreement immediately upon delivery of written notice to the other Party.

**9.    Non-Publicity**

Each of Company and Consultant agree not to disclose the existence or contents of this Agreement to any third party without the prior written consent of the other Party except: (i) to its advisors, attorneys or auditors who have a need to know such information, (ii) as required by law or court order, (iii) as required in connection with the reorganization of a Party, or its merger into any other corporation, or the sale by a Party of all or substantially all of its properties or assets, or  (iv) as may be required in connection with the enforcement of this Agreement.

**10.    Assignment**

The Services to be performed by Consultant hereunder are personal in nature, and Company has engaged Consultant as a result of Consultant's expertise relating to such Services. Consultant, therefore, agrees that it will not assign, sell, transfer, delegate or otherwise dispose of this Agreement or any right, duty or obligation under this Agreement without the Company's prior written consent. Nothing in this Agreement shall prevent the assignment by the Company of this Agreement or any right, duty or obligation hereunder to any third party.

**11.    Injunctive Relief**

Consultant acknowledges that a violation of Article 5 or 6 would cause immediate and irreparable harm to the Company for which money damages would be inadequate. Therefore, the Company will be entitled to injunctive relief for Consultant's breach of any of its obligations under the said Articles without proof of actual damages and without the posting of bond or other security. Such remedy shall not be deemed to be the exclusive remedy for such violation, but shall be in addition to all other remedies available at law or in equity.

**12.    Governing Law and Dispute Resolution**

This Agreement shall be governed by and construed in accordance with the laws of The State of Ohio, without giving effect to any choice of law or conflict of law provisions.  Each Party agrees and consents to personal jurisdiction and exclusive venue in any state or federal court located in Cuyahoga County,  Ohio having subject matter jurisdiction for any action, suit or proceeding arising out of or related to this Agreement.

**13.    General**

This Agreement constitutes the entire agreement of the Parties on the subject hereof and supersedes all prior understandings and instruments on such subject. This Agreement may not be modified other than by a written instrument executed by duly authorized representatives of the Parties.

No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion. Failure of either Party to enforce any provision of this Agreement shall not constitute a waiver of such provision or any other provision(s) of this Agreement.

Should any provision of this Agreement be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision may be modified by such court in compliance with the law giving effect to the intent of the Parties and enforced as modified. All other terms and conditions of this Agreement shall remain in full force and effect and shall be construed in accordance with the modified provision.

**14.   <u>Survival of Provisions</u>**

The following provisions of this Agreement shall survive the termination of this Agreement: Articles 2 (c), 3, 4, 5, 6 (b), 7, 8, 10, 12, 13, 14 and 15 and all other provisions of this Agreement that by their nature extend beyond the termination of this Agreement.

(signatures on following page)

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have duly executed this Agreement by their authorized representatives as of the date first written above.

Signed for and on behalf of                Signed for and on behalf of
Kinzie Advanced Polymers LLC              Ryan Tatum

Signature:                                Signature:
Name:                                     Name: Michael  Ryan Tatum
Title:

For purposes of Section 6 only:

<u>**Exhibit A – Services**</u>

<u>**Quick Summary of the First Month of Management Operations:**</u>

- Gain insight and knowledge on product and organizational structure
- Get settled in with the team
- Deep dive with ownership to develop understanding of the sales plan strategy and SOP's you want to see go into place or change
- Identify goals and they their priority to establish approach for success
  - o Define the goals and establish how they are going to be achieved. Example: Success goal is _____, to complete I will _____, and I will have had success if _____.
- Establish consistency and ensure knowledge of product is universal
  - o Gain in-depth knowledge of product(s) and best approach to selling it.
  - o Ensure consistency in sales approach and language
  - o Understand leadership's priorities for sales is understood by the team and achievable.
  - o Understand Grovebags position in the market versus the competition
  - o Understand the process of customer support and establish those lines.
- Establish the "silos" of the sales process and what you want to happen in each step of the sales process.
- Build out and finalize sales plan document that will be followed for next 60 days.
- Implement and being utilizing sales plan SOP's,
- Spend 40% of my initial field sales development time with current sales team members gaining a solid grasp of the business.
- Meet with the current sales team members to better understand their current approach to the sales process.
  - o This can be focused through shadowing or "role playing" their sales process. I want to learn the 20% of their sales process that gives them 80% of their results.
- Begin developmental assignments for sales team members.
- Determine which administrative duties only I can accomplish (these go on the high priority list) in order to develop a list of administrative duties I can delegate as part of the development process for those I have identified for leadership development.
- Start pushing sales in my personal network

<u>Week 1:</u>

- Complete hiring paperwork needed
- Get onboarded and integrated to company software, communication channels, and business resources already in place
- Establish full understanding of business workflow, hours, etc.

- Set up my business accounts and update personal pages (ex. LinkedIn, etc.)
- Begin a deep dive to learn all about the product
- Shadow Chaz a minimum of two (2) days to gain insight on workflow, team communication, sales, etc.
- Take part as a fly on the way with team meetings or meetings you find insightful for me to listen in on
- Build out a lead list for myself (Ryan) from people in my network for sales outreach and start working them
- Analyze current sales data and revenue being driven, how many clients, etc.


Week 2:

- Meet with Jack for a few hours to do a deep dive into the strategy he wants to see implemented so I can get to building it out (Review Grovebags Sales plan)
- Get goals from ownership that you want to see sales team hitting
- Finalize the new sales team structure and begin hiring process if needed
- Establish the goals ownership wants to see achieved
- Shadow Chaz on a minimum of five (5) sales calls he makes.
- Push my personal sale lead list
- Establish my personal work flor that will be needed to achieve goals


Week 3:

- Present finalized Grovebags sales plan to ownership for approval to start implementing
- Start implementing the new SOP's and structure to achieve goals in sales plan
- Push my personal sale lead list
- Work new hire process/interviews if needed
- Begin to address, set-up, and organize any tech tools, software and resources that will be needed to achieve goals
- Push my personal sale lead list
- Start building deeper one-on-one relationships with sales team members


Week 4:

- Finish setting up and/or building out tools or resources not completed in week 3
- Begin leading weekly sales team meetings and weekly one-on-one meetings with each member of the sales team

- Meet with sales team to present and start to get them on board and educated on the new sales focuses, SOP's, expectations, goals, and how goals will be measured
- Set clear expectation with sales team of what is expected and required of them
  - Mandatory weakly new lead contribution
  - Fellow sales member shadowing
  - High level understanding of products
  - Contributing insight to weekly sales meetings and weekly reports are required
- Push my personal sale lead list

## **Month Two:**

- Push Sales
- Be fully responsible for managing sales team members
- Establish a list of 100 potential high priority clients to start the new month with to approach first.
- Ensure this queue is managed consistently and stays full. This is achieved by utilizing the established technology platforms to support the sales cycle, weekly sales cycle update meetings, as well as weekly lead generation meetings. This is a great time for employees to share their successes as well as any issues that they are having weekly.
- Get the new plan, structure, and operations fully implemented to achieve sales goals
- Heavy oversight of sales team members to ensure they are utilizing and maximizing sales process
- Gain valuable insight from sales team members as they use the new process and make small tweaks as needed to maximize the plan learned through experience
- Initiate Behavioral Selling Skills Training with sales team members.
- Selling Skills implementation.
- Initiation of Selling Skills Developmental Plan for each team member.
- Begin presenting weekly data reports to ownership on how the process is working
- Begin achieving weekly sales team goals, resulting in monthly goals being achieved
- Onboard new sales team members if hiring is needed

## **Month Three:**

- Push Sales
- 60-day review of how process is working and review data after

- Re-evaluation of administrative and field priority list to ensure plan is on track for ownerships wants.
- Heavy oversight of sales team members to ensure they are utilizing and maximizing sales process

**(EXHIBIT B FOLLOWS)**

## Exhibit B – Consultancy Fee

Company shall pay consultant a monthly fee of $4,000.00 . A $3,000 bonus opportunity, determined in Company's sole discretion, at the end of the 90-day period. Consultant's fee will be paid every two weeks until termination of the Agreement.

# EXHIBIT 5

# Ryan Tatum

Denver, Colorado • +1 303-435-2194 • linkedin.com/in/ryan-tatum-022b2262/

**VP of Sales**

Ryan is an accomplished cannabis industry entrepreneur and business leader with experience spanning both the US and international landscapes. Renowned for his positive energy and strong leadership, Ryan has a proven track record of implementing strategies that achieve market leadership and has driven more than $20 million in revenue. His career is distinguished by public speaking engagements, active participation in policy workgroups, and an exceptional ability to foster team cultures that are cherished by employees. He has also had success with fundraising and steering a company through an equity sale. With a significant nationwide network and a commitment to delivering results while nurturing the team culture, Ryan is poised to bring dynamic energy and innovative strategies to Kiva.

**WORK EXPERIENCE**

**Cultivated Synergy Strategies** • 09/2023 - 02/2024
Cultivated Synergy Strategies provides comprehensive consulting expertise, from management optimization to dynamic sales and marketing strategies. We are dedicated to empowering businesses with actionable insights and strategies that drive revenue growth and market leadership.

**Founder**
- Provide strategic business consulting to SMEs, identifying growth opportunities and implementing scalable strategies around business needs.
- Aid in the development and implementation of comprehensive sales strategies, leading to the formation and training of high-performing sales teams.
- Advise clients on financial management and risk mitigation strategies, which results in improved financial stability and reduction in risk exposure for their businesses.
- Assess and re-engineer clients' operational processes, implementing efficiency improvements leading to a reduction in operational costs and an increase in productivity.
- Conduct comprehensive market analysis for clients seeking to expand their businesses and brand equity, providing insights and strategies that facilitate successful entry into new markets.

**Grove Bags** • 08/2020 - 08/2023
Grove Bags was launched to create sustainable, solution-driven cannabis packaging that is designed entirely around optimizing the plant's unique properties. to create the most effective packaging to preserve cannabis throughout the cultivation to consumption lifecycle, Grove Bags engineered an FDA-compliant packaging film that is truly the first of its kind: TerpLoc .

**Chief Commercial Officer**
- Served on the Executive Board, contributing to the strategic vision that led to a 4x revenue growth and distinguished Grove Bags as an industry leader.
- Developed and executed a comprehensive company sales strategy, penetrating new markets domestically and internationally leading to $15M+ in department revenue growth over three years.
- Developed a scalable sales infrastructure to support a 3x growth in headcount.
- Oversaw sales department recruitment and training, implemented performance evaluations and made critical staffing decisions to align with strategic objectives.
- Developed and executed a dynamic company training program, enhancing team capabilities and performance, leading to an increase in average deal size and shortening the sales cycle.

- Cultivated a positive corporate culture, enhancing employee engagement and productivity, as evidenced by a 95% employee satisfaction rate.
- Implemented a company-wide Salesforce CRM system, enhancing customer relationship management, data, and metric tracking.
- Managed a $200,000 annual sales department budget across five territories.
- Actively participated in 50+ industry trade shows, events, and networking opportunities annually to build client relationships and fuel brand expansion.
- Delivered impactful presentations at national and international conferences, effectively communicating industry insights and forward-thinking strategies, establishing a reputation as a thought leader.

**Cultivated Synergy** • 02/2016 - 08/2020

Cultivated Synergy was Denver's premier shared office and event venue. Focused on the cannabis and hemp Industries, we established a hub for start-ups and growing businesses alike. Alongside workspace, our clients had the option to utilize additional business services and consultations and attend a variety of networking and industry-related events we hosted regularly.

**Founder & CEO**
- Engineered the company's strategic vision to create a dynamic community of innovation, establishing Cultivated Synergy as a central networking hub for industry professionals to foster partnerships and accelerate growth.
- Led fundraising efforts that secured $2.5 million in venture capital, facilitating the scaling of operations and purchase of a new facility.
- Built and led a diverse team of 20 individuals, driving a 40% year-over-year revenue growth.
- Conducted comprehensive business analysis for a portfolio of start-ups, identifying key areas for improvement, and delivering strategic recommendations that increased operational efficiency and profitability.
- Oversaw risk management policies in a high-risk industry, ensuring compliance with legal and regulatory requirements, and effectively mitigating risks.
- Managed company finances, including budgeting and forecasting to achieve an 18%+ year-over-year profit margin.
- Initiated business expansion efforts, completing a licensing agreement in Oklahoma City, OK to expand the brand.
- Actively participated in industry events and networking opportunities to build relationships with potential clients, leading to the establishment of new contacts and business.
- Contributed to the strategic planning and execution of 50+ events annually, including corporate events, seminars, workshops, and panels.
- Cultivated strong relationships with key stakeholders, sponsors, and vendors, enhancing brand reputation and ensuring recurring partnerships.

**Green Labs** • 01/2015 - 12/2015

Green Labs was an innovative start-up based in Denver, executing the concept of a coworking and events space specifically tailored to the needs of professionals in diverse fields. This dynamic company provided a modern, collaborative environment for entrepreneurs, freelancers, and creative minds to connect, create, and thrive.

**CEO**
- Successfully managed a dynamic coworking and events space, overseeing all aspects of facility operations, including space allocation, maintenance, and upgrades, resulting in a 95% occupancy rate and consistently high client satisfaction.
- Implemented innovative marketing strategies and membership programs, effectively growing the member base while maintaining a high retention rate through excellent service and community engagement initiatives.
- Managed budgeting and financial operations for the business, including pricing strategies, expense tracking, and revenue analysis, contributing to a 19% profitability.

- Fostered a vibrant community environment within the coworking space, encouraging collaboration and networking among members, and establishing a reputation as a premier location for professionals and businesses to connect and thrive.

### Greenhaus Vending • 04/2014 - 07/2015

Greenhaus Vending was a trailblazer in the cannabis industry, introducing one of the first legal vending machine platforms. This innovative company streamlined the cannabis purchasing process through an integrated, user-friendly application, enhancing customer convenience and modernizing retail in the sector.

### COO

- Oversaw the strategic planning and execution of the application development project, resulting in the successful functionality of a flagship application.
- Initiated and cultivated strategic partnerships with key manufacturers, ensuring product quality and reliability.
- Collaborated with legal teams to ensure product compliance while navigating complex industry regulations.
- Contributed to the team effort that led to the successful sale of the company's intellectual property.

### Rva Card • 01/2011 - 08/2013

Originating from a college project that secured second place at the 2012 Future Business Leaders of America National Competition, RVA Card disrupted the coupon industry with an innovative approach. It offered free exposure to local businesses and nonprofits, aiming to drive business and enhance revenue, while simultaneously providing customers with discounts and incentives for supporting their local communities.

### Co-Founder & VP Of Operations

- Led the creation of critical operational documentation and presentations, ensuring consistent standards and clarity in company procedures and strategies.
- Played a pivotal role in the recruitment and training of the company's inaugural team, establishing a strong foundation for operational excellence and company culture from the beginning.
- Developed and executed a regional marketing strategy, acquiring 50,000 users in the first six months.
- Drove business expansion efforts, successfully signing up 150 local businesses, resulting in a 3x revenue increase annually.
- Contributed to the design and development of the website and mobile application with a focus on user-centered design principles.
- Executed a strategic exit by selling my shares in the company, contributing to its continued growth trajectory while securing a profitable return on investment.

### A Direct Connection Marketing Firm • 06/2009 - 08/2011

A Richmond-based marketing firm that worked with medium-sized to Fortune 500 companies to execute nationwide and international direct marketing campaigns from ideas to execution.

### Assistant Project Manager

- A Richmond-based marketing firm that worked with medium-sized to Fortune 500 companies to execute nationwide and international direct marketing campaigns from ideas to execution.
- Played a role in the initial planning stages of projects, including discovery and scope definition, to ensure that project goals were clearly outlined and understood by all team members.
- Assisted in developing and managing project timelines and schedules, coordinating with various departments to ensure timely completion of project milestones.
- Monitored and maintained project budgets, tracking expenses, and provided regular financial reports to ensure that projects remained within financial constraints.
- Supported quality control processes by coordinating with the quality assurance team, helping to ensure that project deliverables met the established standards and guidelines.
- Communicated with clients to ensure complete customer satisfaction and project completion.

MRTATUM045

**EDUCATION**

**Bachelor Of Business Administration B.B.A**
**Virginia Commonwealth University** • 12/2013

MRTATUM046

# EXHIBIT 6

DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916



# GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of December 7th, 2020, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 1648 Clair St Ave NE Cleveland OH, 44114 (the "Company"), and **Michael Ryan Tatum** having an address at _____5147 Chicory Cir. Brighton CO 80601_____ ("Employee").

WHEREAS, the services, expertise, and knowledge of Employee are valuable to the Company; and

WHEREAS, the Company desires to employ Employee under the terms and conditions set forth below, and Employee desires to accept such employment;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

1. Employment. Beginning as of December 7th, 2020 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the "Employment Period").

3. Compensation. The Company shall pay Employee a base annual salary of $70,000.00 ("Compensation") to be paid in bi-monthly installments.

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916
pg 166 of 232

Employee may receive discretionary bonus payments of $5,000.00 based on performance, to be determined in Company's sole discretion. The bonuses will be structured around quarterly and annual opportunities accompanied with quarterly and annual employee reviews. Employee bonus considerations include, but are not limited to, the following: Quarterly Department "rocks" achievements, Sales team achieving quota, Personal sales revenue generated, Growth and excellent engagement with "A Clients," and extensive traveling. All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

| Full Year Bonus Opportunity | |
|---|---|
| Quarterly Bonus | $5,000 |
| Annual Bonus | $8,000 |
| Total Bonus Opportunity | $28,000 |

4. Position & Duties

(a) Position. Employee shall serve as the Chief Commercial Officer for Company.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify, including but not limited to leading the sales team, implementation of sales processes and structures, providing sales and account support, attending trade shows, and communicating with prospects, leads, and customers both written and orally with prompt response times.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and

DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916

that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion. Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

(a) Non-Competition. Employee agrees that during Employee's employment with the Company and for two (2) years following the termination of Employee's employment  with the Company, for any reason, Employee will not, in the United States or Canada, either directly or

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916   pg 168 of 232

indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) Non-Solicitation of Customers. Employee agrees that during Employee's term of employment with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit, divert, take away, or attempt to divert or take away any: (a) customer or business of the Company or its affiliates; or (b) any potential customer or business of the Company or its affiliates that had been actively solicited by the Company or its affiliates at any time during Employee's employment with the Company.

(c) Non-Solicitation of Employees. Employee agrees that during Employee's term with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit any employee, partner, member, shareholder, agent, representative, or other person associated with the Company or its affiliates for the purpose of causing such person(s) to terminate such person(s) employment and/or association with the Company or its affiliates.

(d) Remedies for Breach of Restrictive Covenants. Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that

DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916

in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(e) Continuation of Restrictive Covenants. Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation,

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916    pg 170 of 232

Page 6 of 11                                                    Tatum Employment

employees who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period). Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.

(c) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

(d) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916    pg 171 of 232

(e) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained

DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916

by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger,

consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916    pg 174 of 232

by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 1648 St Clair Ave. NE, Cleveland, OH 44114; if to the Employee, to Michael Ryan Tatum, 5147 Chicory Cir. Brighton CO 80601 _____.

## [SIGNATURE PAGE FOLLOWS]

The parties hereto have executed this Agreement as of the day and year first above written.

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Jacob C. Grover
Its: CEO

*Jacob Grover*
_____
5E62315036984F8...

Date: 12/14/2020
_____

Employee:

Michael Ryan Tatum

*Michael Ryan Tatum*
_____
CF403C5D30EA482...

Date: 12/10/2020
_____

DocuSign Envelope ID: 30655D76-C01D-4E2C-AC2C-925723AC7916

Tatum Employment

# EXHIBIT 7

DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18



## GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of January[1]___, 2021, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 1648 Clair St Ave NE Cleveland OH, 44114 (the "Company"), and **Michael Ryan Tatum** having an address at _5147 Chicory Circle Brighton, CO 80601_____ ("Employee").

WHEREAS, the services, expertise, and knowledge of Employee are valuable to the Company; and

WHEREAS, the Company desires to employ Employee under the terms and conditions set forth below, and Employee desires to accept such employment;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

1. Employment. Beginning as of January 4, 2021 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the "Employment Period").

3. Compensation. The Company shall pay Employee a base annual salary of $70,000.00 ("Compensation") to be paid in bi-monthly installments.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18    pg 178 of 232

Employee may receive discretionary quarterly bonus payments of $5,000.00 based on performance, to be determined in Company's sole discretion. This is earned in one of two ways. All members under the Plan you are administering meet quota, or the conversion of one of the fifty strategic accounts in cannabis as mutually agreed with the CEO. Conversion of the strategic account may be satisfied with a salesman or the CEO. All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions. For sales directly attributable to Employee, Employee will receive commission payments of twenty percent (20%) of gross profit on each sale.

4. Position & Duties

(a) Position. Employee shall serve as the Director of Business Development for Company.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify, including but not limited to leading the sales team, implementation of sales processes and structures, providing sales and account support, attending trade shows, and communicating with prospects, leads, and customers both written and orally with prompt response times.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion. Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado
pg 179 of 232
DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6, Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

(a) Non-Competition. Employee agrees that during Employee's employment with the Company and for two (2) years following the termination of Employee's employment  with the Company, for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any

DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) Non-Solicitation of Customers. Employee agrees that during Employee's term of employment with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit, divert, take away, or attempt to divert or take away any: (a) customer or business of the Company or its affiliates; or (b) any potential customer or business of the Company or its affiliates that had been actively solicited by the Company or its affiliates at any time during Employee's employment with the Company.

(c) Non-Solicitation of Employees. Employee agrees that during Employee's term with the Company and for two (2) years following the termination of Employee's employment with the Company, for any reason, Employee will not, either directly or indirectly, either independently or in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director of any business entity, solicit any employee, partner, member, shareholder, agent, representative, or other person associated with the Company or its affiliates for the purpose of causing such person(s) to terminate such person(s) employment and/or association with the Company or its affiliates.

(d) Remedies for Breach of Restrictive Covenants. Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(e) Continuation of Restrictive Covenants. Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential

DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period). Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company.

(c) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

(d) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(e) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
pg 183 of 232
DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

Case No. 1:25-cv-01321-DDD-CYC Document 22-1 filed 07/15/25 USDC Colorado pg 184 of 232
DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 1648 St

DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18

Clair Ave. NE, Cleveland, OH 44114; if to the Employee, to Michael Ryan
Tatum, _5147 Chicory Circle Brighton, CO 80601_____.


**[SIGNATURE PAGE FOLLOWS]**

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
DocuSign Envelope ID: 56D829CA-A91A-4624-8E59-9003756FFC18    pg 187 of 232

The parties hereto have executed this Agreement as of the day and year first above written.


Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Jacob C. Grover
Its: CEO

_____
*Jacob Grover*
D411B48AD956403

Date: 1/11/2021
_____


Employee:

Michael Ryan Tatum

_____
*Ryan Tatum*
CF403C6D30EA482

Date: 1/9/2021
_____

# EXHIBIT 8

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
pg 189 of 232
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833



# GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of February 1st,  2023, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 26201 Richmond Rd Bedford Heights, OH 44146 (the "Company"), and Michael Tatum having an address at

5147 Chicory Circle Brighton, CO 80601
_____("Employee").

WHEREAS, the Company has created TerpLoc®, a cannabis film that is the first of its kind;

WHEREAS, the Company is a leader in the cannabis industry with valuable contacts with all levels of the supply chain from growers to retailers;

WHEREAS, as an employee of the Company, Employee will have access to the Company's various trade secrets and confidential information belonging to the Company and others;

WHEREAS, this Agreement is a condition of Employee's employment with the Company because this Agreement protects the Company's valuable confidential business information, trade secrets, employment relationships, and customer relationships;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

1. Employment. Continuing as of February 1st, 2023 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the "Employment Period"). The first three (3) consecutive months of the Employee's employment under this Agreement are agreed to constitute a period of probation during which the Company shall have the opportunity to assess the suitability of the Employee's performance and conduct (the "Probation Period"). At any time during the Probation Period, Company may terminate the Employee's employment, on the grounds of unsuitability, without providing any working notice or payment in lieu thereof.

3. Compensation. The Company shall pay Employee a base annual salary of $145,000.00 ("Compensation") to be paid in bi-monthly installments. Employee may receive bonus payments of up to $6,500 based on performance of each defined territory, as listed in Exhibit A. Employee receives a $1,000.00 bonus for each of the 6 territories that achieve their goal. An additional $500.00 bonus is available for the team achieving its total goal, regardless of which territories the revenue is generated from. Employee must be an active employee in good standing at time of bonus or commission disbursement to be eligible. Termination of employment by either party results in the employee forfeiting any claim to any and all future bonuses and commissions.

All compensation will be payable in installments in accordance with the Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
pg 191 of 232
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

Page 3 of 13                    Michael Tatum Employment

(a) Position. Employee shall serve as the Chief Commercial Officer for Company.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion. Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

(e)Kickback. Employee shall not receive any compensation from any vendors or customers while employed at Company. Violation this provision will result in immediate termination, return of compensation to Company, and any damages.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties. Upon termination of this Agreement, Employee shall only be

entitled to salary through the date of termination of this Agreement. No
commission or other payments shall survive the termination of the
Agreement.

(b) The termination of this Agreement and the Employment Period under
any circumstances shall not be deemed to deprive the Company of any
rights or release the Employee from any duties which were intended to
survive the termination of the employment relationship including, without
limitation, such rights and duties established under **Paragraph 6,
Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately
discontinue any and all representations that he or she is an Employee of, or
otherwise affiliated with, the Company. Employee shall submit all client lists
and active accounts to the Company, and Employee acknowledges and
agrees that all such client lists and active accounts belong to, and are the
property of, the Company.

6. Restrictive Covenants.

(a) **Agreement Not To Directly Compete With The Company.** While
employed by the Company and for a period of two (2) years immediately
following the voluntary or involuntary termination of Employee's
employment with the Company for any reason, Employee will not, in the
United States or Canada, either directly or indirectly, either independently
or by act in concert with others, whether as an employee, consultant,
advisor, independent contractor, agent, sole proprietor, partner, joint
venture, officer, owner, or director, engage in, provide any services to or on
behalf of, or promote or assist, financially or otherwise, any business entity
which is engaged, in whole or in part, in any business activity which is
competitive with the business of the Company or its affiliates including, but
not limited to, the manufacturing, marketing, distribution, or sale of
packaging including packaging targeted to the hemp and/or cannabis
industries.

(b) **Non-Solicitation of Customers And Other Third Parties.** While
employed by the Company and for a period of two (2) years immediately

Case No. 1:25-cv-01321-DDD-CYC   Document 22-1   filed 07/15/25   USDC Colorado   pg 193 of 232

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly solicit, contact, induce, or attempt to induce the Company's current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or any persons or entities with business relations with the Company to cease doing business with the Company, or in any way interfere with the relationship between any such current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or business relation with the Company

(c) **Non-Solicitation of Employees.** While employed by the Company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly, induce or attempt to induce any employee of the Company to leave the employ of the Company, or in any way interfere with the relationship between the Company and any employee.

(d) **Non-Disparagement.**  Employee agrees and covenants that Employee will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Company or its business, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

(e) **Remedies for Breach of Restrictive Covenants.** Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

 (f) **Recovery of Attorneys' Fees.**  In the event of litigation claiming breach of this Agreement by the Employee, the Company shall have the right to

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

recover from the Employee its attorneys' fees and costs incurred as a result of such litigation if the Employee is found to have violated this Agreement.

(g) **Continuation of Restrictive Covenants.** Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

who do not have the Company's authorization to know any such Confidential Information), or used outside of the Company in any manner whatsoever. During the Employment Period, and in the event of the termination of this Agreement, whether voluntary or involuntary, Employee agrees not to use, disclose, transfer or exploit the Confidential Information at any time and in any manner whatsoever (other than using such Confidential Information for the Company's benefit and as expressly permitted by the Company during the Employment Period).

(c) Employee further agrees to immediately return all Company property and documents upon the termination of Employee's contractual relationship with the Company including, without limitation, all such Confidential Information. At all times, Employee agrees that Employee will not take or otherwise remove from the Company any of the Company's property and/or Confidential Information, without the express written consent of the Company. Employee also agrees to provide the Company with all usernames and passwords for any and all computers, tablets, files, documents, websites, applications, software, or any other electronic or technical device, program, or file in which Employee used and/or created in connection with any duty Employee performed on behalf of the Company. This Section does not apply to any username or password which pertains solely to Employee's personal information or matters that do not involve the Company or its businesses or in any way violate any local, state, or federal law.

(d) Notwithstanding anything contained in this Agreement to the contrary, if Employee is requested or required (by oral questions or request for information or documents in court or administrative proceedings, interrogatories, subpoena, civil investigation, demand or similar court or administrative agency process) to disclose any Confidential Information, Employee will promptly notify the Company of such request or requirement prior to any disclosure of the Confidential Information so that the Company may seek an appropriate protective order and/or consider the possible waiver of Employee's compliance with this Agreement. However, if in the opinion of Employee's counsel, Employee is required by law or regulation

to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

(e) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(f) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado

hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

Case No. 1:25-cv-01321-DDD-CYC    Document 22-1    filed 07/15/25    USDC Colorado
pg 199 of 232
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

Page 11 of 13                    Michael Tatum Employment

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 26201 Richmond Rd, Bedford Heights, OH 44146; if to the Employee, to Michael Tatum at

The parties hereto have executed this Agreement as of the day and year first above written.

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

Michael Tatum Employment

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Daniel Jaffe
Its: CFO

DocuSigned by:

*Dan Jaffe*

8F06C007B06B407...

Date: 2/3/2023

Employee:

Michael Tatum

DocuSigned by:

*Michael Ryan Tatum*

CF403C5D30EA482...

Date: 2/2/2023

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

Page 13 of 13                          Michael Tatum Employment

## Exhibit A

|                | Q1 2023      | Q2 2023      | Q3 2023      | Q4 2023      | Total Sales       |
|----------------|--------------|--------------|--------------|--------------|-------------------|
| **North East** | $132,000.00  | $156,000.00  | $186,000.00  | $126,000.00  | **$600,000.00**   |
| **Mid West**   | $484,000.00  | $572,000.00  | $682,000.00  | $462,000.00  | **$2,200,000.00** |
| **Central**    | $286,000.00  | $338,000.00  | $403,000.00  | $273,000.00  | **$1,300,000.00** |
| **West Coast** | $396,000.00  | $468,000.00  | $558,000.00  | $378,000.00  | **$1,800,000.00** |
| **House**      | $396,000.00  | $468,000.00  | $558,000.00  | $378,000.00  | **$1,800,000.00** |
| **Brick & Mortar** | $150,000.00 | $240,000.00 | $310,000.00 | $300,000.00 | **$1,000,000.00** |
|                |              |              |              |              | **$8,700,000.00** |

# EXHIBIT 9

DocuSign Envelope ID: 259AE99E-BB83-4685-BC49-C00ED0191E66

## SEVERANCE AGREEMENT

This Severance Agreement (the "Agreement") is entered into this 25 day of August, 2023 by and between Michael Ryan Tatum (the "Employee") and Kinzie Advanced Polymers LLC (the "Company") (the Employee and Company are collectively, the "Parties").

**WHEREAS**, the Employee is currently employed by the Company pursuant to the Grove Bags Employment Agreement (the "Employment Agreement");

**WHEREAS**, the Employment Agreement is the only written agreement executed by the Employee during his employment with the Company;

**WHEREAS**, the Employee is voluntarily resigning from his employment with the Company effective August 24, 2023, in return for the severance payment set forth in this Agreement;

**WHEREAS**, the Parties have entered into this Agreement to provide the Employee with a severance payment in return for the promises set forth herein;

**NOW, THEREFORE**, in consideration of these promises and of the covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, with the intent to be legally bound hereby, agree as follows:

1.      Resignation From Employment.  By signing below, in return for the severance payment set forth in Paragraph 2, the Employee voluntarily resigns from his employment with the Company effective August 24, 2023.  This Agreement shall serve as the written notice of the Employee's resignation and the termination of the Employment Agreement pursuant to Paragraph 5(a) of the Employment Agreement.

2.      Severance Payment.  If the Employee executes this Agreement, the Company shall pay the Employee a severance payment totaling three months of the Employee's base annual salary (the "Severance Payment").  The Severance Payment represents any claims the Employee has regarding wages, benefits, vacation, commissions, bonuses, phantom stock options, stock options, expenses or any other compensation relating to the Employee's employment with the Company and the Employment Agreement.  The Severance Payment shall be paid according to the Company's normal payroll procedures over the three month pay period.  State, local, and federal withholding taxes will be withheld from the Severance Payment.  The Severance Payment is good and valuable consideration for this Agreement.

3.      Cooperation.  During the period that the Severance Payment is being paid, the Employee agrees to cooperate on all employee or customer issues that may arise.

4.      Release in Full of All Claims.  The Employee, on behalf of himself, his family, his heirs, and his assigns, hereby forever releases and discharges, the Company and the Company's affiliates, parent companies, subsidiaries, officers, directors, shareholders, members, attorneys, owners, directors, contractors, employees, agents, and assigns (the "Released Parties")  from any

DocuSign Envelope ID: 259AE99E-BB83-4685-BC49-C00ED0191E66

and all charges, contract claims, claims, demands, judgments, causes of action (under state and federal law), damages, expenses, costs, attorneys' fees, and liabilities of any kind whatsoever arising out of or relating to the Employee's employment with the Company, the Employee's relationship with the Released Parties, the Employment Agreement, phantom stock options, and/or the Employee's separation from employment.

5.     <u>No Derogation of the Company</u>.  The Employee agrees that he shall not, directly or indirectly, make any disparaging or defamatory remarks about the Company or the Company's affiliates, officers, directors, employees, agents, customers, or clients.

6.     <u>Communication of the Employee's Resignation</u>.  The Company will notify the organization and third parties of the Employee's departure as follows:

> Ryan Tatum is no longer a part of the Grove Bags team. We were very fortunate to have had Ryan help our organization grow and scale over the past 3 years as Grove Bags would not be the company it is today without him. However, he felt it was time to explore other projects and passions. We wish him luck on his new ventures and are excited to continue seeing him as a fixture in the industry.

7.     <u>Confidentiality</u>.  The Employee agrees and acknowledges that the Employee had access to and acquired knowledge of confidential, sensitive and proprietary information relating to the Company and the Company's business, the Company's profits, the Company's losses, financial statements, the Company's owner, the Company's employees, the Company's former employees, policies, safety practices, business strategies, business plans, and other information that is not known outside of the Company and which is valuable to the Company (the "Confidential Information").  The Employee shall not, at any time, divulge or use the Confidential Information.

8.     <u>Confidentiality</u>.  The Employee agrees to keep this Agreement confidential.

9.     <u>Return of Company Documents</u>.  The Employee agrees to return all Company property and documents within two (2) days of his resignation date.  The Employee also agrees to provide the Company with all usernames and passwords for any and all computers, tablets, files, documents, websites, applications, software, or any other electronic or technical device, program, or file in which the Employee used and/or created in connection with any duty he performed on behalf of the Company.

10.    <u>Compliance With Employment Agreement</u>.  The Employee agrees that the Employment Agreement governed his employment with the Company and that the restrictions contained in Paragraphs 6, 7, and 8 in the Employment Agreement are reasonable.  The Employee further agrees that his continued compliance with the Employment Agreement is a condition to this Agreement.  The Employee's obligations to the Company under the Employment Agreement are incorporated into this Agreement and shall remain in full force and effect.

11.    <u>Third Party Contacts</u>.  If the Employee is contacted by any Company customers, prospective customers, suppliers or vendors ("Third Parties"), the Employee shall direct the Third

DocuSign Envelope ID: 259AE99E-BB83-4685-BC49-C00ED0191E66

Parties to Dan Jaffe at dan@grovebags.com. The Employee shall also email Jaffe to notify him of the potential contact.

12.    <u>Counterparts</u>.    This Agreement may be executed by the Parties in separate counterparts, each of which when executed and so delivered, via email or facsimile, is an original, and all such counterparts together constitute but one and the same contract.

13.    <u>Governing Law</u>.  This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

AGREED:

KINZIE ADVANCED POLYMERS LLC                    EMPLOYEE

By: _____            _____

Its: Dan Jaffe        CFO

Dan Jaffe                                        Michael Ryan Tatum

# EXHIBIT 10

**PACKAGING CONSULTANT SCOPE OF WORK
AND COMPENSATION AGREEMENT**

**Parties:**

**The Company:**        Calyx Containers, LLC

**The Consultant:**        CS Strategies

**Date:**  September 4, 2024

**1.        Introduction**

This Packaging Consultant Scope of Work and Compensation Agreement (this "***SOW***"), dated effective as the date indicated above, outlines the terms and conditions under which CS Strategies (the "***Consultant***") will provide packaging consulting services to Calyx Containers, LLC, a Colorado limited liability company (the "***Company***"). This SOW also details the compensation structure agreed upon by the parties.

**2.        Objectives**

The intent of this SOW is for the Consultant to provide assistance to the Company in (a) developing product launch strategies and (b) ensuring market penetration for current and future Company products and product offerings.

**3.        Services to be Provided**

The Consultant agrees to provide the following services :

(a)        GTM Strategy Development
o        Assess market opportunities and competition.
o        Identify target customer segments.
o        Define product positioning and messaging.
o        Develop a comprehensive marketing and sales plan.
(b)        Pilot Program Design and Optimization
o        Optimize packaging survey to enhance product feedback effectiveness.
o        Advise on pilot program candidates for discrepancy and efficiency.
o        Ensure compliance with industry standards and regulations.
(c)        Sales Enablement
o        Create sales collateral and tools to support the sales team.
o        Train sales staff on product features and value propositions.
(d)        Market Analysis and Feedback
o        Conduct market research and gather customer feedback.
o        Provide ongoing analysis and recommendations for product improvements.
(e)        Other Services
o        As may be identified and agreed between the Company and the Consultant.

1

**4.    Term and Termination**

The initial term (the "***Term***") of this SOW shall be for three months commencing on the date this SOW is executed, as indicated on the signature page, and terminating on December 4, 2024. The parties may mutually agree to extend the Term, provided that any such extension must be in writing. Either party may terminate this SOW with 30 days' written notice. In the event of termination, the Consultant shall be compensated for all services rendered and expenses incurred up to the effective date of termination.

**5.    Time Commitment**

The Consultant agrees to dedicate a minimum of ten hours per week to the Company's projects.

**6.    Compensation**

The Company agrees to compensate the Consultant as follows:

(a)    Signing Bonus: $1,400 payable by September 6, 2024.

(b)    Hourly Rate: $35 per hour for services rendered, payable on a bi-weekly basis upon submission of detailed time sheets and invoices.

(c)    Commission: A commission rate of 7% on any net-new business generated by the Consultant. For purposes of this SOW, "***net-new business***" is defined as all orders placed by new clients brought in by the Consultant for a period of 12 months from the date of the first order. Commissions will be paid quarterly once revenue is recognized and payment is received by the Company.

**7.    Expense Reimbursement**

The Company will reimburse the Consultant for pre-approved, reasonable out-of-pocket expenses incurred in the performance of the services, upon submission of proper documentation and receipts.

**8.    Confidentiality**

During the Term of this SOW, each party (the "***Recipient***") may have access to certain non-public information of the other party (the "***Disclosing Party***"), which information a reasonable person would consider confidential or that is marked as "confidential" or "proprietary" by the Disclosing Party, including client and customer lists and contact information, business opportunities, terms of service, price lists, and other trade secrets as understood under applicable law ("***Confidential Information***"). The existence of this SOW in all respects shall also be deemed Confidential Information. During the Term of this SOW and for a period of two (2) years thereafter, the Recipient agrees not to disclose any Confidential Information to any third parties or to use any Confidential Information for any purpose except to carry out its obligations under this SOW. The Recipient shall make every effort to keep such Confidential Information confidential, using the same degree of care the Recipient uses to protect its own Confidential Information of a similar nature, as long as it uses at least reasonable care. Neither party shall make any public statement, issue any press release or any other type of announcement or statement relating to the terms, conditions or existence of this SOW without the prior written approval of the other party.  Notwithstanding the above, Confidential Information does not include information that:

(a)    was in the public domain at the time it was disclosed or has entered the public domain through no fault of the Recipient;

(b)    was known to the Recipient, without restriction, at the time of disclosure;

    (c)        was independently developed by or on behalf of the Recipient without any use of the Confidential Information of the Disclosing Party, as evidenced by the Recipient's records;

    (d)        becomes known to the Recipient, without restriction, from a source other than the Disclosing Party without breach of this SOW by the Recipient; and

    (e)        is disclosed pursuant to the order or requirement of a court, administrative agency, or other governmental body, provided the Recipient has notified the Disclosing Party of an obligation to disclose such information and the Disclosing Party has been provided with the opportunity to oppose such disclosure or obtain a protective order.

Each party agrees to return or destroy any materials and/or documents, regardless of the media (written, electronic, or otherwise) in which they were disclosed, of the other Party hereto, without making or taking copies thereof, upon expiration or termination of this SOW, irrespective of whether such materials and/or documents relate to or concern Confidential Information.

## 9.      Representations and Warranties Regarding Restrictive Covenants

The Consultant represents, warrants and covenants that (i) it and its principals are under no contractual or other legal obligations that would prohibit the Consultant or its principals from performing its or their obligations pursuant to this Agreement, (ii) it has not and will not remove or take any documents or proprietary data or materials of any kind (electronic or otherwise) from any prior or current employer, nor provide any of the foregoing to the Company without written authorization from such prior or current employer, and (iii) it will not use, reference, disclose any confidential information of any third party in connection with its performance of this Agreement.

## 10.      Intellectual Property

All deliverables, work products, and intellectual property created by the Consultant in connection with this engagement shall be the sole property of the Company. The Consultant agrees to assign all rights, title, and interest in such materials to the Company. The Consultant acknowledges that to the fullest extent possible, all of the Consultant's work product developed in connection with this SOW is "work for hire" as that term is defined in the United States Copyright Act (17 USCA § 101, et seq.).

## 11.      Independent Contractors

The relationship created by this SOW is that of independent contractors. Nothing in this SOW is to be construed to place the Company and the Consultant in a relationship of principal/agent, master/servant, employer/employee, partners, or joint venturers. The Consultant will defend, indemnify and hold the Company harmless from any and all claims made by any entity on account of (i) an alleged failure by Consultant to satisfy any such tax or withholding obligations applicable to the Consultant, and/or (ii) resulting from the Consultant's being determined not to be an independent contractor. Neither the Company nor the Consultant will have the authority to execute agreements on behalf of each other or bind each other in any way. The parties further acknowledge and agree that neither party is covered by the other party's insurance or entitled to coverage without the express written consent of the other party.

## 12.      Governing Law

This SOW is governed by and is to be construed in accordance with the laws of the State of Colorado, without regard to its conflict of law principles.

[Signature Page Follows]

In witness whereof, the parties have agreed to the terms and conditions outlined in this SOW, and have executed it as of the date indicated below.

Dated:  8/28/2024

**Calyx Containers, LLC**
a Colorado limited liability company

Signature: _____
Name: _____
Title: _____

**CS Strategies**

Signature: _____
Name:  Ryan Tatum
Title:  Owner

# EXHIBIT 11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KINZIE ADVANCED POLYMERS, LLC, D/B/A GROVE BAGS, | ) ) | CASE NO. 1:24-CV-01887 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| | ) | **DEFENDANT TATUM'S MOTION** |
| CALYX CONTAINERS, LLC, et al., | ) | **TO DISMISS PLAINTIFF'S AMENDED** |
| | ) | **COMPLAINT** |
| Defendants. | ) | |

Defendant Michael Ryan Tatum ("Tatum"), by and through his undersigned counsel, moves pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6), 28 U.S.C. § 1391, and 28 U.S.C. § 1406(a) for an order dismissing Plaintiff's Amended Complaint. The grounds for this Motion are more fully stated in the attached Memorandum in Support.

Respectfully submitted,


/s/ Lester W. Armstrong
Lester W. Armstrong (0036832)
MEYERS, ROMAN, FRIEDBERG & LEWIS
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
Phone:    (216) 831-0042
Fax:        (216) 831-0542
Email:    larmstrong@meyersroman.com

*Attorneys for Defendant, Michael Ryan Tatum*

1

# MEMORANDUM IN SUPPORT

## Issues to be Decided and Summary of Argument

As an initial matter, Tatum joins in the arguments presented by Defendant Calyx Containers, LLC ("Calyx") in its Motion to Dismiss Plaintiff's Amended Complaint, to the extent Calyx's arguments overlap with Tatum's arguments and apply to the claims against him.

As it relates to the claims brought against Tatum, Plaintiff's Amended Complaint suffers from the same fundamental flaws as the initial Complaint – lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

Neither Defendant is an Ohio resident or citizen and neither Defendant has any ties to the State of Ohio. The claims against Tatum are based on an employment relationship and the termination of that employment by Plaintiff Kinzie Advanced Polymers, LLC, d/b/a Grove Bags ("Plaintiff" or "Grove Bags"), an Ohio company. Tatum resides in and is a citizen of Colorado; he was based in Colorado at all times during his employment. Calyx is incorporated in Colorado and headquartered in Utah.

The Amended Complaint alleges that Calyx hired Tatum as an employee, in violation of restrictive covenants in a severance (and superseded employment agreements) between Plaintiff and Tatum. Plaintiff's claims against Tatum include breach of contract, tortious interference, misappropriation of trade secrets, civil conspiracy, and deceptive trade practices.

As put forward in Calyx's motion to dismiss the initial complaint, and equally relevant here regarding the Amended Complaint, this Court lacks personal jurisdiction over both Defendants. The claims against Tatum fail because Tatum has taken no action or committed any act in Ohio upon which Plaintiff's claims are based.

Second, the Complaint should be dismissed for improper venue. The Northern District of Ohio is an improper venue under 28 U.S.C. § 1391(b)(1), as none of the Defendants reside in Ohio.

4912-0949-0963, v. 1

Venue is also improper under 28 U.S.C. § 1391(b)(2), as the events giving rise to this case did not occur in Ohio. Because venue is proper under §1391(b)(1) in another court — the District of Colorado, where Calyx is incorporated and Tatum resides — the Court's analysis should not reach § 1391(b)(3), and the Court should dismiss this case or transfer it to Colorado.

Finally, Plaintiff fails to state claims upon which relief can be granted against Tatum or Calyx. Colorado law applies and specifically prohibits restrictive covenants like those sought to be enforced here. As a resident and citizen of Colorado, Tatum is protected by Colorado's strict public policy against non-compete agreements for employees based in Colorado. *See* C.R.S. 8-2-113. Colorado law should be applied. As for Plaintiff's claims of misappropriation of trade secrets, Plaintiff fails to plead the existence of any trade secret with sufficient particularity and fails to allege any actual misappropriation of a trade secret by Tatum or Calyx. Moreover, Plaintiff has failed to adequately plead that a valid contract exists between Tatum and Plaintiff, that Plaintiff lost any protected business relationship, or any alleged conspiracy not derivative of its other claims. The Amended Complaint's newly added deceptive trade practices claim is vague and does not allege with any specificity the purported misrepresentations or deceptive practices.

As argued below and in Calyx's motion to dismiss, the Amended Complaint should  be dismissed.

## **Relevant Facts**

Tatum restates and incorporates the facts as detailed in his Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. Plaintiff is an Ohio limited liability company and claims to be the market leader in the cannabis packaging industry. Amended Complaint, ¶¶ 1, 4. Until his employment was terminated by Grove Bags in August 2023, Tatum had been an employee of Grove Bags since 2020. On August 24, 2023, he was abruptly informed that his employment was being terminated. Tatum was presented with a severance agreement and given twenty-four (24) hours to

3

accept. *See* Amended Complaint, ¶¶ 27, 105. Feeling pressured and intimidated, he signed the severance agreement. That agreement restated certain restrictive covenants -- illegal under Colorado law – which form the basis of Plaintiff's claims in this lawsuit. *See* Amended Complaint, ¶¶ 107, 122-24.

Grove Bags relies upon an Ohio forum selection clause and an Ohio choice of law clause in the severance agreement to bring its claims in this Court. However, Tatum does not have the necessary ties or contacts with Ohio; he was a resident of Colorado for the entirety of his employment with Grove Bags, and he continues to reside in Colorado. During his employment by Grove Bags, he worked remotely from Colorado, primarily managing the sales team, engaging with clients, and attending industry trade shows and conferences.

Grove Bags has ignored that Colorado law applies to its claims. Tatum has no connection to Ohio, and Plaintiff has not alleged that any conduct occurred in Ohio which supports a breach of the severance agreement. It is beyond dispute that Tatum is a resident of Colorado, that he has never resided in Ohio, and that while employed by Grove Bags, he worked from his office in Colorado. Colorado law provides significant protections to its citizens in regard to restrictive employment covenants such as non-compete agreements. *See* C.R.S. § 8-2-113. By choosing to employ individuals in Colorado, Plaintiff is required to comply with Colorado law, including Colorado's strict laws regulating non-competition agreements.

In August 2022, Colorado enacted sweeping legislation – the Restrictive Employment Agreements Act -- severely restricting the use of non-competition and non-solicitation agreements. The law applies to restrictive covenants signed or renewed after August 10, 2022, which includes the severance agreement at issue here. Under the law, customer non-solicitation and non-competition agreements must be no broader than reasonably necessary to protect the employer's legitimate interest in protecting trade secrets. C.R.S. § 8-2-113(2)(b) and (d).

4

The Colorado law further requires that an employee must be provided separate notice at least fourteen (14) days before the effective date of the agreement or the change in terms or conditions of employment that serve as consideration for the employee's agreement. Unless proper notice is given, the restrictive covenants are void and unenforceable. C.R.S. § 8-2-113(4). During his employment by Grove Bags, Tatum was never provided the statutory notice. On the contrary, he was given *a 24-hour deadline* to sign the severance agreement. Finally, it is unlawful to use force, threats, or other means of intimidation in connection with restrictive covenants, and a violation of the law is a misdemeanor which may subject the violator to penalties, damages, costs and attorneys' fees. C.R.S. § 8-2-113(1.5)(a) and (b) and § 8-2-113(8). Grove Bags faces liability for its failure to comply with Colorado law.

Colorado law specifically prohibits out-of-state choice of venue and choice of law provisions in non-compete agreements involving its citizens, like the agreements that Grove Bags relies on in this case:

> A covenant not to compete that applies to a worker who, at the time of termination of employment, primarily resided or worked in Colorado *may not require the worker to adjudicate the enforceability of the covenant outside of Colorado. Notwithstanding any contractual provision to the contrary, Colorado law governs the enforceability of a covenant not to compete for a worker who, at the time of termination of employment, primarily resided and worked in Colorado.*

C.R.S. § 8-2-113(6) (emphasis added). This clear public policy, codified by the Colorado legislature, renders the Ohio choice of venue and choice of law provisions in Tatum's contracts void and unenforceable. Because Colorado law must be given effect, Plaintiff's claims are improper in this Court and void as a matter of law.

## Argument

### A.    This Court Lacks Personal Jurisdiction Over Tatum.

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.,* 443 U.S. 173, 180 (1979). It is Plaintiff's burden to

demonstrate that personal jurisdiction exists. *See Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012; *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Wireless Environment, LLC v. HooToo.com, Inc.*, Case. No. 1:15CV1215, 2016 U.S. Dist. LEXIS 116385, at *2 (N.D. Ohio Aug. 30, 2016). In response to a motion to dismiss under Rule 12(b)(2), a plaintiff may not simply rest on the pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991.

In a diversity case, "[t]he exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Gerber v. Riordan,* 649 F.3d 514, 517 (6th Cir. 2011) (quoting *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000)). Here, Plaintiff does not even cite to Ohio's long-arm statute in its claims against Tatum and bases personal jurisdiction over Tatum entirely on the forum selection clause in the severance agreement, and claims that Tatum was managed by Grove Bags' Ohio management team and that he traveled to Ohio to perform his duties. To establish personal jurisdiction over Tatum, Plaintiff must satisfy constitutional due process requirements.

The Sixth Circuit has articulated a three-part test for determining if specific personal jurisdiction exists over a non-resident defendant: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

The first factor—purposeful availment—exists where, because of its conduct and connection with the forum, the defendant "should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz,* 471 U.S. 462, 474 (1985) (citation omitted). This factor is established when the

defendant's contacts "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475.

The second factor requires that the plaintiff's claim "arises from" the defendant's activities in the forum state. *Air Prods.*, 503 F.3d at 553. An "affiliation between the forum and the underlying controversy" is required; in other words, an "activity or an occurrence that takes place in the forum State." *Bristol-Myers*, 582 U.S. at 264. Significantly, the "proper question is not where the *plaintiff* experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014 (emphasis added); *see also Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (holding that "mere injury to a forum resident is not a sufficient connection to the forum to establish jurisdiction"); *Vesi Inc. v. Vera Bradley Designs, Inc.*, No. 1:19-cv-696, 2020 U.S. Dist. LEXIS 160435, at *11 (S.D. Ohio Sept. 2, 2020) ("[A] defendant's conduct that occurs outside the forum state, but harms a plaintiff within the forum state, is not enough to establish specific jurisdiction.").

The third factor—reasonableness—involves the following considerations: "[1] the burden on the defendant to litigate in the forum state, [2] the interest of the forum state, [3] the plaintiff's interest in obtaining relief, and [4] the interest of other states in securing the most efficient resolution of the case." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

This Court lacks specific personal jurisdiction over Tatum because the allegations in the Amended Complaint do not involve any conduct by Tatum in Ohio. Following his employment by Grove Bags, Tatum has had no contact with Ohio and there are no allegations in the Amended Complaint that he has been in Ohio or taken any action in the state of Ohio. Therefore, the cause of action does not "arise" from Tatum's activities in Ohio, and Tatum has not purposefully availed himself of Ohio law in any relevant regard.

Plaintiff has not alleged any conduct by Tatum that connects him with Ohio or with any operative facts relating to Plaintiff's claims. "A cause of action 'arises from' a defendant's activities in the state when the defendant's contacts with the forum state are related to the operative facts of the plaintiff's cause of action." *Midwest Motor Supply Co. v. Nietsch*, No. 2:22-cv-4049, 2023 U.S. Dist. LEXIS 222753, at *8 (S.D. Ohio Dec. 14, 2023) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)). "Said another way, 'in order for a court to exercise specific jurisdiction,' there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* (quoting *Bristol-Myers*, 582 U.S. at 264).

There are simply no allegations in the Amended Complaint involving conduct by Tatum in Ohio. Grove Bags alleges only that it is based in Ohio, that it allegedly experienced injuries in Ohio, and that it had a severance agreement (and superseded employment agreements) with Tatum containing Ohio choice of law and venue provisions. Those facts are insufficient to establish personal jurisdiction over Tatum in Ohio.

As Calyx cited in its Motion to Dismiss, courts in the Sixth Circuit, including the Northern District of Ohio, have repeatedly found specific personal jurisdiction lacking in this context:

- In *Union Home Mortgage*, the Northern District of Ohio recently granted a motion to dismiss for lack of personal jurisdiction on similar facts. *Union Home Mortg. Corp. v. Everett Fin., Inc.*, No. 1:23-cv-996, 2023 U.S. Dist. LEXIS 178638, *13-22 (N.D. Ohio Oct. 4, 2023). There, an Ohio-based employer brought claims against four former employees for breach of employment agreements and also brought a claim for tortious interference and injunctive relief against the employees' subsequent out-of-state employer. Because the subsequent employer co-defendant, had hired the individual defendants in Florida and Texas (not in Ohio), the Court found that it lacked specific personal jurisdiction over the subsequent employer. The subsequent employer's alleged knowledge of the individual defendants' contracts containing Ohio choice of law and venue provisions with their Ohio-based former employer was insufficient to establish any relevant activity in Ohio by the subsequent employer.

- In *Midwest Motor*, the Southern District of Ohio recently granted a motion to dismiss for lack of personal jurisdiction in a nearly identical situation. *Midwest*

*Motor*, 2023 U.S. Dist. LEXIS 222753, *7-9. There, the Ohio-based employer brought claims against former employees for breach of restrictive covenants and misappropriation of trade secrets, as well as related claims against their Illinois-based subsequent employer. The court found personal jurisdiction lacking as to the subsequent employer because the claims against it did not arise from any activity in Ohio. The subsequent employer merely hired employees in Illinois. Importantly, the defendants' alleged use of an Ohio employer's confidential information in other states was insufficient to establish that the claims arose from actions in Ohio.

ii   In *Total Quality Logistics*, the Southern District of Ohio again found personal jurisdiction lacking on similar facts. *Total Quality Logistics, LLC v. Tarpon Transp. Servs.*, No. 1:18-cv-353, 2019 U.S. Dist. LEXIS 157672, at *2 (S.D. Ohio Sept. 16, 2019. There, an Ohio employer alleged that a former Florida employee began working for a Florida-based competitor in violation of restrictive employment covenants and brought claims against the Florida competitor for misappropriation of trade secrets and tortious interference. The Florida employer moved to dismiss for lack of personal jurisdiction. The court granted the motion, finding that the relevant activity occurred only in Florida (where both the former employee and his subsequent employer were based) and noting "mere injury to a forum resident is not sufficient connection to the forum." *Id.* at *10 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

The same result is compelled here. Plaintiff has not alleged any conduct by Tatum or Calyx in Ohio which gives rise to the  claims in the Amended Complaint. For that reason, the Amended Complaint should be dismissed for lack of personal jurisdiction.

**B.   The Complaint Should be Dismissed or Transferred for Improper Venue.**

Venue for a civil action in federal court is proper in:  (1) a judicial district in which any defendant resides, if all Defendant are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). Where venue is improper, the Court may dismiss or transfer the case. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

4912-0949-0963, v. 1

Here, venue is only proper in the District of Colorado. Neither Defendant is a resident of Ohio; Tatum is a citizen of Colorado, and Calyx is incorporated in Colorado. Under § 1391(b)(1), venue in Colorado is proper because both defendants are residents of Colorado. As explained above in regard to personal jurisdiction, venue in this district is improper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims did not occur in this district. In fact, they occurred in Colorado, where Calyx allegedly hired Tatum and venue is already proper under § 1391(b)(1). Because § 1391(b)(1) applies, § 1391(b)(3) is inapplicable, leaving Colorado as the only proper venue for this lawsuit.

Grove Bags cannot contend that venue is proper in this Court based on the Ohio choice of forum provision in the severance and employment agreements because the forum selection clauses are specifically barred by Colorado law. C.R.S. § 8-2-113(6) ("A covenant not to compete that applies to a worker who, at the time of termination of employment, primarily resided or worked in Colorado may not require the worker to adjudicate the enforceability of the covenant outside of Colorado."). Plaintiff may not assert venue here based on a choice of forum provision that clearly violates the employment laws of the employee's home state.[1]  Put simply, an employer may not sue a former Colorado employee for alleged breach of a non-compete agreement anywhere other than in Colorado.

Because venue as to all defendants is proper in the District of Colorado under § 1391(b)(1), the Court's analysis should not reach § 1391(b)(3), and the Court should dismiss Plaintiff's Amended Complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).

---

[1] Plaintiff  cannot argue that the agreements' Ohio choice of law provision allows it to avoid compliance with C.R.S. § 8-2-113(6) as to Colorado employees (a circular argument that clearly contravenes the Colorado law). *See Down-Lite, Int'l, Inc. v. Althaier*, No. 1:19-cv-627, 2020 U.S. Dist. LEXIS 33894, at *13 (S.D. Ohio Feb. 27, 2020 (courts should not enforce choice of law provisions if "doing so would violate the public policy of another state with a greater material interest in the dispute and such other state would be the state of the applicable law absent the choice-of-law provision").

**C.      Plaintiff Has Failed to State a Claim Upon Which Relief May Be Granted for Each Claim.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain more than bare assertions or legal conclusions." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). Courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Taylor v City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019). However, the court does not have to accept "unwarranted factual inferences" as true. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

Plaintiff's Breach of Contract Claims Fail under Colorado Law .

Colorado law, and not Ohio law, should be applied. Tatum has no connection to Ohio, and Plaintiff has not alleged that any actions by Tatum occurred in Ohio. There is no dispute that Tatum is a resident of Colorado, that he has never resided in Ohio, and that while employed by Grove Bags, he worked from his office in Colorado. Colorado law provides significant protections to its citizens against restrictive employment covenants such as non-compete agreements. See C.R.S. § 8-2-113.

In August 2022, Colorado enacted sweeping legislation – the Restrictive Employment Agreements Act -- severely restricting the use of non-competition and non-solicitation agreements. The law applies to restrictive covenants signed or renewed after August 10, 2022, which includes the agreements at issue here. Under the law, customer non-solicitation and non-competition agreements must be no broader than reasonably necessary to protect the employer's legitimate interest in protecting trade secrets. C.R.S. § 8-2-113(2)(b) and (d).

As noted at pages 4 and 5, Colorado law specifically prohibits out-of-state choice of venue and choice of law provisions in non-compete agreements involving its citizens, like the agreements that Grove Bags relies on in this case:

> A covenant not to compete that applies to a worker who, at the time of termination of employment, primarily resided or worked in Colorado may not require the worker to adjudicate the enforceability of the covenant outside of Colorado. Notwithstanding any contractual provision to the contrary, Colorado law governs the enforceability of a covenant not to compete for a worker who, at the time of termination of employment, primarily resided and worked in Colorado.

C.R.S. § 8-2-113(6) (emphasis added). This clear public policy, codified by the Colorado legislature, renders the Ohio choice of venue and choice of law provisions in Tatum's contracts void and unenforceable. If this Court applies the Colorado law, as it must, Grove Bags cannot succeed on the merits. The restrictive covenants in the employment and severance agreement are void as a matter of Colorado law.

### Plaintiff's Trade Secret Claims Fail.

Plaintiff alleges misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") and parallel Ohio law (the "OUTSA"). Those claims fail because Plaintiff has not alleged any trade secrets with sufficient particularity, and Plaintiff has not identified any misappropriation of trade secrets by Tatum.

Courts consider DTSA and OUTSA claims together because the definitions and requirements are generally the same. *C.R.H. Indus. Water, LLC v. Eiermann*, No. 1:23-cv-01805, 2024 U.S. Dist. LEXIS 211678, at *7 (N.D. Ohio Nov. 21, 2024). A misappropriation claim under the DTSA requires: (1) the existence of a protectable trade secret; (2) misappropriation of the trade secret by defendant; and (3) that the trade secret is related to a product or service used in interstate commerce. *R.J. Heating Co. v. Rust*, No. 1:22-cv-00710, 2024 U.S. Dist. LEXIS 54446, at *6 (N.D. Ohio Mar. 27, 2024).

Courts have held that defining trade secrets requires "reasonable particularity." *Caudill Seed & Warehouse v. Jarrow Formulas*, 53 F.4th 368, 381 (6th Cir. 2022). This "particularity must be particular enough as to separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade." *Id.* Not all confidential or proprietary information rises to

4912-0949-0963, v. 1

the level of a trade secret. "Courts generally find that pleadings are inadequate when the alleged trade secrets are identified only by category or broad conclusory statements." *Id.; see also, e.g.*, *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. 20-cv-3374, 2021 U.S. Dist. LEXIS 99497, at *3 (E.D. La. May 26, 2021); *Sapir v. Rosen*, 2021 U.S. Dist. LEXIS 189350, at *21 (S.D.N.Y. Sept. 30, 2021) ("Take, for instance, Plaintiffs' reference to 'pricing information.' The Court is left to wonder: Pricing information for which products or services? With respect to which types of purchasers? Do Plaintiffs allege that every pricing decision they make is a trade secret, or only for certain especially sensitive projects or items?").

Grove Bags has failed to properly allege any trade secrets. At Paragraph 79 of the Amended Complaint, Plaintiff improperly attempts to list a number of alleged trade secrets via "category or broad conclusory statements." See Amended Complaint, at ¶ 79, citing, "costs," "pricing," "sales information," etc. This approach is insufficient to allege any specific, protected trade secret, and therefore the misappropriation of trade secrets claim fails. As the Southern District of New York recently stated in granting a motion to dismiss trade secret claims, when "[p]resented with a haystack of items in which potential trade secrets may lurk, the Court declines Plaintiffs' invitation to go searching for the theoretical needle."

The DTSA defines misappropriation as including "acquisition of a trade secret . . . by a person who knows or has reason to know . . . the trade secret was acquired by improper means" and "disclosure or use of a trade secret" by a party who acquired it by improper means, knew or had reason to know it was derived improperly, or knew or had reason to know it was a trade secret. 18 U.S.C. § 1839(5).

Courts may infer use of a trade secret, sufficient to satisfy the misappropriation element, from evidence that "(1) the misappropriating party had access to the secret and (2) the secret and the defendant's design share similar features." *Allergan, Inc. v. Revance Therapeutics, Inc.*, 711 F. Supp. 3d

13

873, 889 (M.D. Tenn. 2024) (citing *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005). But the simple fact that Tatum is now consulting in the same general industry, without more, is insufficient to state a claim for misappropriation. *Rezult Grp., Inc. v. Turkheimer*, No. 3:22-cv-00567, 2023 U.S. Dist. LEXIS 23815, at *3 (M.D. Tenn. Feb 13, 2023).

As Calyx argued in its initial Motion to Dismiss, Plaintiff has made no attempt to allege that Calyx's actions meet the misappropriation standard through acquisition, disclosure, or use. Plaintiff's allegations do not even allow the Court to reasonably infer use from similar design, because Plaintiff has not alleged Calyx has implemented any similar design. For example, Plaintiff seems to allege that the design of its "TerpLoc" product is a trade secret. Even assuming that were the case, Plaintiff has not asserted any allegations at all relating to TerpLoc against either Calyx or Tatum. Plaintiff fails to even suggest that Calyx has altered its product designs in any way since hiring Tatum, nor that Tatum has worked for Calyx in any type of product design capacity.

To the extent Plaintiff seems to allege the "structure" of Plaintiff's "sales organization" is a trade secret, Plaintiff's claim fails for similar reasons. Plaintiff has not alleged that Calyx has changed the structure of its sales organization since engaging Tatum, nor that the structure of Calyx's sales organization now mirrors Plaintiff's (and, as explained in the preceding section, the "structure of a sales organization" is not a sufficiently defined trade secret). *See, e.g.*, Amended Complaint ¶ 79 (alleging various trade secrets, but failing to include the structure of Plaintiff's sales organization in the list).

Because the Amended Complaint fails to allege any trade secret with sufficient particularity, and because Plaintiff has failed to actually allege misappropriation by Tatum of any potential trade secret, the Court should dismiss Plaintiff's DTSA and OUTSA claims.

<u>Plaintiff's Tortious Interference Claims Fail</u>.

Tatum adopts and incorporates Calyx's arguments relating to Plaintiff's tortious interference

with business relationships claim (Count IV). As demonstrated by Calyx, the tortious interference

claim fails because it is preempted by Plaintiff's trade secret claim, and because Plaintiff has not actually

alleged the failure of any business relationship as a result of either Defendant's conduct.[2]

First, courts have held that the OUTSA's cause of action for misappropriation of trade secrets

"displace[s] conflicting tort, restitutionary, and other laws of [Ohio] providing civil remedies for

misappropriation of a trade secret." *IUVO Logistics, LLC v. Jones*, No. 3:23-cv-00205, 2023 U.S. Dist.

LEXIS 196142, at *6 (S.D. Ohio Nov. 1, 2023) (quoting Ohio Rev. Code § 1333.67). This preemption

extends to "all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise

secret information falling short of trade-secret status." *Miami Valley Mobile Health Servs. v. ExamOne*

*Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012). The test for preemption is whether the

claim at issue "relies completely on the 'same operative facts'" as the misappropriation claim under

the OUTSA. *Ridge Corp. v. Altum LLC*, No. 2:21-cv-5915, 2023 U.S. Dist. LEXIS 19926, at *14 (S.D.

Ohio 2023). The additional claim can survive only if it "has a factual basis independent from the facts

establishing the OUTSA claim." *Stolle Mach. Co., LLC v. Ram Precision Indus.*, 605 F. App'x 473, 485

(6th Cir. 2015). As to timing, "there is ample case law that supports the Court's decision to rule on

preemption on a motion to dismiss." *Cincom Sys. v. Labware, Inc.*, No. 1:20-cv-83, 2021 U.S. Dist.

LEXIS 31945, at *15 (S.D. Ohio Feb. 22, 2021).

Plaintiff's tortious interference with business relationships claim in Count IV relies on the

same "operative facts" as its misappropriation of trade secrets claim in Count III. Count IV alleges

tortious interference with "at least one Third Party who has a contractual relationship with Grove

Bags." (Amended Complaint, ¶ 241.) Plaintiff explains this "Third Party" was a party Calyx would not

---

[2] The Court should also dismiss Plaintiff's tortious interference and civil conspiracy claims for failure to plead the necessary damages elements with any specific factual support. Plaintiff's vague and conclusory damages claims are insufficient and are the type of "bare assertion" that the Court need not consider. For example, Plaintiff has not alleged that it actually lost any customers, revenue, or market share since Calyx allegedly hired Tatum.

have known about "but for Tatum" and Tatum's employment with Plaintiff. (*Id.* at ¶¶ 243-44.)  The operative facts of Count IV, therefore, are Calyx and Tatum's use of information about the "Third Party," which Tatum allegedly gained through his relationship with Plaintiff. These facts fall within the alleged trade secret claim already pleaded in Count III, as Plaintiff apparently alleges the interference with the "Third Party" is both misappropriation of a trade secret and tortious interference. Therefore, Count IV for tortious interference must be dismissed as preempted.

Second, Plaintiff's tortious interference with business relationships claim fails because Plaintiff fails to allege the actual failure of any business relationship. Tortious interference requires:  (1) the existence of a contract or prospective business relationship, (2) the wrongdoer's knowledge of the contract or business relationship, (3) the wrongdoer's intentional procurement of the contract's / relationship's breach, (4) lack of justification (for contract claims), and (5) resulting damages. *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 23-24.

Federal Courts in Ohio have required "some factual allegation" that the interfering party "ended or prevented a business relationship." *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010; *see also Mettler-Toledo, Inc. v. B&B Elec., Inc.*, No. 2:18-cv-00494, 2019 U.S. Dist. LEXIS 65651, at *6 (S.D. Ohio Apr. 17, 2019); *Richardson v. CVS Caremark Corp.*, No. 1:18-cv-1308, 2018 U.S. Dist. LEXIS 149472, at *3 (N.D. Ohio Aug. 31, 2018); *and BCG Masonic Cleveland, LLC v. Live Nation Entm't, Inc.*, 570 F. Supp. 3d 552, 559 (N.D. Ohio 2021). The mere "vague assertion" of interference is "a legal conclusion that is itself entitled to no weight." *Wellington Res. Group LLC v. Beck Energy Corp.*, No. 2:12-cv-104, 2013 U.S. Dist. LEXIS 167200, at *20 (S.D. Ohio Nov. 25, 2013) (quoting *Wilkey v. Hull*, 366 Fed. Appx. at 638).

In Count IV, Plaintiff alleges interference with "at least one Third Party who has a contractual relationship with Grove Bags." Amended Complaint, ¶ 241. Plaintiff does not, however, allege that its business or contractual relationship with this Third Party has terminated. Instead, Plaintiff relies

16

on a "vague assertion" of interference, insufficient under *Wilkey*. For these reasons, the Court should dismiss Plaintiff's tortious interference with business relationships claim.

In Count V of the Amended Complaint Plaintiff alleges that Calyx tortiously interfered with Plaintiff's contractual relationship with Tatum by entering into a consulting arrangement with him. For the reasons explained by Calyx, that claim also fails. Plaintiff has not adequately pleaded the elements necessary to establish viable restrictive employment covenants for a Colorado employee. *See* C.R.S. § 8-2-113. Specifically, Plaintiff failed to plead that it complied with the statutory requirement to deliver a separate notice document to Tatum specifically identifying the restrictive covenants, nor that it provided the mandatory 14-day consideration window under § 8-2-113(4). The failure of either of these conditions renders the restrictive covenants "void" and unenforceable. § 8-2-113(4)(a). Neither Defendant can be found to have tortiously interfered with a void and unenforceable contract. *See Arrich v. Moody*, 2005-Ohio-6152, P24 (Ohio Ct. App. 2005).

<u>Plaintiff's Civil Conspiracy Claim Fails.</u>

First, Plaintiff's conspiracy claim fails to the extent it is derivative of and preempted by his trade secret claims. *See* Amended Complaint, ¶ 262 ("Defendants have conspired to unlawfully utilize Grove Bags' trade secrets."); *Id.* at ¶ 263 ("Defendants have conspired to unlawfully interfere with Grove Bags' customer relationships.") Plaintiff fails to allege any independent conspiracy claim. *Shepard & Assocs. v. Lokring Tech., LLC*, No. 1:20-cv-02488, 2022 U.S. Dist. LEXIS 117268, at *24-25 (N.D. Ohio July 1, 2022) ("a conspiracy claim that remains dependent upon the misappropriation of trade secrets is preempted by the OUTSA") (citing *Stolle*, 605 F. Appx. at 486).

Second, for similar reasons, the conspiracy claim fails for lack of "[a]n underlying unlawful act." *Williams v. Aetna Fin. Co.*, 1998-Ohio-294, 83 Ohio St. 3d 464, 475. Because the claim is based on the trade secret and tortious interference theories, and those claims fail for the reasons explained in the preceding sections, the civil conspiracy claim also fails.

17

Finally, the civil conspiracy claim fails under the intra-corporate conspiracy doctrine. Civil conspiracy requires a "[m]alicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Adams v. Margarum*, 2017-Ohio-2741, *¶ 20*. But there can be no combination of two or more persons where a corporation is alleged to have conspired with its own agents or employees. That doctrine "provides that '[w]here all defendants, allegedly co-conspirators, are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 2013-Ohio-4417, ¶ 28; *see also Cap City Dental Lab, LLC v. Ladd*, No. 2:15-cv-2407, 2016 U.S. Dist. LEXIS 118570, at *7 (S.D. Ohio Sept. 1, 2016). "A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991); *see also Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 214 (S.D. Ohio 2021). Here, Plaintiff has alleged that Tatum is an agent or employee of Calyx, and therefore Plaintiff cannot also allege a conspiracy between Calyx and Tatum. For these reasons, the Court should dismiss Plaintiff's civil conspiracy claim.

<u>Plaintiff's Deceptive Trade Practice Claim Fails</u>.

As an apparent after thought, Plaintiff has included in its Amended Complaint a new claim for deceptive trade practices under Ohio law, arguing that Calyx has used its "improper relationship with Tatum" to misrepresent the quality of its pricing and products. *See* Amended Complaint, ¶ 271. Grove Bags has not identified any specific purported misrepresentation by either Defendant relating to Plaintiff's products. Nor has Plaintiff identified any "particular deceptive trade practice" or disparagement by either Defendant.

To establish a claim under the Ohio Deceptive Trade Practices Act, a plaintiff must prove (a) a false or misleading statement, (b) that actually deceived or has the tendency to deceive a substantial segment of the target audience, (c) which is material in that it is likely to influence a purchasing

decision, and (d) the plaintiff has been or is likely to be injured as a result. *See Torrance v. Rom*, 2020-Ohio-3971 (8th Dist.)

As argued by Calyx in its Motion to Dismiss at pages 22-23 and adopted by Tatum, Plaintiff has not identified any false or misleading statements by either Defendant. There are no allegations by which the Court or Defendants can determine whether any particular statement was false or misleading, actually deceived or was likely to deceive the listener, or was likely to influence a purchasing decision. Moreover, the allegation that Calyx claims its products are comparable to Grove Bags' products is too vague to be actionable under Ohio law. Such claims by Plaintiff of relative superiority are "puffery" and cannot form the basis of a deceptive trade practice claim. *See* the cases cited by Calyx at pages 22-23 of its Motion to Dismiss. Finally, Plaintiff cannot rely on alleged statements by Calyx concerning lower prices than Plaintiff to support its deceptive trade practices claim. As explained by Calyx at page 23 of its Motion to Dismiss, reasonable consumers can compare prices to determine which seller has the lower price. Alleged statements about price are not likely to deceive a substantial part of the target audience or influence purchasing decisions. *See* the cases cited by Calyx at page 23 of its Motion to Dismiss.

For all of these reasons, Plaintiff has failed to states a claim under Ohio law for deceptive trade practices.

4912-0949-0963, v. 1

## Conclusion

Tatum respectfully requests that the Court dismiss this case under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6), and 28 U.S.C. § 1391(b), and 1406(a).

Respectfully submitted,

/s/ *Lester W. Armstrong*
Lester W. Armstrong (0036832)
MEYERS, ROMAN, FRIEDBERG & LEWIS
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
Phone:    (216) 831-0042
Fax:        (216) 831-0542
Email:    larmstrong@meyersroman.com

*Attorneys for Defendant, Michael Ryan Tatum*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), counsel for Defendant Tatum submits that this case has not yet been assigned to a track and certifies that this memorandum of law adheres to the twenty-page limitation for dispositive motions in standard or unassigned track cases.

/s/ *Lester W. Armstrong*
Lester W. Armstrong (0036832)

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 24, 2025, I electronically filed a copy of the foregoing. The Court's electronic filing system will send notice of this filing to all parties who may access this filing through the Court's system.

/s/ *Lester W. Armstrong*
Lester W. Armstrong (0036832)

4912-0949-0963, v. 1