IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:25-cv-01321-CYC

MICHAEL RYAN TATUM, et al.

    Plaintiffs,

v .

KINZIE ADVANCED POLYMERS LLC d/b/a GROVE BAGS,

    Defendant.

**DEFENDANT'S REPLY MEMORANDUM IN
SUPPORT OF ITS RULE 12(b)(1) MOTION TO DISMISS**

## I.  INTRODUCTION

It is undisputed that Defendant Kinzie Advanced Polymers LLC d/b/a Grove Bags ("Defendant") initiated litigation to enforce its employment agreement in the United States District Court for the Northern District of Ohio nearly six months prior to the filing of this lawsuit.  It is further undisputed that the primary issue in the two lawsuits are identical – is the Grove Bags' employment agreement governed by Ohio law.  Finally, Plaintiffs Michael Ryan Tatum ("Tatum") Calyx Containers, LLC ("Calyx"), Chaz Hermanowski ("Hermanowski"), and Jacob Torrison ("Torrison") (collectively, "Plaintiffs") confirm that the federal judge in Ohio is reviewing motions to dismiss and a motion for a preliminary injunction.

Plaintiffs do not explain why Calyx began discussions with Tatum regarding employment in October 2023, but this lawsuit was not filed until April 25, 2025 – eighteen months later.  Rather,

Plaintiffs incredibly argue that "[t]he factual timeline demonstrates that Defendant's Motion to Dismiss for lack of subject matter jurisdiction is a thinly veiled attempt to manipulate the procedural record, falling short of principles of candor, fairness, and the obligations to avoid procedural gamesmanship." (Opposition at 2). Finally, the Tenth Circuit has long held that the first-to-file rule provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965). Plaintiffs, however, urge this Court to reject Tenth Circuit authority because it is "discretionary." (Opposition at 2).

As set forth below, all three of first-to-file factors have been satisfied. *Wakaya Perfection, LLC v. Youngevity International, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018). Accordingly, this Court lacks subject-matter jurisdiction over this lawsuit and the Verified First Amended Complaint and Jury Demand (the "Complaint") filed by Plaintiffs should be dismissed without prejudice.

## II. RELEVANT FACTS

Defendant presented the Declaration of Daniel Jaffe in support of its motion because a party is permitted to go beyond the pleadings in a Rule 12(b)(1) motion. *Holt v. US*, 46 F.3d 1000, 1003 1002 (10th Cir. 1995). The Opposition does not include a declaration. In addition, the Opposition only disputes one fact – why Defendant sought an extension to file this Motion. (Opposition at pg. 3 and Exhibit A).

### A. Undisputed Facts.

The Declaration of Daniel Jaffe addresses Defendant's Ohio base and its deep connections to Ohio. (Dec. Jaffe at ¶11). The Declaration further verifies Defendant's trade secrets and the

protections that it takes to protect those trade secrets. (Dec. Jaffe at ¶¶12-13). Finally, the Declaration addresses the reasons why the choice of law and jurisdiction provisions set forth in the agreements signed by Tatum, Hermanowski ("Hermanowski"), and Torrison are valid and legally enforceable. (Dec. Jaffe at ¶¶14-38). None of these facts are disputed by Plaintiffs in the Opposition.

More importantly, the Opposition does not dispute the timeline of events that clearly demonstrates Defendant's good faith pursuit of its claims in Ohio:

- Tatum signed five contracts with Defendant that provided Ohio as the choice of law and jurisdiction. (Dec. Jaffe at Exs. 4, 6, 7, 8, and 9);

- Tatum voluntarily resigned from his employment with Defendant in August 2023. (Dec. Jaffe at ¶24 and Ex. 9);

- While Tatum was still being paid his severance payment, Tatum and Calyx began to discuss employment. (Dec. Jaffe at ¶27);

- Tatum's contract with Calyx was effective in September 2024. (Dec. Jaffe at Ex. 10);

- Prior to signing the contract, Calyx and Tatum worked together to review Colorado law. (Doc. #1 at ¶¶26-32);

- Defendant learned of Tatum's work with Calyx through a vendor. (Dec. Jaffe at ¶30);

- Within days of learning of the relationship, Defendant filed the lawsuit on October 29, 2024, in the United States District Court for the Northern District of Ohio, Case No. 1:24-cv-01887-SO (the "First Ohio Lawsuit"). (Dec. Jaffe at 31);

- Calyx and Tatum filed motions in the First Ohio Lawsuit that mirror the arguments in this lawsuit. (Dec. Jaffe at ¶¶33-34); and

- Calyx and Tatum did not file this lawsuit until April 30, 2025. (Doc. #1).

B.   **Tatum's Factual Dispute Should Be Rejected.**

The only alleged factual dispute asserted in the Opposition is with the timing of the filing

Second Ohio Lawsuit. (Opposition at 3-4). To the contrary, the final day of the injunction hearing in the First Ohio Lawsuit took place on May 28, 2025. (Injunction Transcript at pg. 248-249 (cited pages attached as Exhibit 1 (hereinafter "TR. at __")). The answer to the Colorado lawsuit was first extended to May 30, 2025 due to counsel's schedule. (Opposition at Ex. A). Thereafter, the May 30, 2025 date was extended due to Tatum's testimony in the injunction hearing. (Opposition at Ex. A).

Specifically, Tatum was questioned about the Colorado complaint in the injunction hearing. (TR. at 275 and Ex. 18). The facts in the Colorado complaint were verified by Tatum. (Doc. #1); (TR. at 276). During cross examination in the First Ohio Lawsuit, however, Tatum admitted that several paragraphs of the Colorado complaint were not corrected and needed to be amended. (TR. at 277-278, 280-281, 283, and 285-286). Tatum testified, under oath, that he was working with the Colorado attorneys to amend the complaint and that it would be amended shortly after the injunction hearing. (TR. at 278 and 286). For example, Tatum explained to the Court:

> There is also amendments and additional people doing this right now. So this will be changing. We realized there were some misclarifications [sic] with our attorney and counsel in Colorado.

(TR. at 278); (TR. at 286 ("This is somehting already as a conversation with our Colorado attorney between everything going on here and building up to her returning back from the country.")). Based on Tatum's sworn tesitmony, Defendant requested an extension so it did not have to file its motion in this Court twice. (Opposition at Ex. A).

The factual errors in the Colorado complaint were also quite significant. Each of the errors below were admitted to by Tatum in the First Ohio Lawsuit:

- Tatum testified in the First Ohio Lawsuit that he was only working 25 hours a week for Calyx. (TR. at 235). However, paragraph 33 of the Colorado complaint included an

- 4 -

- hours worked range between 39.7 and 58 hours per week.  (TR. at 277-278);
- Similarly, paragraph 19 of the Colorado complaint alleges that Tatum was earning less than $102,000 per year when the final employment agreement was signed with Defendant.  (Doc. #1).  However, Tatum admitted that his income was in excess of $102,000.  (TR. at 280-281);
- Tatum testified in the First Ohio Lawsuit that he ran a very successful business prior to his experience with Defendant.  (TR. at 282).  However, paragraph 25 of the Colorado complaint alleges that he "was compelled to accept lower-skilled employment unrelated to his expertise" due to his restrictions with Defendant.  (TR. at 283); (Doc. #1 at ¶25);
- Finally, paragraph 26 of the Colorado complaint alleges that Tatum was first offered employment with Calyx in October 2023 – within three months of Tatum's resignation from Defendant's employment.  (Doc. #1).  However, in the First Ohio Lawsuit, Tatum testified that this factual allegation "is not correct."  (TR. at 285-286).

Defendant reasonably believed Plaintiff was planning to amend his Complaint to cure these issues and under Rule 1 was attempting to save party and court resources by not addressing the Complaint until it was amended.

## III. ARGUMENT

### A. Ohio's Choice of Law Provisions ill Apply Ohio Law to the Contract.

The Opposition takes the position that only Colorado law and Tatum are relevant to the choice of law issue.  Plaintiffs go so far as to argue that "Colorado is the only court that can adjudicate the claims before it."  (Opposition at pg. 2).  However, Tatum's failure to challenge his Ohio connections while employed by Defendant verify that Ohio law will be applied in the First Ohio Lawsuit.

The Sixth Circuit Court of Appeals, in *Down-Lite International, Inc. v. Altbaier*, 821 Fed. Appx. 553, 556 (6th Cir. July 28, 2020), applied Ohio law in the face of California's public policy when a former employee signed an Ohio choice of law provision with an Ohio-based employer. *Id.* at 556 ("Thus, on these facts, we will not allow California's public policy to trump the parties' clear and unambiguous agreement to apply Ohio law.").

It is undisputed that Defendant is an Ohio limited liability company with its headquarters located in Ohio. Defendant's only warehouse is located in Ohio. Finally, the vast majority of Defendant's employees are based in Ohio, including its Chief Executive Officer, Chief Financial Officer, human resources official, and the vast majority of Defendant's leadership team. Due to Defendant's Ohio connections, all of its employment and contractor agreements include provisions that select Ohio for the jurisdiction of any lawsuit and Ohio as the choice of law.

Tatum signed five agreements with Defendant that include the Ohio choice of law. During his employment with Defendant, Tatum reported to two Ohio based managers. Tatum further admitted that he managed, evaluated, and trained many Ohio employees. At the time of his discharge, Tatum managed between four and six Ohio employees. Tatum further admitted that he traveled to Ohio regularly as part of his employment duties. Finally, Tatum admitted that he partook in weekly leadership meetings with Defendant's executive team.

Plaintiffs did not rebut or challenge any of these facts. Rather, Tatum simply argued that Colorado has a strong public policy. However, in *Viking Group, Inc. v. Grasser*, Case No. 1:22-cv-933, 2023 WL 4824454 (W.D. Mich. January 19, 2023), the District Court rejected an argument similar to Tatum's and applied Michigan law. *Id.* at \*4 ("Even if enforcement of the restrictions in the Agreement contravened Colorado's fundamental public policy, Colorado does not have a materially greater interest than Michigan. Therefore, the Court concludes the analysis under Section 187(2) still leads towards application of Michigan law").[1]

### B. The First-To-File Rule Is Not A Rule That This Court Can Simply Ignore.

In the face of the first-to-file rule and the undisputed facts, Plaintiffs argue that "the first-

---

[1] Michigan applies the same conflict of law restatement as Ohio. *Id.* at ^3; *Down-Lite,* 821 Fed. Appx. At 554.

- 6 -

to-file rule is discretionary and not mandatory." (Opposition at pg. 2). To the contrary, Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

This Court lacks subject-matter jurisdiction over Plaintiffs' Complaint under Rule 12(b)(1) because the allegations in Plaintiffs' Complaint substantially overlap with the claims and issues in the two Ohio lawsuits that were first filed by Defendant. *Rasmussen v. Burnett*, Case No. 24-cv-01727-SKC-KAS, 2025 WL 605250 *5 (D. Col. Feb. 25, 2025). The first-to-file rule provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965).

The Tenth Circuit, in *Wakaya Perfection, LLC v. Youngevity International, Inc.*, 910 F.3d 1118 (10th Cir. 2018), set forth the three factors to consider when applying the first-to-file rule: "'(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.'" *Id.* at 1124 (*citing Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)). The *Wakaya* court made clear that district courts can look at other "equitable factors" when reviewing the first-to-file rule such as "inequitable conduct, bad faith, anticipatory suits, and forum shopping as equitable considerations." *Id.*

The Opposition does not address these factors, but rather argues that Colorado has a "unique interest" in deciding this case. (Opposition at 9). As set forth in Defendant's Motion, all three factors firmly support the application of the first-to-file rule in this matter. Moreover, as set forth above, Colorado statutory law – like California statutory law – cannot trump choice of law

rules applied by different states.  *Down-Lite International, Inc. v. Altbaier*, 821 Fed. Appx. 553, 556 (6th Cir. July 28, 2020),

### C. <u>No Equitable Considerations Support Plaintiffs</u>.

The final issue raised by Plaintiffs is that equitable considerations run contrary to the first-to-file rule.  (Opposition at pgs. 10-11).  The argument is based solely on Defendant's extension request to respond to the initial Colorado complaint.

As set forth above, Tatum admitted, under oath, that his sworn statements presented to this Court were correct.  (TR. at 277-278, 280-281, 283, and 285-286).  Moreover, in order to justify his changing testimony, Tatum tested in the First Ohio Lawsuit that his attorneys in Colorado were working to amend the Colorado complaint.  (TR. at 278 and 286).  There was no reason for Defendant to have to file two motions to dismiss in this Court so the amendment raised by Tatum was presented to opposing counsel who confirmed Tatum's testimony.  (Opposition at Ex. A).

A verified complaint filed in federal court should be closely reviewed before the document is signed and filed.  Tatum made clear that this close review did not occur before the Colorado complaint was filed.  Accordingly, the equities do not run in favor of the party who amended a complaint to correct false statements and Plaintiffs' equity argument should also be rejected.

### IV. <u>CONCLUSION</u>

Based on the above-cited arguments and authorities, this Court lacks subject-matter jurisdiction over this lawsuit and the Verified First Amended Complaint and Jury Demand (the "Complaint") filed by Plaintiffs should be dismissed without prejudice.  All three factors set forth by the Tenth Circuit in *Wakaya Perfection, LLC v. Youngevity International, Inc.*, 910 F.3d 1118 (10th Cir. 2018) and the claims at issue in the captioned-lawsuit should be litigated in the first filed

Ohio district court cases, Case No. 1:24-cv-01887-SO and Case No. 1:25-cv-01217-CEF.

Dated this 8th day of August, 2025.

                        **GORDON REES**
                        **SCULLY MANSUKHANI, LLP**

                        */s/ Brittney T. Bulawa*
                        Andrew K. Lavin, Esq.
                        Brittney T. Bulawa, Esq.
                        555 Seventeenth Street, Suite 3400
                        Denver, Colorado 80202
                        Telephone: (303) 534-5160
                        alavin@grsm.com
                        bbulawa@grsm.com

                        *Attorneys for Defendant Kinzie Advanced Polymers LLC d/b/a Grove Bags*

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true copy of the above and foregoing **Reply Memorandum in Support of Defendant's Rule 12(b)(1) Motion to Dismiss** was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to all counsel referenced below, this 8th day of August, 2025.

Jessamyn L. Jones
Grant T. Shibao
2000 S. Colorado Blvd, Tower 1
Suite 10000
Denver, Colorado 80222
Jjones@3ilawfirm.com
gshibao@3ilawfirm.com

*Attorneys for Plaintiffs*

                                                    /s/ Brittney T. Bulawa
                                                 Gordon Rees Scully Mansukhani, LLP