# EXHIBIT 1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 50-1  Filed: 07/02/25  1 of 150. PageID #: 951

98

1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION

3     ------------------------------X
      KINZIE ADVANCED POLYMERS,      :  Case No. 1:24-cv-1887
4     LLC D/B/A GROVE BAGS,          :  Cleveland, Ohio
                                     :
5              Plaintiff,            :  Tuesday, May 27, 2025
                                     :  12:35 p.m.
6          v.                        :
                                     :  **VOLUME 2**
7     CALYX CONTAINERS, LLC, et      :  *(Pages 98 - 247)*
      al.,                           :
8                                    :
               Defendants.           :
9     ------------------------------X

10

11

12         TRANSCRIPT OF PRELIMINARY INJUNCTION PROCEEDINGS

13           BEFORE THE HONORABLE SOLOMON OLIVER, JR.

14              SENIOR UNITED STATES DISTRICT JUDGE

15

16

17

      Court Reporter:          Donnalee Cotone, RMR, CRR, CRC
18                             Realtime Systems Administrator
                               United States District Court
19                             801 West Superior Avenue
                               Court Reporters 7-189
20                             Cleveland, Ohio 44113
                               216-357-7078
21                             donnalee_cotone@ohnd.uscourts.gov

22

23

24    Proceedings recorded by mechanical stenography, transcript

25    produced by computer-aided transcription.

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 50-3  Filed: 07/02/25  2 of 150.  PageID #: 952

99

1    APPEARANCES:

2

3        On behalf of the Plaintiff Kinzie Advanced Polymers,
         LLC d/b/a Grove Bags:

4

5            **Y. TIMOTHY CHAI, ESQ.**
             **DAVID A. CAMPBELL, III, ESQ.**
             Gordon Rees Scully Mansukhani, LLP

6            Key Tower
             127 Public Square, Suite 5130

7            Cleveland, Ohio 44114
             216-302-2531

8            dcampbell@grsm.com
             tchai@grsm.com

9

10       On behalf of the Defendant Calyx Containers, LLC:

11           **OLIVER D. FREY, ESQ.**
             **MATTHEW F. SCHMITZ, ESQ.**

12           52 East Gay Street
             Columbus, Ohio 43215

13           614-464-6400
             odfrey@vorys.com

14           mfschmitz@vorys.com

15

16       On behalf of Defendant Michael Ryan Tatum:

17           **LESTER W. ARMSTRONG, ESQ.**
             Eton Tower

18           28601 Chagrin Boulevard, Suite 600
             Cleveland, Ohio 44122

19           216-831-0042
             larmstrong@meyersroman.com

20

21

         ALSO PRESENT:            **MICHAEL RYAN TATUM**

22                                **DANIEL JAFFE**
                                  SIMON KNOBEL

23

24

25

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 50 Filed: 07/02/25  138 of 150.  PageID #: 1088
Tatum - Cross by Campbell                          235

1    A.    Yes.  240 to 260, yes.

2    Q.    Excuse me?

3    A.    Yes.  For the 240 to 260, yes.

4    Q.    You would -- 2025, but for lawsuit, you'd be earning

5    between 240 and 260 by Calyx, you'd be in charge of all

6    sales, correct?

7    A.    That was the full-time offer that was brought up to

8    me.  That salary range, yes.

9    Q.    Okay.  And this contract, due to the lawsuit -- you

10   had a commission set forth in here, but due to the lawsuit,

11   you decided from your testimony -- we'll learn later -- that

12   you're not going to actually solicit customers, correct?

13   A.    No, I don't.  It's my understanding, that's just

14   common in all of the agreements.  I think Calyx can speak

15   further to that.  But as Mr. Grover admitted, packaging is a

16   huge industry with a lot of things that even Grove Bags

17   doesn't offer.  And so my understanding is that this

18   commission piece is standard for all employees being a

19   general packager.  And I mean, really, a vast amount of

20   people could need packaging for all sort of purposes.

21   Q.    You're saying Calyx's commission of the 7 percent

22   offered to you is standard?

23   A.    That's my understanding, yes.

24   Q.    And then we looked at the term, paragraph 4 of Exhibit

25   A, Tatum A, and the contract ended December 4th, 2024,

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 5pgFiled: 07/03/25  1 of 165. PageID #: 1101
248

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF OHIO
2                  EASTERN DIVISION

3                  - - - - -

4

5    KINZIE ADVANCED POLYMERS, LLC,  )
     doing business as Grove Bags    )
6                                    )
                  Plaintiff,         )
7                                    )
           vs.                       )  Case No. 1:24CV1887
8                                    )
     CALYX CONTAINERS, LLC, et al.,  )
9                                    )
                  Defendants.        )
10

11                 - - - - -

12

13     CONTINUED TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE

14    HONORABLE SENIOR JUDGE, SOLOMON OLIVER, JR. SENIOR JUDGE

15       SAID COURT, ON WEDNESDAY, MAY 28TH, 2025,

16          COMMENCING AT 9:00 O'CLOCK A.M.

17                 - - - - -

18          Volume 3, Pages 248 through 412

19                 - - - - -

20

21

22   Court Reporter:        GEORGE J. STAIDUHAR
                            801 W. SUPERIOR AVE.,
23                          SUITE 7-184
                            CLEVELAND, OHIO 44113
24                          (216) 357-7128

25                 - - - - -

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 50-1 Filed: 07/03/25  2 of 165.  PageID #: 1102

249

```
 1    APPEARANCES:

 2        On behalf of the Plaintiff:

 3
          GORDON REES SCULLY MANSUKHANI - Columbus
 4        BY:  DAVID A. CAMPBELL, III, ESQ.
                  Y. TIMOTHY CHAI, ESQ
 5        Key Tower, Suite 5130
          127 Public Square
 6        Cleveland, OH 44113

 7        On behalf of the Defendant, Calyx Containers, LLC:

 8        VORYS SATER SEYMOUR & PEASE - Columbus
          BY:  MATTHEW F. SCHMITZ, ESQ.
 9                OLIVER D. FREY, ESQ.
          52 East Gay Street
10        Columbus, OH 443216

11        On behalf of the Defendant, Michael Ryan Tatum:

12        MEYERS, ROMAN, FRIEDBERG & LEWIS
          BY:  LESTER W. ARMSTRONG, ESQ.
13        Ste. 600
          28601 Chagrin Blvd.
14        Cleveland, OH 44122

15                    - - - - -

16

17

18

19

20

21

22

23

24

25
```

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 51-7 Filed: 07/03/25  28 of 165.  PageID #: 1128
275

Mr. Tatum - Recross

1    Q.    Okay.  Now, as to your hours worked at Calyx, okay,

2    now you have given some things.  You don't have any time

3    records here, and we haven't gotten any production to

4    show how many hours worked at Calyx, right?

5    A.    Correct.

6    Q.    Okay.  So I want to show you -- do you remember that

7    you actually in Colorado actually signed and verified the

8    complaint in Colorado?

9    A.    Again, we are referencing the Colorado complaint.  I

10   don't have that in front of me.

11   Q.    I am going to hand it to you.  If I could come

12   forward?

13            MR. CAMPBELL:  If I could come forward, your

14   Honor and approach?

15            THE COURT:  You may.

16   BY MR. CAMPBELL:

17   Q.    If you could take a moment to look through that.

18   A.    Thank you.

19            THE COURT:  Do you want to mark it somehow?

20            MR. CAMPBELL:  Yeah.  Tim, what's the last

21   one in our binder?  Our binder goes to 17.  Can we mark

22   this as 18, your Honor?

23            THE COURT:  All right.

24   BY MR. CAMPBELL:

25   Q.    Let me know when you are ready, Mr. Tatum.

Case No. 1:25-cv-01321-DDD-CYC   Document 36-1   filed 08/08/25   USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 51-8 Filed: 07/03/25  29 of 165.  PageID #: 1129
276

Mr. Tatum - Recross

1   A.   I believe I am ready.

2   Q.   Okay.  I want to take you to the second last page

3   just to leave no doubt about this complaint.  Is that a

4   verification signed by you?

5   A.   Yes, it is.

6   Q.   It was actually also signed -- the same verification

7   or identical verification was also signed by a Calyx

8   representative here today, correct?

9   A.   Yes.

10  Q.   And you signed it verifying under penalty of perjury

11  that the document to the best of your knowledge was true

12  and correct.  Is that a true statement?

13  A.   Yes.

14  Q.   Okay.  Well, let's verify some of these facts in

15  here just to see because we have had a couple different

16  versions here, and let's look at a couple things.  So

17  first of all, we will jump around a little bit, but I

18  noticed in the complaint some points here as you went

19  through on your direct examination with your counsel, and

20  I want to take you to -- okay.  I want to take you to

21  page 6, paragraph 33.  Okay?  Do you see that?

22  A.   Yes.

23  Q.   Okay.  And this was verified by you, and Mr. Knobel

24  as a consultant for Calyx, "Tatum is compensated at a

25  rate of $45 per hour."

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 51-9 Filed: 07/03/25  30 of 165.  PageID #: 1130
277

Mr. Tatum - Recross

1              So we already said you and Calyx negotiated

2    a higher rate after that first contract was signed,

3    correct?

4    A.    Yes.

5    Q.    The $35 was your initial rate, correct?

6    A.    Correct.

7    Q.    And then you guys after the lawsuit was filed, you

8    and Calyx negotiated a $10 higher rate of pay, correct?

9    A.    Correct.

10   Q.    Okay.  Now, when I calculate this out and you are

11   alleging in this complaint that if you are not allowed to

12   work for Calyx at $260,000 that you are being damaged,

13   you have every reason in the world to say "hey, this is

14   low."  You say "Tatum is compensated at a rate of $45 per

15   hour resulting in average annual earnings between

16   approximately $93,000 and $105,000."  Did I read that

17   right?

18   A.    Yes.  It looks like basic math of filling it out.

19   Speaking further than that, my Colorado attorney is not

20   here --

21   Q.    Did I read it right, sir?

22   A.    Yes.

23   Q.    Okay.  Now, as you say, basic math, I did some basic

24   math that you and Mr. Knobel put together for your

25   average annual earnings.  You told us and the Court it is

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 5    Filed: 07/03/25  31 of 165.  PageID #: 1131
278

Mr. Tatum - Recross

1    25 hours and maybe less.  You are telling another Court

2    under penalty of perjury that you worked between 39.7

3    hours a week and 58 hours a week.  Basic math at $45 an

4    hour, $93 is 39.7 hours a week, nearly full-time,

5    correct?

6    A.    I -- yes.

7    Q.    Okay.  And then the next one, $105,000 that you put

8    in, not me, you put it into the complaint, and you

9    verified under penalty of perjury is 58 hours a week at

10   $45 an hour, correct?

11   A.    That's what's in here from the attorney, yes.

12   Q.    So that's what you told the Court in Colorado that

13   you were working again, 40 and 58 hours a week, and this

14   was your sworn statement, correct?

15   A.    It appears to be, yes.

16   Q.    Okay.  Not appears to be; that is a sworn statement

17   that you and Mr. Knobel signed and said under penalty of

18   perjury it is true and correct?

19   A.    There is also amendments and additional people doing

20   this right now.  So this will be changing.  We realized

21   there were some misclarifications with our attorney and

22   counsel in Colorado.

23   Q.    Sir, you like to change your testimony.  As of

24   today, that is what you signed under penalty of perjury,

25   correct?

Case No. 1:25-cv-01321-DDD-CYC   Document 36-1   filed 08/08/25   USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 51-9 Filed: 07/03/25   33 of 165.  PageID #: 1133
280

Mr. Tatum - Recross

1    going to work our way down.  Okay?

2                  Now, first of all, you allege that

3    Grove Bags is a packaging company specializing in

4    cannabis packaging, paragraph 11, correct?

5    A.    Yes.

6    Q.    And Calyx is the same.  They are a packaging company

7    specializing in cannabis packaging, correct?

8    A.    Which line is that on here?

9    Q.    I am not asking you about a line; is that correct,

10   that Calyx is the same description?

11   A.    No.  I shared with you earlier the description is

12   much broader with the manufacturing and product --

13   Q.    Do they perform packaging in the cannabis industry?

14   A.    It is one of multiple things they do, yes.

15   Q.    Let's look at paragraph 19, page 4.  Have you looked

16   at your 2022 W-2?

17   A.    I don't have it in front of me to reference.

18   Q.    You certainly had access to that when you signed

19   this complaint, correct?

20   A.    Yes.

21   Q.    The year 2022 earnings from Grove Bags were

22   significantly over $102,000 per year, correct?

23   A.    Not when I was terminated, no.  So I was not

24   compensated more than this in that year.

25   Q.    You for the 2022 annual year, you worked the whole

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 5    Filed 07/03/25   34 of 165.  PageID #: 1134
281

Mr. Tatum - Recross

1    year, correct?

2    A.    Oh, for 2022, yes.  But this says the signing of the

3    employment agreement.

4    Q.    Your annual salary the year before was not $102,000;

5    it was much more at Grove Bags, correct?

6    A.    So I realized this should be saying in here at the

7    time of the signing of the severance agreement.

8    Q.    Okay.  So we have another change.

9            When you sign something and verify under

10   penalty of perjury, are you careful about those things?

11   A.    I typically -- with everything that has been going

12   on that you drug us here in this Court system.

13   Q.    So what you are saying is that your annual salary,

14   that's not even correct there.  You are going to change

15   this now and say the "Court, at the time of the

16   severance, I only worked eight months so I only worked

17   $102."  Your annual salary, just your base was $145 at

18   Grove Bags, correct?

19   A.    I would be happy to correct this now, but it will be

20   changed.  This is a severance agreement.  Regardless what

21   you offer me as a salary, if I am fired and don't receive

22   it, it is just a perceived value; it is not something I

23   actually retained and brought in.  So this is what I was

24   paid in 2023.

25           You could have good given me a half

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 5   Filed: 07/03/25   35 of 165.  PageID #: 1135

282

Mr. Tatum - Recross

 1   million-dollar salary, and this is what was made from

 2   it --

 3   Q.   This is what was made from it?

 4   A.   This is what was received before termination.  This

 5   is what my pay was when departing from Grove Bags.

 6   Q.   Okay.  So you are going to change that as well?

 7   A.   I am just clarifying now.  I am not sure what it

 8   says on my employment agreement.  It should say

 9   "severance" because that's when I was terminated, and

10   this is talking about at the time of signing it would be

11   the severance agreement.  This is what was made in that

12   final year.

13   Q.   Okay.  Now, you've told the Court about how you ran

14   a very, very successful business prior to Grove Bags,

15   right?

16   A.   Yes.

17   Q.   And you told the Court that you went back into that

18   very, very successful business after leaving Grove Bags,

19   correct?

20   A.   I said I went back to consulting.  They are not at

21   all of the same magnitude of what I was doing before.

22   Before I had over 20 employees.  I had a 10,000 square

23   feet building in the heart of downtown Denver.  I had

24   only 56 clients a month and bookings throughout the

25   weekend.

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 5  Page 36 of 37  Filed 07/03/25  36 of 165.  PageID #: 1136
283

### Mr. Tatum - Recross

1    I have not at all portrayed and said it is

2   the same scale.  I clarified and said that I do

3   consulting services, and I also clarified that I am a

4   sole proprietor, so it is not at all the scale or

5   magnitude of what I was doing before.

6   Q.   Sir, you just started on September 1.  You are not

7   going to hire 20 people immediately when you first reopen

8   your business, correct?

9   A.   As I just said, it is also not the same business

10  model.  I consult now.

11  Q.   Well, let's look at No. 25 as to what you told the

12  Court in Denver.

13    "Following his termination in August 2023,

14  Tatum was compelled to accept lower-skilled employment

15  unrelated to his area of expertise."  Did I read that

16  right?

17  A.   Yes.  And that's what has happened.  I haven't been

18  able to consult without --

19  Q.   Sir, you have to answer my question.  I asked you,

20  did you -- did I read that right?

21    THE COURT:  One moment.  Now, I am allowing

22  some flexibility here because there is no jury in the

23  box, and sometimes you characterize it, you say "let's

24  look at one more thing where you were inconsistent."  I

25  think you are bringing out working through

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 50 Filed: 07/03/25   38 of 165.  PageID #: 1138
285

Mr. Tatum - Recross

1    A.    Yes.   That's what the threat was at the time of the

2    signing of the severance agreement.

3    Q.    And then this is what you and Mr. Knobel told the

4    Court in Denver.   Paragraph 26, and you tell me if I read

5    this correctly.   "In October 2023, Tatum was approached

6    by Calyx, a manufacturer specializing in cannabis

7    packaging solutions about coming to work with the

8    company."  Did I read that correct?

9    A.    Yes.

10   Q.    Okay.  So first of all, I asked you about

11   Grove Bags, where you allege that Grove Bags is a

12   packaging company specializing in cannabis packaging, and

13   I asked you whether Calyx did the same.   In paragraph 26,

14   Mr. Knobel signed under penalty of perjury along with you

15   that "Calyx is a manufacturer specializing in cannabis

16   packaging solutions."  Did I read that right?

17   A.    Yes.

18   Q.    Okay.  So is Mr. Knobel not telling the Court the

19   correct statement there, or does he know his business

20   better than you?

21   A.    It sounds like he is not describing what the whole

22   business does here.

23   Q.    Okay.  So I guess you guys are going to change that

24   as well, but the key point here that I want to ask you

25   about, you said that you were only doing labeling in

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
Case: 1:24-cv-01887-SO  Doc #: 5   Filed: 07/03/25   39 of 165.  PageID #: 1139
Page 16 of 37
286

Mr. Tatum - Recross

1    2023, and here you are telling the Court under penalty of

2    perjury that you were approached by Calyx about coming to

3    work with Calyx in October 2023.  Did I read that right?

4    A.    So we've talked about a couple things.

5    Q.    Did I read it right?

6    A.    I am not sure where you are looking now.

7    Q.    Paragraph 26, are you telling the Court under

8    penalty of perjury that you got a job offer from Calyx?

9    A.    In which page are you on?

10   Q.    Paragraph 26, page 3, page 5.

11   A.    I was going to say, thank you for clarifying.  26.

12   Yes, this statement is not correct.  As I have said for

13   the record in this Court, I saw a mutual friend in

14   October 2023, and the verbal offer came in January, and

15   from there with seeing Calyx in March on my personal trip

16   is when I dropped off labels and those quoting pieces.

17   My story has been consistent and the same.  This is

18   something already as a conversation with our Colorado

19   attorney between everything going on here and building up

20   to her returning back from the country.

21   Q.    We will ask Mr. Knobel about that since both of you

22   verified this under penalty of perjury, and both of you,

23   if we look at paragraph 28, it says "Calyx again

24   approached Tatum in January of 2024."  Did I read that

25   right?

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 17 of 37
Case No. 1:25-cv-01321-CYC    Document 1    filed 04/25/25    USDC Colorado    pg 1
of 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION No.

MICHAEL RYAN TATUM, an individual; and CALYX CONTAINERS, LLC, a Colorado
limited liability company,

     Plaintiffs,

v.

KINZIE ADVANCED POLYMERS LLC d/b/a GROVE BAGS, an Ohio limited liability
company.

     Defendant.

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND REQUEST FOR HEARING

COME NOW, Plaintiffs Michael Ryan Tatum ("Tatum") and Calyx Containers, LLC

("Calyx") (collectively "Plaintiffs"), by and through their counsel, 3i Law, LLC, and for their

Verified Complaint for Declaratory Judgment and Injunctive Relief states as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    Tatum is an individual residing at 5147 Chicory Circle, Brighton, Colorado.

2.    Calyx is a Colorado limited liability company with a principal office located at 392

Mill Creek Cir., Vail, Colorado.

3.    Defendant, Kinzie Advanced Polymers LLC d/b/a Grove Bags ("Defendant"), is an

Ohio limited liability company with a registered agent located at 5 Lake House Lane, City of

Hunting Valley, State of Ohio.

1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 18 of 37
Case No. 1:25-cv-01321-CYC    Document 1    filed 04/25/25    USDC Colorado    pg 2
of 17

4.      On or about February 1, 2023, the Parties entered into an agreement for the employment of Tatum ("Employment Agreement"), attached and referenced hereto as **Exhibit 1**.

5.      This is a civil action between two parties. Each party is a citizen of a different state. The amount in controversy of this Complaint exceeds $75,000.00.[1] As such, Plaintiffs invokes the jurisdiction of the court pursuant to Article III § 2 of the U.S. Constitution, 28 U.S.C. § 1332.

6.      Venue is fair and proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this state, and because Plaintiffs are citizens of the state of Colorado and Tatum entered into the Employment Agreement at issue in the state of Colorado. Additionally, C.R.S. § 8-2-113(6) prohibits covenants not to compete from requiring a worker who primarily resided or worked in Colorado to adjudicate the enforceability of the covenant outside of Colorado. Colorado Revised Statute § 8-2-113(7) further authorizes a worker or prospective employer to seek a declaratory judgment in a court of competent jurisdiction in Colorado as to the unenforceability of such a covenant.

7.      Defendant knew Tatum was a Colorado resident at the time of hire and expressly acknowledged Tatum's residence in the City of Brighton, Colorado in the Employment Agreement. *See* Exh. 1, Employment Agreement, ¶ 1.

8.      Although the Employment Agreement contains a forum-selection clause designating a different jurisdiction, venue in the State of Colorado is proper because enforcing that

---

[1] In actions seeking declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *See Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). The Tenth Circuit applies the ""either viewpoint rule," which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum." *Id.*

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 19 of 37
Case No. 1:25-cv-01321-CYC    Document 1    filed 04/25/25    USDC Colorado    pg 3
of 17

clause would contravene Colorado's strong public policy. Colorado has a significant connection to the parties and the dispute, and courts may decline to enforce a forum-selection clause where doing so would violate the forum state's fundamental public policy. *See Morris v. Towers Fin. Corp.*, 916 P.2d 678, 682 (Colo. App. 1996) (refusing to enforce a forum-selection clause designating New York where it conflicted with Colorado's public policy under the Colorado Wage Claim Act).

## II.    **GENERAL ALLEGATIONS**

9.    At all times relevant, Tatum was a resident of the State of Colorado.

10.    At all times relevant, Calyx was a Colorado limited liability company.

11.    Defendant is a packaging company specializing in cannabis packaging.

12.    Tatum initially worked for Defendant as an independent contractor, beginning in 2020.

13.    Upon the conclusion of his independent contractor relationship approximately three months later, Tatum was hired by Defendant as a full-time employee.

14.    At the time he commenced his employment with Defendant, Tatum executed a written Employment Agreement.

15.    On February 1, 2023, Defendant presented Tatum with the Employment Agreement, which replaced the prior employment agreement(s) previously executed between the parties.

16.    When presenting the Employment Agreement, Defendant advised Tatum that execution of the Agreement that same day was a condition of continued employment, and that refusal to sign would result in immediate termination.

3

Case No. 1:25-cv-01321-DDD-CYC   Document 36-1   filed 08/08/25   USDC Colorado
pg 20 of 37
Case No. 1:25-cv-01321-CYC   Document 1   filed 04/25/25   USDC Colorado   pg 4
of 17

17.     Defendant did not provide Tatum with a separate notice of the restrictive covenants

contained in the Employment Agreement, nor was Tatum given the required 14 days' advance

notice, or any notice at all.

18.     On February 1, 2023, Tatum signed the Employment Agreement at Defendant's

insistence, without knowledge of his rights under Colorado law and without any opportunity to

consult legal counsel or conduct research regarding those rights.

19.     At the time Tatum signed the Employment Agreement, he was earning less than

$102,000 per year.

20.     The Employment Agreement contains a covenant not to compete which states:

> While employed by the Company and for a period of two (2) years
> immediately following the voluntary or involuntary termination of
> Employee's employment with the Company for any reason,
> Employee will not, in the United States or Canada, either directly or
> indirectly, either independently or by act in concert with others,
> whether as an employee, consultant, advisor, independent
> contractor, agent, sole proprietor, partner, joint venture, officer,
> owner, or director, engage in, provide any services to or on behalf
> of, or promote or assist, financially or otherwise, any business entity
> which is engaged, in whole or in part, in any business activity which
> is competitive with the business of the Company or its affiliates
> including, but not limited to, the manufacturing, marketing,
> distribution, or sale of packaging including packaging targeted to
> the hemp and/or cannabis industries.

Exh. 1, Employment Agreement, § 6(a).

21.     The Employment Agreement contains a non-solicitation provision, which states:

> While employed by the company and for a period of two (2) years
> immediately following the voluntary or involuntary termination of
> Employee's employment with the Company for any reason,
> Employee will not, either directly or indirectly solicit, contact,
> induce, or attempt to induce the Company's current or prospective
> contractors, clients, customers, suppliers, vendors, licensees,
> licensors, franchisees, franchisors, or any persons or entities with

4

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 21 of 37
Case No. 1:25-cv-01321-CYC    Document 1    filed 04/25/25    USDC Colorado    pg 5
of 17

> business relations with the Company to cease doing business with
> the Company, or in any way interfere with the relationship between
> any such current or prospective contractors, clients, customers,
> suppliers, vendors, licensees, licensors, franchisees, franchisors, or
> business relation with the Company.

Exh. 1, Employment Agreement, § 6(b).

22.    The Employment Agreement also includes a choice-of-law and forum-selection clause that purports to require the application of Ohio law and mandates that any disputes arising from the agreement be resolved exclusively in an Ohio forum. Exh. 1, Employment Agreement, § 16.

23.    Tatum was employed by Defendant as its Chief Commercial Officer from February 1, 2023, through August 24, 2023.

24.    On or about August 24, 2023, Defendant terminated Tatum's employment.

25.    Following his termination in August 2023, Tatum was compelled to accept lower-skilled employment unrelated to his area of expertise, as any position utilizing his professional skills would have risked violating the restrictive covenants contained in the Employment Agreement.

26.    In October 2023, Tatum was approached by Calyx, a manufacturer specializing in cannabis packaging solutions, about coming to work with the company.

27.    Believing he was bound by the terms of the restrictive covenants set forth in his Employment Agreement, Tatum informed Calyx he was unable to join the company.

28.    Calyx again approached Tatum in January 2024 and presented him with an offer for a position as Director of Sales and Marketing with a projected on-target earnings ("OTE") salary of $240,000–$260,000 per year.

5

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 22 of 37
Case No. 1:25-cv-01321-CYC    Document 1    filed 04/25/25    USDC Colorado    pg 6
of 17

29.     Again, Tatum declined the offer based on his belief in the enforcement of the restrictive covenants set forth in his Employment Agreement.

30.     After Tatum declined the position for a second time, both Tatum and Calyx began evaluating the enforceability of the restrictive covenants contained in the Employment Agreement.

31.     Following their investigation, Tatum and Calyx discovered that Colorado law disfavors restrictive covenants and that the provisions contained in the Employment Agreement may be unenforceable under applicable state law.

32.     After making this determination, but erring on the side of caution, Tatum accepted a lesser role with Calyx as an independent contractor rather than an employee in September 2024, pending further clarity regarding the enforceability of the restrictive covenants.

33.     As a consultant for Calyx, Tatum is compensated at a rate of $45 per hour, resulting in average annual earnings between approximately $93,000 and $105,000.

34.     Approximately one month after beginning as a consultant with Calyx, on or about October 29, 2024, Defendant filed an action in the United States District Court, Northern District of Ohio, case number 1:24-cv-01887 ("Ohio Action"), against Calyx and Tatum attempting to enforce the restrictive covenants contained in the Employment Agreement.

### 2022 Revisions to Colorado's Restrictive Covenant Statute

35.     In 2022, Colorado significantly reformed the state's non-competition statute, codified at C.R.S. § 8-2-113. These changes went into effect on August 10, 2022.

36.     Under the revised statute, non-competition and non-solicitation agreements are generally void unless certain specific conditions are met. *See* C.R.S. § 8-2-113(2)(a) ("Except as

6

Case No. 1:25-cv-01321-DDD-CYC   Document 36-1   filed 08/08/25   USDC Colorado
pg 23 of 37
Case No. 1:25-cv-01321-CYC   Document 10   filed 04/30/25   USDC Colorado   pg 1
of 2

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Colorado ▼

MICHAEL RYAN TATUM, an individual; and CALYX
CONTAINERS, LLC, a Colorado limited liability
company
*Plaintiff*

v.

KINZIE ADVANCED POLYMERS LLC d/b/a GROVE
BAGS, an Ohio limited liability company

*Defendant*

)
)
)
)
)
)
)

Civil Action No. 1:25-cv-01321-CYC

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* KINZIE ADVANCED POLYMERS LLC d/b/a GROVE BAGS
5 Lake House Lane
Hunting Valley, OH 44022

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Jessamyn L. Jones
3i Law, LLC
2000 S. Colorado Blvd.
Tower 1, Suite 10000
Denver, Colorado 80222
jjones@3ilawfirm.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 4/30/2025

s/C. Madrid

*Signature of Clerk or Deputy Clerk*

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 24 of 37
Case No. 1:25-cv-01321-CYC    Document 10    filed 04/30/25    USDC Colorado    pg 2
of 2

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No. 1:25-cv-01321-CYC

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____          _____
                                        *Server's signature*

                                        _____
                                        *Printed name and title*


                                        _____
                                        *Server's address*

Additional information regarding attempted service, etc:

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 25 of 37
Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 1
of 13

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

**EXHIBIT 1**

Page 1 of 13                    Michael Tatum Employment



**GROVE** BAGS

## GROVE BAGS EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), is made and entered into as of February 1st, 2023, by and between **KINZIE ADVANCED POLYMERS LLC**, an Ohio limited liability company (dba Grove Bags), having a principal place of business at 26201 Richmond Rd Bedford Heights, OH 44146 (the "Company"), and Michael Tatum having an address at

5147 Chicory Circle Brighton, CO 80601

_____("Employee").

WHEREAS, the Company has created TerpLoc®, a cannabis film that is the first of its kind;

WHEREAS, the Company is a leader in the cannabis industry with valuable contacts with all levels of the supply chain from growers to retailers;

WHEREAS, as an employee of the Company, Employee will have access to the Company's various trade secrets and confidential information belonging to the Company and others;

WHEREAS, this Agreement is a condition of Employee's employment with the Company because this Agreement protects the Company's valuable confidential business information, trade secrets, employment relationships, and customer relationships;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto declare and agree as follows:

4876-4404-1008.1

Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 2
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    of 13

**EXHIBIT 1**

Page 2 of 13                          Michael Tatum Employment

1. Employment. Continuing as of February 1st, 2023 (the "Commencement Date"), the Company agrees to, and does hereby, engage Employee and Employee hereby agrees to provide to the Company the Services (as hereinafter defined) upon the terms and conditions of this Agreement.

2. Term. This Agreement shall be effective as of the Commencement Date and continue for no definite term or tenure of employment, subject to the termination and notice requirements set forth in Paragraph 5 below (the "Employment Period"). The first three (3) consecutive months of the Employee's employment under this Agreement are agreed to constitute a period of probation during which the Company shall have the opportunity to assess the suitability of the Employee's performance and conduct (the "Probation Period"). At any time during the Probation Period, Company may terminate the Employee's employment, on the grounds of unsuitability, without providing any working notice or payment in lieu thereof.

3. Compensation. 

All compensation will be payable in installments in accordance with the

Company's standard payroll practice. The Company may consider, in its sole discretion, whether to adjust the Employee's compensation from time to time. The Compensation will be paid to Employee less all applicable withholding of income taxes, social security taxes, or any other required deductions.

4. Position & Duties

4876-4404-1008.1

Case No. 1:25-cv-01321-DDD-CYC     Document 36-1     filed 08/08/25     USDC Colorado
pg 27 of 37
Case No. 1:25-cv-01321-CYC     Document 1-1     filed 04/25/25     USDC Colorado     pg 3
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833     of 13

**EXHIBIT 1**

Page 3 of 13                        Michael Tatum Employment

(a) Position. Employee shall serve as the Chief Commercial Officer for Company.

(b) Duties. Employee shall have the duties, responsibilities and obligations customarily assigned to individuals serving in the Position in which Employee serves hereunder and such other duties, responsibilities and obligations as the Company shall from time to time specify.

(c) Extent of Duties. Employee shall devote Employee's full business time to the duties required of Employee hereunder and shall use his or her best efforts, judgment, skill, and energy to perform such duties. Employee shall comply with all policies, practices, and procedures of the Company and that Company may elect to adopt from time-to-time, all of which shall remain subject to modification and/or termination at the Company's discretion. Employee agrees that Employee owes a duty of loyalty and good faith to the Company.

(d) Exclusive Employment. Employee shall not, without the prior written consent of the Company, directly or indirectly, during the term of this Agreement, other than in the performance of Employee's duties for the Company and in furtherance thereof, provide services to any person, firm or corporation, or entity, whether for compensation or otherwise.

(e)Kickback. Employee shall not receive any compensation from any vendors or customers while employed at Company. Violation this provision will result in immediate termination, return of compensation to Company, and any damages.

5. Termination.

(a) The Company or Employee may terminate the Agreement and the Employment Period by giving the other party written notice of such termination. The Employee is and shall remain an at-will Employee of the Company and nothing contained in this Agreement shall be deemed to create a principal/agent, partnership, or joint venture relationship between the parties. Upon termination of this Agreement, Employee shall only be

4876-4404-1008.1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 28 of 37
Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 4
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    of 13

**EXHIBIT 1**

entitled to salary through the date of termination of this Agreement. No commission or other payments shall survive the termination of the Agreement.

(b) The termination of this Agreement and the Employment Period under any circumstances shall not be deemed to deprive the Company of any rights or release the Employee from any duties which were intended to survive the termination of the employment relationship including, without limitation, such rights and duties established under **Paragraph 6,**

**Paragraph 7,** and **Paragraph 8** herein.

(c) Upon termination of this Agreement, Employee shall immediately discontinue any and all representations that he or she is an Employee of, or otherwise affiliated with, the Company. Employee shall submit all client lists and active accounts to the Company, and Employee acknowledges and agrees that all such client lists and active accounts belong to, and are the property of, the Company.

6. Restrictive Covenants.

(a) **Agreement Not To Directly Compete With The Company.** While employed by the Company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, in the United States or Canada, either directly or indirectly, either independently or by act in concert with others, whether as an employee, consultant, advisor, independent contractor, agent, sole proprietor, partner, joint venture, officer, owner, or director, engage in, provide any services to or on behalf of, or promote or assist, financially or otherwise, any business entity which is engaged, in whole or in part, in any business activity which is competitive with the business of the Company or its affiliates including, but not limited to, the manufacturing, marketing, distribution, or sale of packaging including packaging targeted to the hemp and/or cannabis industries.

(b) **Non-Solicitation of Customers And Other Third Parties.** While employed by the Company and for a period of two (2) years immediately

4876-4404-1008.1

Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 5
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    of 13

## EXHIBIT 1

Page 5 of 13                         Michael Tatum Employment

following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly solicit, contact, induce, or attempt to induce the Company's current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or any persons or entities with business relations with the Company to cease doing business with the Company, or in any way interfere with the relationship between any such current or prospective contractors, clients, customers, suppliers, vendors, licensees, licensors, franchisees, franchisors, or business relation with the Company

(c) **Non-Solicitation of Employees.** While employed by the Company and for a period of two (2) years immediately following the voluntary or involuntary termination of Employee's employment with the Company for any reason, Employee will not, either directly or indirectly, induce or attempt to induce any employee of the Company to leave the employ of the Company, or in any way interfere with the relationship between the Company and any employee.

(d) **Non-Disparagement.** Employee agrees and covenants that Employee will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Company or its business, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

(e) **Remedies for Breach of Restrictive Covenants.** Employee acknowledges that a breach of this Agreement may cause the Company continuing and irreparable injury which may not be adequately compensated through monetary damages. Employee therefore agrees that in the event of any actual or threatened breach of this Agreement, the Company will be entitled, in addition to any other remedies available to it, to immediate injunctive relief and may obtain a temporary restraining order and injunctive relief to prevent any violations of this Agreement.

(f) **Recovery of Attorneys' Fees.** In the event of litigation claiming breach of this Agreement by the Employee, the Company shall have the right to

4876-4404-1008.1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 30 of 37
Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 6
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    of 13

**EXHIBIT 1**

recover from the Employee its attorneys' fees and costs incurred as a result of such litigation if the Employee is found to have violated this Agreement.

(g) **Continuation of Restrictive Covenants.** Employee's obligations under the Restrictive Covenants contained in this Paragraph 6, including its subparagraphs, are continuing in nature and are intended to survive the termination of this Agreement and Employee's employment with the Company.

7. Confidential Information.

(a) Employee acknowledges and agrees that during the Employment Period, confidential employee, customer, and/or Company information will be or may be made available to Employee, which may include, without limitation, financial information of the Company, information regarding the Company's employees, customers, suppliers, and/or vendors, information regarding the Company's pricing and materials, the Company's computer programs, confidential website and other internet information, and other trade secrets and proprietary information including, without limitation, information relating in any way to any (i) purchasing practices, procedures, and/or techniques used or employed by the Company; (ii) pricing received by the Company from any of the Company's suppliers or vendors; (iii) pricing given by the Company to any of the Company's customers; (iv) names, addresses, email addresses, telephone numbers and all other information regarding the Company's customers; and (v) any products, services, methods, computer/software or any other similar or related matters/items developed, enhanced or modified (collectively, the "Confidential Information").

(b) Employee agrees that the Confidential Information (a) shall be used by Employee solely for the performance of Employee's duties for the Company as directed by the Company from time to time; (b) is the sole and exclusive property of the Company (and Employee shall execute and deliver, at any time, such documents as the Company shall request in order to confirm the same); (c) is absolutely confidential to the Company; and (d) except as expressly permitted in writing by the Company, must not be disseminated, disclosed to others (including, without limitation, employees

4876-4404-1008.1

**EXHIBIT 1**

Michael Tatum Employment

who do not have the Company's authorization to know any such
Confidential Information), or used outside of the Company in any manner
whatsoever. During the Employment Period, and in the event of the
termination of this Agreement, whether voluntary or involuntary, Employee
agrees not to use, disclose, transfer or exploit the Confidential Information
at any time and in any manner whatsoever (other than using such
Confidential Information for the Company's benefit and as expressly
permitted by the Company during the Employment Period).
(c) Employee further agrees to immediately return all Company property
and documents upon the termination of Employee's contractual relationship
with the Company including, without limitation, all such Confidential
Information. At all times, Employee agrees that Employee will not take or
otherwise remove from the Company any of the Company's property and/or
Confidential Information, without the express written consent of the
Company. Employee also agrees to provide the Company with all
usernames and passwords for any and all computers, tablets, files,
documents, websites, applications, software, or any other electronic or
technical device, program, or file in which Employee used and/or created in
connection with any duty Employee performed on behalf of the Company.
This Section does not apply to any username or password which pertains
solely to Employee's personal information or matters that do not involve the
Company or its businesses or in any way violate any local, state, or federal
law.


(d) Notwithstanding anything contained in this Agreement to the contrary, if
Employee is requested or required (by oral questions or request for
information or documents in court or administrative proceedings,
interrogatories, subpoena, civil investigation, demand or similar court or
administrative agency process) to disclose any Confidential Information,
Employee will promptly notify the Company of such request or requirement
prior to any disclosure of the Confidential Information so that the Company
may seek an appropriate protective order and/or consider the possible
waiver of Employee's compliance with this Agreement. However, if in the
opinion of Employee's counsel, Employee is required by law or regulation

4876-4404-1008.1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 32 of 37

Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 8
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    of 13

**EXHIBIT 1**

Page 8 of 13                    Michael Tatum Employment

to disclose the requested information prior to notice to the Company or prior to receipt of the Company's agreement of waiver, Employee may make such disclosure of such information (and only such information) without liability to the Company.

(e) Employee hereby acknowledges and agrees that the Company's remedy at law for any breach of any of Employee's obligations under this **Paragraph 7** would be inadequate, and Employee agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of this **Paragraph 7** without the necessity of proof of actual damages, it being acknowledged by Employee that any such breach would cause irreparable injury to the Company.

(f) For purposes of this **Paragraph 7**, the term "Company" shall include the Company and all of its parents, subsidiaries, affiliates and related companies and/or entities.

8. Intellectual Property. Employee acknowledges and agrees that all Intellectual Property (hereinafter defined) developed by Employee, solely by Employee or jointly with others, during the Employment Period, whether or not during regular work hours, is a "work made for hire" to the greatest extent permitted by applicable law. Employee hereby assigns, conveys, and transfers to the Company, all of Employee's right, title, estate and interest which Employee has, or may have during the Employment Period, in and to the following:

Any and all intellectual and other intangible property including, without limitation, trade names, trademarks and service marks (whether registered or unregistered) and all registrations and applications therefor, mask works, websites, domain names, works of authorship and all copyrights related thereto, and all registrations and applications therefor, inventions, discoveries, developments, concepts, improvements, designs, industrial models (whether patentable or not), and all patent rights relating thereto and all applications therefor and all reissues, divisions, continuations and extensions thereof, know-how, trade secrets, processes, technology, discoveries, formulae and procedures, and software (collectively

4876-4404-1008.1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 33 of 37
Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg 9
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    of 13

**EXHIBIT 1**

Michael Tatum Employment

hereinafter referred to as "Intellectual Property"), together with the right to sue for infringement or improper, unlawful or unfair use or disclosure of any of the foregoing.

The assignment set forth in this **Paragraph 8** shall apply to Intellectual Property which meets any one of the following criteria: (a) results, at least in part, from Employee's use of time, equipment, supplies, facility, or trade secret information of the Company; (b) relates, at the time of conception or reduction to practice, directly or indirectly, (i) to the business, project or products of the Company, or the manufacture or utilization thereof, or (ii) to the Company's actual or anticipated research or development; and/or (c) results or arises, directly or indirectly, from any work performed or expected to be performed by Employee for the Company and is conceived or reduced to practice by Employee during or within two (2) years after termination of the Employment Period. The assignment set forth herein shall extend to all Intellectual Property resulting from information obtained by the Employee during the Employment Period, whether or not conceived or reduced to practice by Employee during or after termination of the Employment Period, except as explicitly set forth in this **Paragraph 8.**

9. Reasonableness of Restrictions and Assignment. Employee acknowledges that Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions and requirements set forth in this Agreement including, without limitation, the non-competition provisions set forth in **Paragraph 6**, the Confidential Information restrictions set forth in **Paragraph 7**, and the assignment of Intellectual Property set for in **Paragraph 8** herein, are fair and reasonable and are reasonably required for the protection of the interests of the Company and its officers, members, directors, shareholders and other employees.

10. Employee Benefits. Employee shall be eligible to participate in any benefit plan sponsored or maintained by the Company to the extent that the Company offers such plans and the Employee is eligible to participate under the terms thereof.

4876-4404-1003.1

Case No. 1:25-cv-01321-DDD-CYC    Document 36-1    filed 08/08/25    USDC Colorado
pg 34 of 37
Case No. 1:25-cv-01321-CYC    Document 1-1    filed 04/25/25    USDC Colorado    pg
DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833    10 of 13

**EXHIBIT 1**

Michael Tatum Employment

11. Expenses. The Company shall pay or reimburse Employee for out-of-pocket business expenses specific to the Employee's scope of work and sales efforts, in accordance with Company policy. To be eligible for reimbursement, an itemized documentation of expenses must be submitted monthly to the appropriate administrator.

12. Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

13. Successor in Interest. This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon the Company and the Company's successors and assigns including, without limitation, any successors in interest as a result of a merger, consolidation or change of name. This Agreement may not be assigned by Employee.

14. Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

15. Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter gender.

4876-4404-1008.1

**EXHIBIT 1**

Michael Tatum Employment

16. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Ohio. Any suit involving any dispute or matter arising under this Agreement may only be brought in the courts of the State of Ohio, in Cuyahoga County. Employee hereby consents to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

17. Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

18. Waiver. The failure of the Company at any time or from time to time to require performance of any of Employee's obligations under this Agreement shall in no manner affect the Company's rights to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent or prior breach.

19. Notices. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be personally delivered, sent by certified or registered mail, postage prepaid, return receipt requested, or by overnight delivery service and addressed as follows: if to the Company, to Kinzie Advanced Polymers LLC, Attention: Jacob Grover at 26201 Richmond Rd, Bedford Heights, OH 44146; if to the Employee, to Michael Tatum at

The parties hereto have executed this Agreement as of the day and year first above written.

4876-4404-1008.1

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

**EXHIBIT 1**

Page 12 of 13                   Michael Tatum Employment

Company:

KINZIE ADVANCED POLYMERS LLC ,
an Ohio limited liability company, dba Grove Bags

By: Daniel Jaffe

Its: CFO

DocuSigned by:

*Dan Jaffe*
8F08C007B06B407...

Date: _2_/3_/_20_2_3_____

Employee:

Michael Tatum

DocuSigned by:

*Michael Ryan Tatum*
0F403C5D30EA492...

Date:_2_/2_/_20_2_3_____

4876-4404-1008.1

DocuSign Envelope ID: 202A905E-E4F5-4B98-9809-4098C2E03833

**EXHIBIT 1**

Page 13 of 13                    Michael Tatum Employment

Exhibit A

