IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION No. 25-cv-01321-DDD-CYC

MICHAEL RYAN TATUM, an individual; CALYX CONTAINERS, LLC, a Colorado limited liability company; CHAZ HERMANOWSKI, an individual; and JACOB TORRISON, an individual,

    Plaintiffs,

v.

KINZIE ADVANCED POLYMERS LLC d/b/a GROVE BAGS, an Ohio limited liability company.

    Defendant.

## PLAINTIFFS' MOTION FOR SPEEDY HEARING PURSUANT TO FED. R. CIV. P. 57

COME NOW, Plaintiffs, Michael Ryan Tatum ("Plaintiff Tatum") and Calyx Containers, LLC ("Plaintiff Calyx"), collectively ("Plaintiffs"), by and through their counsel, 3i Law, LLC, hereby submit their Motion for Speedy Hearing Pursuant to Fed. R. Civ. P. 57 ("Motion"):

### CERTIFICATE OF CONFERRAL

The undersigned certifies that she conferred with counsel for Defendant regarding the relief requested herein. The Motion is opposed.

### INTRODUCTION

This case presents precisely the scenario the Colorado General Assembly sought to prevent when it overhauled the state's noncompete statute in 2022. Plaintiffs are Colorado residents who, upon termination of their employment, were bound by restrictive covenants that Colorado law renders unenforceable and were then forced to defend those covenants in foreign courts.

1

Defendant has used those unlawful covenants to initiate parallel Ohio actions, where one Plaintiff has already been enjoined from working in his chosen field and Plaintiffs have been compelled to expend six figures defending themselves.

Colorado law is unambiguous: an employer may not require a Colorado worker to litigate the enforceability of a noncompete outside this state. C.R.S. § 8-2-113(6). The legislature went further, expressly providing that a worker, or a subsequent employer, may seek a declaratory judgment that the covenant not to compete is unenforceable. *Id.* at § 8-2-113(7). Plaintiffs have exercised that statutory right here. Rule 57 expressly authorizes expedited proceedings in declaratory judgment actions, recognizing that declaratory relief is often suited to prompt determination of controlling legal questions.

An expedited hearing is essential. Every day that passes deepens the harm: Plaintiffs remain entangled in competing proceedings, exposed to inconsistent rulings, and deprived of the protections Colorado law guarantees. Plaintiff Tatum remains barred from his livelihood by an interlocutory injunction. Delay rewards Defendant's forum-shopping tactics and effectively nullifies Colorado's statutory reforms. A prompt declaration that the enforceability of these covenants must be adjudicated in Colorado will end the controversy, conserve judicial resources, and give effect to the legislature's mandate.

## FACTUAL BACKGROUND

1. On October 29, 2024, Defendant filed an action in the Northern District of Ohio ("First Ohio Lawsuit") against Plaintiff Tatum alleging Plaintiff Tatum breached the noncompete provision contained in his employment agreement. *See* Exhibit 1 to Defendant's Motion to

2

Dismiss, Defendant's Complaint, ECF 22-1, PDF pp. 16-21; *Id.*, PDF p. 2, Declaration of Daniel Jaffe, ¶ 6.

2.  Plaintiff Tatum immediately filed a Motion to Dismiss the First Ohio Lawsuit on the basis that Colorado law prohibits the enforcement of non-compete provisions in employment contracts for non-highly compensated employees and Colorado law requires any litigation concerning enforceability to occur in Colorado. *See* Exhibit 1 to Defendant's Motion to Dismiss, Tatum's Motion to Dismiss, ECF 22-1, PDF pp. 222-223.

3.  On April 25, 2025, Plaintiffs Tatum and Calyx filed this action seeking, in part, declaratory judgment that the restrictive covenants are void and unenforceable under Colorado law ("Colorado Lawsuit"). *See* Complaint, ECF 1 ("Complaint"), ¶ 11.

4.  Defendant's answer or responsive was due on or before May 23, 2025.

5.  On May 22, 2025, Defendant filed a Stipulation for Extension of Time to Answer or Respond to the Complaint. *See* Stipulation for Extension of Time, ECF 13.

6.  Between April 25, 2025, and May 28, 2025, Plaintiff Hermanowski and Plaintiff Torrison requested an opportunity to join this action, therefore creating the need for Plaintiffs to amend their Complaint.

7.  On May 22, 27, and 28, 2025, the Parties to the First Ohio Lawsuit engaged in a preliminary injunction hearing, during which time Defendant discovered Plaintiffs Hermanowski and Torrison were planning to join the Colorado Lawsuit.

8.  On May 28, 2025, Defendant's counsel proposed filing a joint status report extending the time for Defendant's answer or responsive pleading so that Plaintiffs could file their First Amended Complaint on or before June 20, 2025, and ensure judicial efficiency by requiring

3

a single answer or responsive pleading to the First Amended Complaint. *See* Joint Status Update, ECF 15.

9. However, it appears Defendant's true intention in seeking an extension of time was to create the opportunity to file lawsuits against the newly added Plaintiffs, Plaintiff Hermanowski and Plaintiff Torrison, in the Northern District of Ohio, filed on June 10, 2025 ("Second Ohio Lawsuit"), thereby manufacturing a basis to invoke the first-to-file rule and seek dismissal of this action. *See* Exhibit 1 to Defendant's Motion to Dismiss, ECF 22-1, PDF p. 2, Declaration of Daniel Jaffe, ¶ 8.

10. Plaintiffs Hermanowski and Torrison subsequently joined this lawsuit and an amended Complaint was filed on or about June 20, 2025.[1] *See* First Amended complaint, ECF 19.

11. The First Claim for Relief in the Amended Complaint is for declaratory relief, requesting, in part, the Court declare the restrictive covenants contained in the Tatum Employment Agreement are void and unenforceable, and that any litigation concerning the enforceability of the restrictive covenants must occur in a court of competent jurisdiction in the State of Colorado. *Id.* at p. 23.

12. Plaintiffs requested this Court set the matter for an evidentiary hearing or oral argument on the requested declaratory relief pursuant to Fed. R. Civ. P. 57. *Id.* at p. 24.

13. On July 15, 2025, Defendant filed a Motion to Dismiss based on the "first-to-file" rule ("Defendant's Motion to Dismiss"), and a Motion to Stay Litigation Pending Decision on

---

[1] Plaintiffs refiled the First Amended Complaint on June 24, 2025, in accordance with the Court's June 24, 2025, Minute Order.

4

Defendant's Rule 12(b)(1) Motion and Convert Scheduling Conference into a Status Conference ("Motion to Stay"). *See* Defendant's Motion to Dismiss, ECF 22; Motion to Stay, ECF 23.

14. On July 25, 2025, Plaintiffs filed their response to both Defendant's Motion to Dismiss and the Motion to Stay. *See* Plaintiffs' Response Opposing Defendant's Motion to Dismiss, ECF 30; Plaintiffs' Response Opposing Defendant's Motion to Stay, ECF 31.

15. On August 25, 2025, the Ohio Court issued an Order granting in part Defendant's preliminary injunction in the First Ohio Lawsuit ("Ohio Interlocutory Order"). *See* Exhibit A to Notice of Supplemental Authority in Support of Defendant's Rule 12(b)(1) Motion to Dismiss and Motion to Stay Litigation Pending Decision on Defendant's Rule 12(b)(1) Motion and Convert Scheduling Conference into a Status Conference, ECF 38-1.

16. The Ohio Interlocutory Order found that, under Ohio's choice of law rules, Ohio law applied to the employment contract, including the enforcement of the noncompete provision. *Id.* at pp. 11-20.

17. The Ohio Interlocutory Order enjoined Plaintiff Tatum from being employed by, or performing services on behalf of Calyx with or without compensation, and that he is further enjoined from being employed by, or performing services on behalf of, any other company or its affiliates whose business activities include the manufacturing, marketing, distribution, or sale of packaging including packaging targeting the hemp and/or cannabis industries. *Id.* at p. 61.

18. The Ohio Interlocutory Order acknowledged that Tatum's noncompete agreement was set to expire on August 24, 2025, but extended it indefinitely. *Id.* at n. 16.

5

19. This Court held a hearing on the Motion to Stay on September 10, 2025, at which time it stay <u>discovery</u> pending the Motion to Dismiss, but opted not to stay the litigation. *See* Minute Order, ECF 39.

20. On September 17, 2025, the Northern District of Ohio issued an Order partially denying Plaintiffs' Rule 12 motions in that court and concluding that Ohio law governs the contracts at issue ("September Ohio Order"). That Order relied on its earlier preliminary-injunction findings, applied Ohio choice-of-law principles, and determined venue was proper in Ohio. The September Ohio Order did not address C.R.S. § 8-2-113(6)–(8) or Colorado's statutory forum mandate.

21. Plaintiffs move this Court for an expedited hearing on their claim for declaratory relief, pursuant to Fed. R. Civ. P. 57.

## **STANDARD OF REVIEW**

"A worker who is a party to a covenant not to compete, or a subsequent employer that has hired or is considering hiring the worker, may seek a declaratory judgment from a court of competent jurisdiction or an arbitrator that the covenant not to compete is unenforceable." C.R.S. § 8-2-113(7). Rule 57 expressly authorizes expedited proceedings in declaratory judgment actions. Fed. R. Civ. P. 57. "A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion." *Balakrishnan v. TTEC Digital LLC*, No. 1:23-CV-01204-CNS-NRN, 2024 WL 1638651, at *2 (D. Colo. Apr. 16, 2024). Importantly, "[t]he

existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

Courts have discretion to make a declaration of rights and in determining whether to exercise that discretion, district courts should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata;* [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*See Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980–81 (10th Cir. 2012); *see also Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989) (holding that even where fact issues are pending elsewhere, a court may resolve a purely legal question of contract enforceability to clarify the parties' rights).

## LAW AND ARGUMENT

### A. An Expedited Hearing Is Warranted Under the *Mid-Continent* Factors.

In deciding whether to exercise discretion in granting declaratory relief, courts apply the factors outlined in *Mid-Continent*, 685 F.3d at 980–81. Consideration of those factors here demonstrates that expedited proceedings are not only appropriate, but necessary. Each factor weighs heavily in favor of immediate relief: a ruling will terminate the controversy, clarify the parties' legal relations, correct Defendant's procedural maneuvering, vindicate Colorado's sovereignty, and provide the only effective remedy to prevent ongoing harm.

7

### i.    Expedited Declaratory Relief Will Resolve the Controversy and Streamline the Litigation.

The first factor asks whether a declaratory judgment would settle the controversy, and a ruling from this Court on Plaintiffs' claim would resolve the central dispute underlying all three pending lawsuits. *See Mid-Continent*, 685 F.3d at 980. The disputes now pending in this Court and in Ohio all reduce to the same determinative question: whether Colorado employees can be compelled to litigate the enforceability of their noncompetes in Ohio courts, contrary to Colorado law. That is the controversy driving three separate lawsuits. A declaratory ruling from this Court will resolve that issue directly, terminate duplicative litigation, and streamline all related claims.

Defendant will point to the Ohio preliminary injunction order. But preliminary injunctions are interlocutory, preserve only the status quo, and are not final judgments entitled to full faith and credit. *See MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1065–66 (10th Cir. 2007). The September Ohio Order likewise does not preclude this Court's review. It is interlocutory, not a final judgment, and it does not address Plaintiffs' statutory rights under Colorado law. *See Catlin v. U.S.*, 324 U.S. 229, 236 (1945) (denial of a motion to dismiss, even when based on jurisdictional grounds, is a not a final order); *see also Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 703 F.3d 1147, 1150 (10th Cir. 2013) (order denying motion to dismiss not a final appealable order). This Court is therefore not bound by Ohio's interim rulings and retains full authority to decide whether Colorado's statutory protections govern.

The Ohio court has now twice applied Ohio law to extend restraints against Plaintiffs, including extending Plaintiff Tatum's noncompete beyond its express expiration date. That indefinite restraint underscores why expedited adjudication here is necessary to prevent Colorado's statutory rights from being extinguished through foreign orders.

8

Meanwhile, the harm is not theoretical. Plaintiffs have already incurred six-figure litigation costs defending the Ohio actions, and Plaintiff Tatum, currently enjoined from working in his field, suffers ongoing reputational injury and loss of professional goodwill in addition to lost income. These harms cannot be unwound at the conclusion of protracted litigation. The continued cloud of unenforceable noncompetes inflicts professional stigma that is irreparable absent expedited relief. Every day without resolution compounds that harm. A declaration from this Court that enforceability must be litigated in Colorado will not only end the controversy across jurisdictions but will also prevent further prejudice, conserve judicial resources, and allow all claims to be resolved in a single, proper forum that is required by statute.

Expedition also promotes judicial economy. Prompt resolution in this Court would avoid piecemeal litigation, prevent wasteful duplication of judicial efforts across two federal districts, and ensure the most efficient allocation of judicial resources. Addressing the question now avoids further drain on both courts and allows all related claims to proceed in a single, proper forum.

    **ii.    Expedited Relief Will Clarify the Parties' Legal Relations and Enforce Colorado's Statutory Protection.**

The second factor asks whether a declaratory judgment would serve a useful purpose in clarifying the legal relations at issue. *See Mid-Continent*, 685 F.3d at 980. Expedited relief here would provide immediate clarity on the parties' rights and obligations under Colorado law. The parties' legal relations are clouded by uncertainty. Defendant insists Ohio law governs, while Plaintiffs invoke their statutory right to a Colorado forum under C.R.S. § 8-2-113. Two federal courts are being asked to decide the same issue under different legal frameworks, creating inconsistent obligations and escalating costs.

9

Defendant will argue that the Ohio preliminary injunction order resolved the governing law question. It did not. A preliminary injunction is an interlocutory ruling that preserves only the status quo. *See MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1065–66 (10th Cir. 2007). It is not a final adjudication on the merits and is not entitled to full faith and credit. *Id*. To defer to that order would be to allow a non-final ruling in another jurisdiction to erase protections the Colorado legislature deliberately enacted. *See also Kunkel*, 866 F.2d at 1274 (recognizing that courts may resolve a purely legal question of contract enforceability to clarify the parties' rights, even where fact issues are pending elsewhere); *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 444 (10th Cir. 2023) (refusing to extend comity to foreign orders "repugnant to public policy"); *In re Burke*, 374 B.R. 781, 793 (Bankr. D. Colo. 2007) (declining recognition of judgments inconsistent with Colorado public policy).

This is precisely the scenario the General Assembly sought to prevent when it overhauled C.R.S. § 8-2-113. The statute explicitly prohibits employers from forcing Colorado workers to litigate noncompetes in foreign jurisdictions. *See* C.R.S. § 8-2-113(6). If this Court declines to expedite on the basis of Ohio's preliminary order, the jurisdictional statute is rendered meaningless. Out-of-state employers would have a ready playbook to circumvent Colorado law: knowingly hire Colorado employees, impose unenforceable covenants, race to their home forum, and strip Colorado employees of the protections afforded them under state law.

Beyond the direct harm to Plaintiffs, the ongoing enforcement and uncertain status of these restrictive covenants chills employee mobility and market competition across Colorado. If out-of-state employers can impose unenforceable covenants and force litigation elsewhere, other workers will be deterred from pursuing opportunities and other employers will be dissuaded from hiring

10

them. This broader chilling effect undermines the legislature's express policy objectives and amplifies the need for prompt judicial resolution. This case also presents issues of first impression under Colorado's recently overhauled noncompete statute. Prompt judicial guidance will not only resolve the parties' dispute, but will also provide clarity to employers, employees, and courts across the state. Without swift adjudication, uncertainty will persist, inviting further litigation and inconsistent results that undermine the statute's purpose.

In short, a declaratory judgment here will eliminate the uncertainty, confirm that enforceability must be litigated in Colorado, and vindicate the statutory rights the legislature enacted to protect Colorado workers from exactly this abuse.

### iii. Expedited Relief is not Procedural Fencing; it is the Remedy the Law Provides.

The third factor considers whether the declaratory remedy is being used merely for procedural fencing or as a race to res judicata. *See Mid-Continent*, 685 F.3d at 980. Here, Plaintiffs invoke a remedy expressly authorized by statute and rule to protect Colorado workers from the harm they are now experiencing, not to gain any tactical advantage. *See* C.R.S. § 8-2-113(7); Fed. R. Civ. P. 57. The controversy is not manufactured—it already exists, as demonstrated by the two Ohio lawsuits and the procedural motions Defendant has filed in this Court to block adjudication here, in the employees home state.

Far from engaging in forum shopping, Plaintiffs are Colorado residents asserting their statutory right to have the enforceability of their restrictive covenants adjudicated in Colorado. They are not seeking to foreclose Defendant's defenses or counterclaims. It is designed to secure a declaration of rights that will resolve threshold issues driving multiple lawsuits and protect Colorado employees from precisely the abuse the legislature sought to prevent.

11

It is Defendant, not Plaintiffs, that has engaged in procedural gamesmanship. After requesting an extension of time in this Court, framing it as a matter of judicial efficiency so that it would only need to file a single responsive pleading to Plaintiffs' forthcoming amended complaint, Defendant immediately raced to Ohio to sue the very Plaintiffs who were being added here. It now points to those filings to press its first-to-file argument. Defendant's conduct—seeking extensions in this Court under the guise of efficiency, only to file additional lawsuits in Ohio—exemplifies the very forum-shopping the legislature sought to foreclose. To deny expedited proceedings in the face of such tactics would effectively reward gamesmanship, undermine procedural fairness, and erode confidence that Colorado employees can rely on the statutory protections enacted for their benefit. This tactic is consistent with Defendant's broader pattern: employing Colorado workers, binding them to noncompetes that Colorado law prohibits, seeking to enforce those covenants illegally, and forum shopping to evade Colorado's statutory mandate.

Granting expedited relief would not reward maneuvering; it would remedy it. A declaration from this Court will restore the proper forum and protections Colorado law requires, and prevent Defendant from continuing to exploit litigation tactics to undermine the legislature's reforms.

### iv. Declaratory Relief Will Not Create Federal–State Friction or Encroach Upon State Jurisdiction.

The fourth factor addresses whether declaratory relief would create friction between federal and state courts or improperly encroach on state jurisdiction. *See Mid-Continent*, 685 F.3d at 980. This factor is satisfied in favor of Plaintiffs. The relief Plaintiffs seek will not increase friction between federal and state courts or encroach upon state jurisdiction. There are no parallel state-

court proceedings at issue, and no state court has been asked to adjudicate the enforceability of Plaintiffs' restrictive covenants.

If anything, declining to exercise jurisdiction here would be the greater encroachment. Colorado has a strong and explicit statutory mandate prohibiting employers from forcing its residents to litigate noncompetes outside the state. *See* C.R.S. § 8-2-113(6). Allowing Defendant to continue to litigate in Ohio federal court effectively nullifies that mandate and displaces Colorado's sovereign interest in regulating employment relationships within its borders. To decline to act would allow Ohio law to negate Colorado's sovereign authority to regulate employment relationships within its borders, precisely what C.R.S. § 8-2-113(6) forbids.

Accordingly, granting declaratory relief here will not create any federal–state friction. To the contrary, it ensures Colorado's legislature's policy choices are given full effect and prevents the statutory protections from being undermined by litigation in another forum.

### v.   No Alternative Remedy Is Adequate or More Effective.

The fifth factor asks whether there is a better or more effective alternative remedy. *See Mid-Continent*, 685 F.3d at 980–81. Defendant will argue that the Ohio proceedings provide an adequate remedy. The record demonstrates otherwise. Plaintiffs have already spent six figures defending themselves in Ohio, Plaintiff Tatum has been barred from working in his profession, and his Motion to Dismiss has languished unresolved for more than eight months. That delay itself underscores why Ohio is not an adequate remedy; Colorado's legislature provided a mechanism for expedited resolution precisely to avoid this kind of limbo.

Rule 57 is explicit: "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. And here, no alternative

13

is more effective than a prompt declaration from this Court. Only this Court can give effect to the legislature's command that Colorado workers are not forced to litigate the enforceability of noncompetes outside Colorado.

Finally, expedited declaratory relief can be accomplished without the need for discovery thus providing the most efficient path towards resolution. The argument that the Ohio litigation provides an adequate remedy ignores the fact that the parties would first be required to participate in lengthy and expensive discovery and motions practice prior to a resolution in the Ohio Lawsuits. Conversely, expedited declaratory relief in this action can be resolved without any discovery because the question before the court is limited and a question of law. Expedited declaratory relief is the most effective and efficient resolution of the dispute because no discovery would be required before resolution, as opposed to the Ohio litigation.

Waiting for a final judgment in Ohio would not resolve the problem, it would entrench it. It would prolong uncertainty, deepen irreparable harm, and reduce Colorado's statutory protections to empty words. The only remedy that provides clarity, prevents further prejudice, and ensures the statute's effectiveness is expedited declaratory relief here.

## CONCLUSION

Each *Mid-Continent* factor weighs decisively in favor of expedited declaratory relief. A ruling from this Court will resolve the central controversy, clarify the parties' legal relations, prevent further procedural abuse, and ensure Colorado's statutory protections are given effect. The alternative, deferring to ongoing Ohio proceedings, would entrench irreparable harm, encourage forum shopping, and nullify the very reforms the Colorado legislature enacted. Plaintiffs therefore

respectfully request that this Court set their declaratory judgment claim for expedited hearing pursuant to Rule 57.

WHEREFORE, Plaintiffs respectfully submit their Motion for Expedited Hearing Pursuant to Fed. R. Civ. P. 57 and request this Court set the matter for hearing within the next 30 days, with a prompt ruling thereafter, so that the question of enforceability may be resolved without further irreparable harm or ongoing conflict between jurisdictions, and for such other and further relief as the Court deems just and proper.

DATED this 18th day of September, 2025.

Respectfully submitted,

3i Law, LLC
*[A duly signed original on file at office of undersigned.]*

By: */s/ Jessamyn L. Jones*
Jessamyn L. Jones
Grant T. Shibao
2000 S. Colorado Blvd. Tower 1
Suite 10000
Denver, CO 80222
Telephone: (303) 245-2162
Facsimile: (303) 245-2108
jjones@3ilawfirm.com
gshibao@3ilawfirm.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned hereby certify that on the 18th day of September, 2025, I caused a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR SPEEDY HEARING PURSUANT TO FED. R. CIV. P. 57** to be served upon the below via PACER filing system:

Andrew K. Lavin, Esq.
Brittney T. Bulawa, Esq.
555 Seventeenth Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160
alavin@grsm.com
bbulawa@grsm.com

*/s/ Jessamyn L. Jones*
Jessamyn L. Jones

16